# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

**CARSON NEWBAUER,** on behalf of himself,
and all others similarly situated,

    **Plaintiff,**

    v.

**JACKSON HEWITT TAX SERVICE INC.,
JACKSON HEWITT INC., TAX SERVICES
OF AMERICA, INC., BAYSIDE CAPITAL,
INC., and CORSAIR CAPITAL, LLC,**

    **Defendants.**

**(CASE 1 of 4)**

**CIVIL NO. 2:18cv679**

---

**TOM ENDRES, LATONYA FIELDS, and
LAURA METZ,** on behalf of themselves and
others similarly situated,

    **Plaintiffs,**

    v.

**JACKSON HEWITT, INC., JACKSON
HEWITT TAX SERVICE INC., and TAX
SERVICES OF AMERICA, INC.,**

    **Defendants.**

**(CASE 2 of 4)**

**CIVIL NO. 2:19cv37**

---

**JESSICA ROBINSON,** on behalf of herself
and other similarly situated,

    **Plaintiff,**

    v.

**JACKSON HEWITT, INC., JACKSON
HEWITT TAX SERVICE INC., and TAX
SERVICES OF AMERICA, INC.,**

    **Defendants.**

**(CASE 3 of 4)**

**CIVIL NO. 2:19cv44**

**NICOLE GIBSON,** individually and on behalf
of all others similarly situated,

      **Plaintiff,**

      v.

**CIVIL NO. 2:19cv49**

**JACKSON HEWITT TAX SERVICE INC.,
JACKSON HEWITT INC., TAX SERVICES
OF AMERICA, INC., BAYSIDE CAPITAL,
INC., and CORSAIR CAPITAL, LLC,**

      **Defendants.**

## OPINION AND ORDER

This matter comes before the Court on four Motions to Transfer filed by defendants

Jackson Hewitt, Inc., Tax Services of America, Inc. and Jackson Hewitt Tax Service Inc. in each

of the four above-captioned cases. For the reasons below, such motions are **GRANTED**, and each

case is **TRANSFERRED** to the United States District Court for the District of New Jersey,

Newark Division.

## I.    PROCEDURAL BACKGROUND

Before the Court are four separate class action complaints brought against Jackson Hewitt,

Inc., a tax preparation services company, and related entities alleging violations of the Sherman

Act, 15 U.S.C. §§ 1, 3, stemming from certain no-hiring and no-solicitation clauses contained in

Jackson Hewitt, Inc.'s standard franchise agreements. These cases include:

1. The Newbauer Case: On December 20, 2018, plaintiff Carson Newbauer, on behalf of
himself and other purported class members, filed a complaint against Jackson Hewitt
Tax Service Inc., Jackson Hewitt Inc., Tax Services of America, Inc. (collectively
referred to as the "Jackson Hewitt Defendants"), as well as Bayside Capital Inc., and
Corsair Capital, LLC. See Case No. 2:18cv679 (hereinafter, the "Newbauer Case"),
ECF No. 1.

2. The Endres Case: On January 18, 2019, plaintiffs Tom Endres and Latonya Fields, on
behalf of themselves and other purported class members, filed a complaint against the
three Jackson Hewitt Defendants. See Case No. 2:19cv37 (hereinafter, the "Endres

Case"), ECF No. 1. On February 11, 2019, plaintiffs amended their complaint to add a third plaintiff: Laura Metz. Id., ECF No. 10.

3. The Robinson Case: On January 24, 2019, plaintiff Jessica Robinson, on behalf of herself and other purported class members, filed a complaint against the three Jackson Hewitt Defendants. See Case No. 2:19cv44 (hereinafter, the "Robinson Case"), ECF No. 1.

4. The Gibson Case: On January 28, 2019, plaintiff Nicole Gibson, on behalf of herself and other purported class members, filed a complaint against the three Jackson Hewitt Defendants as well as Bayside Capital, Inc. and Corsair Capital, LLC. See Case No. 2:19cv49 (hereinafter, the "Gibson Case"), ECF No. 1.

On January 29, 2019, plaintiffs in all four cases jointly moved to consolidate the actions pursuant to Fed. R. Civ. P. 42(a).[1] See Newbauer Case, ECF No. 28; Endres Case, ECF No. 6; Robinson Case, ECF No. 6; Gibson Case, ECF No. 8. The next day, plaintiffs jointly moved for entry of a proposed "Case Management Order" designating interim lead co-counsel of the putative class pursuant to Fed. R. Civ. P. 23(g)(3). See Newbauer Case, ECF No. 28; Endres Case, ECF No. 8; Robinson Case, ECF No. 8; Gibson Case, ECF No. 10. On February 12, 2019, while these motions were pending, the Jackson Hewitt Defendants filed a motion to transfer pursuant to 28 U.S.C. §§ 1406 and 1404(a) in each of the four cases. See Newbauer Case, ECF No. 38; Endres Case, ECF No. 11; Robinson Case, ECF No. 12; Gibson Case, ECF No. 22. Three days later, on February 15, 2019, the defendants in each case moved to stay the actions pending the Court's resolution of such motions to transfer. See Newbauer Case, ECF No. 44; Endres Case, ECF No. 16; Robinson Case, ECF No. 18; Gibson Case, ECF No. 27.

On February 20, 2019, by written Opinion and Order entered in each case, the Court granted the defendants' request for a stay, stayed each action pending resolution of the motions to transfer, directed the parties to set a prompt hearing on same, and held the plaintiffs' Motions to

---

[1] In this same motion, plaintiffs also moved for reassignment of the cases to the same district judge, but such request was rendered moot because all cases were assigned to the undersigned pursuant to the internal policies and practices of this Court concerning related cases.

Consolidate and Motions for Entry of Case Management Order in abeyance during the pendency of the stay. See Newbauer Case, ECF No. 50; Endres Case, ECF No. 23; Robinson Case, ECF No. 23; Gibson Case, 32.

On February 26, 2019, after the Newbauer Case was stayed, plaintiff Newbauer attempted to file without leave of Court an amended complaint, which purports to (1) add two new plaintiffs – Valerie Bias and Nicole Wink, both Virginia residents – and (2) remove the two non-Jackson Hewitt defendants, Bayside Capital, Inc. and Corsair Capital, LLC. Newbauer Case, ECF No. 51. Similarly, while the Gibson Case was stayed, Gibson attempted to file two Notices of Voluntary Dismissal purporting to dismiss Bayside Capital, Inc. and Corsair Capital, LLC as defendants. See Gibson Case, ECF Nos. 46, 47. Additionally, on March 11, 2019, plaintiffs in each of the four cases attempted to file without leave of Court a Notice of Supplemental Authority with respect to the motions to transfer after the briefing schedule for said motions had expired. Newbauer Case, ECF No. 54; Endres Case, ECF No. 26; Robinson Case, ECF No. 28; Gibson Case, ECF No. 40.

On March 14, 2019, the parties in the above-captioned actions appeared before the Court for a joint hearing on the motions to transfer pending in each case. At the conclusion of the hearing, the Court took the motions under advisement. The Court also advised the parties that any attempted filings after the cases were stayed on February 20, 2019, without the Court's leave, were procedurally defective and would not be considered by the Court. Accordingly, the attempted changes to the named parties in the Newbauer and Gibson Cases described above were not considered for purposes of deciding the pending motions to transfer. Such motions are now before the Court.

## II.     LEGAL STANDARD

The Jackson Hewitt Defendants ask the Court to transfer each of the four cases to the United States District Court for the District of New Jersey, Newark Division pursuant to 28 U.S.C.

§ 1406(a) or, in the alternative, pursuant to 28 U.S.C. § 1404(a). Section 1406(a) provides that, if venue is improper in the district or division in which an action is brought, the court "shall dismiss" such action or, "if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Section 1404(a), by contrast, applies to actions in which venue is proper, but it nonetheless permits a court, in its discretion, to transfer a case "for the convenience of parties and witnesses," among other factors, "to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Therefore, while both § 1404 and § 1406 permit transfer, they are "mutually exclusive." Convergence Techs. (USA), LLC v. Microloops Corp., 711 F. Supp. 2d 626, 640 (E.D. Va. 2010) (quoting 14D Wright, Miller & Cooper, Federal Practice and Procedure § 3827, at 575 (internal citation omitted)).

When a defendant objects to the propriety of venue under § 1406, the plaintiff bears the burden to prove that venue is proper, as is the case when a defendant files a motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3). See Adhikari v. KBR, Inc., No. 1:15cv1248, 2016 WL 4162012, at *3 (E.D. Va. Aug. 4, 2016) (citing Bartholomew v. Va. Chiropractors Ass'n, Inc., 612 F.2d 812, 816 (4th Cir. 1979), overruled on other grounds by Union Labor Life Ins. Co. v. Pireno, 458 U.S. 119, 125 n.6 (1982)). By contrast, on a motion to transfer under § 1404(a), the defendant, as the party seeking transfer, bears the burden to prove that transfer is appropriate.[2]

---

[2] Plaintiffs claim in their joint Opposition that the moving party bears the burden of proof in both instances. See Resp., ECF No. 52, at 5. But that is not the law in this circuit. See, e.g., Adhikari v. KBR, Inc., No. 1:15cv1248, 2016 WL 4162012, at *3 (E.D. Va. Aug. 4, 2016) (citing Bartholomew v. Va. Chiropractors Ass'n, Inc., 612 F.2d 812, 816 (4th Cir. 1979), overruled on other grounds by Union Labor Life Ins. Co. v. Pireno, 458 U.S. 119, 125 n.6 (1982)); Johnson v. CSX Transp., Inc., No. 7:06cv00130, 2006 WL 2037570, at *1 (W.D. Va. July 18, 2006) (citation omitted); see also 14D Wright, Miller & Cooper, Federal Practice and Procedure § 3826 (4th ed. 2017) (addressing the circuit split and noting that the "weight of authority," including Fourth Circuit precedent, supports this position). Indeed, the Delaware case cited by plaintiffs, In re Mobile Telecommunication Technologies, 243 F. Supp. 3d 478, 483 (D. Del. 2017), aligns with the minority position embraced by the Third Circuit rather than the majority position embraced by the Fourth Circuit. Moreover, Nossen v. Hoy, 750 F. Supp. 740, 742 (E.D. Va. 1990), also cited by plaintiffs, is inapposite as it deals only with a motion for discretionary transfer under § 1404(a).

<u>JTH Tax, Inc. v. Lee</u>, 482 F. Supp. 2d 731, 736 (E.D. Va. 2007).

In either case, before granting a motion to transfer, the Court must first satisfy itself that the transferee court is in a "district or division in which [the case] could have been brought" initially. <u>Convergence Techs.</u>, 711 F. Supp. 2d at 640 (quoting 28 U.S.C. §§ 1404(a), 1406(a)). Moreover, in deciding a motion to transfer, the pleadings are not accepted as true, and the Court may consider evidence outside the pleadings, including affidavits and declarations. <u>W. Ref. Yorktown, Inc. v. BP Corp. N. Am. Inc.</u>, 618 F. Supp. 2d 513, 516 (E.D. Va. 2009) (citing <u>Sucampo Pharm., Inc. v. Astellas Pharma, Inc.</u>, 471 F.3d 544, 549–50 (4th Cir. 2006)).

## III.   MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1406

In the first part of their motions, the Jackson Hewitt Defendants argue that venue is improper in the Eastern District of Virginia and that the Court should therefore transfer each of the four cases to the District of New Jersey pursuant to § 1406(a). In support, they argue that neither Section 12 of the Clayton Act, 15 U.S.C. § 22, nor the general venue statute, 28 U.S.C. § 1391, provides a valid basis for laying venue in this Court, and that, by contrast, venue would be proper in the District of New Jersey, the defendants' home district. In response, Plaintiffs do not contest that venue would be proper in the District of New Jersey, but they insist that venue is proper in this district under both the Clayton Act and the general venue statute and that transfer under § 1406(a) is therefore unwarranted. The Court will address each of these arguments in turn.

### A.   SECTION 12 OF THE CLAYTON ACT

Plaintiffs' first purported basis for laying venue in this district is Section 12 of the Clayton Act, 15 U.S.C. § 22 ("Section 12"), which governs venue in antitrust actions brought against corporate defendants. Section 12 states:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such

cases may be served in the district of which it is an inhabitant, or wherein it may be found.

15 U.S.C. § 22. The statute was intended to be an "enlargement" of the previous venue provisions governing antitrust cases and to provide antitrust plaintiffs with a wider choice of forum. United States v. Scophony Corp. of Am., 333 U.S. 795, 804 (1948). "However, [it] was not intended to provide a forum-shopping plaintiff with an unfettered choice of venue." King v. Johnson Wax Assocs., Inc., 565 F. Supp. 711, 714–15 (D. Md. 1983).

Section 12 sets out three possible bases for venue over a corporate defendant. The defendant must (1) be an "inhabitant" of, (2) be "found in, or (3) "transact business" in a district for venue to be proper there. 15 U.S.C. § 22. For this purpose, being an "inhabitant" of a district means the district is in the defendant's state of incorporation. See In re Automotive Refinishing Paint Antitrust Litig., 358 F.3d 288, 293 n.6 (3d. Cir. 2004); Omega Homes, Inc. v. Citicorp. Acceptance Co., 656 F. Supp. 393, 397 (W.D. Va. 1987) (citation omitted). For a corporation to be "found" in a district, the corporation "must have duly authorized 'officers and agents carrying on the business of the corporation within the district,'" meaning that such officers and agents are engaged in "continuous local activity" there. Reynolds Metals Co. v. Columbia Gas Sys., Inc., 669 F. Supp. 744, 747 (E.D. Va. 1987) (internal citations omitted). Lastly, a corporation "transacts business" for purposes of Section 12 if the corporation engages in business of "any substantial character" in the district, using a "practical, non-technical" sense of doing business. United States v. Microsemi Corp., No. 1:08cv1311, 2009 WL 577491, at *4 (E.D. Va. Mar. 4, 2009) (citing Scophony, 333 U.S. at 810); see also Reynolds, 669 F. Supp. at 747.

Where, as here, a plaintiff sues multiple defendants, venue must be established as to each defendant. Williams v. Canon, Inc., 432 F. Supp. 376, 382 (C.D. Cal. 1977) (citing Bankers Life & Casualty Co. v. Holland, 346 U.S. 379, 384 (1953)). Moreover, the fact that an alleged co-

conspirator of a corporate defendant is "found" in the district is irrelevant to the Section 12 venue analysis as to that defendant. Id. Therefore, the issue before the Court is whether Section 12 establishes venue as to each defendant in the above-captioned cases.

Plaintiffs argue that each of the Jackson Hewitt Defendants "transacts business" in this district as contemplated by Section 12 of the Clayton Act and thus can be sued here. See Newbauer Case, ECF No. 52, at 16. In support, plaintiffs claim that "[t]he Jackson Hewitt Defendants individually – and collectively – organized and operated a nationwide tax service," which resulted in "extensive" economic connections in Virginia, "including the establishing of dozens of franchises within [this] District, hiring and compensating numerous employees, and providing tax preparation services to hundreds if not thousands of customers in Virginia." Id.

As an initial matter, the Jackson Hewitt Defendants concede that defendant Jackson Hewitt, Inc. ("JHI"), a Virginia corporation, inhabits, is found in, and transacts business in the Eastern District of Virginia within the meaning of Section 12. However, relying on the sworn Declaration of Victoria McShane, the Director of Franchise Compliance for JHI, the Jackson Hewitt Defendants reject plaintiffs' assertion that the remaining Jackson Hewitt Defendants – Tax Services of America Inc. ("TSA") and Jackson Hewitt Tax Service Inc. ("JHTSI") – transact business in this district within the meaning of Section 12. See Newbauer Case, ECF No. 39-1 (hereinafter, "McShane Decl."). As set forth below, after reviewing this evidence, which is unrebutted by plaintiffs, the Court finds that Section 12 of the Clayton Act is not a valid basis for laying venue in this Court with respect to any of the four cases.

First, plaintiffs have not shown that defendant TSA inhabits, is found in, or transacts business in this district. TSA is a Delaware corporation, not a Virginia corporation, and therefore is not an "inhabitant" of this district within the meaning of Section 12. See McShane Decl. ¶ 6.

Nor is TSA "found" in this district, given that its principal place of business and headquarters are in Jersey City, New Jersey and there is no evidence before the Court showing that any of TSA's officers or agents carry on continuous local business activity in this district. See id. Finally, plaintiffs have not shown that TSA "transacts business" in this district. According to the unrebutted declaration of Ms. McShane, TSA operates Jackson Hewitt® company-owned locations, including five such locations in the Western District of Virginia, but it does not operate any such locations in this district, nor does it have any employees located in this district. Id. ¶ 12. Therefore, there is no evidence before the Court that TSA engages in business of "any substantial character" in this district sufficient to lay venue here under Section 12.

Similarly, plaintiffs have not shown that defendant JHTSI inhabits, is found in, or transacts business in this district within the meaning of Section 12. Like TSA, JHTSI is a Delaware corporation with its principal place of business in New Jersey and thus is not an "inhabitant" of this district. Id. ¶ 7. Nor have plaintiffs shown that JHTSI is "found" in or "transacts business" in this district. As set forth in the unrebutted McShane Declaration, JHTSI "does not own or operate Jackson Hewitt® locations; it does not enter into franchise agreements; and . . . [it] does not have any employees." Id. ¶ 8. Rather, it is "for all intents and purposes, a holding company of the Jackson Hewitt® family of companies," including JHI and TSA. Id.

Though plaintiffs try to impute JHI's business activities in this district to JHTSI as JHI's parent company, plaintiffs fail to establish the requisite connection between the entities for this purpose. As this Court explained in Reynolds, "the essential element required before a court may pierce the corporate veil to [find proper venue as to] the foreign parent is control over the conduct of the subsidiary that allegedly violated antitrust laws." 669 F. Supp. at 748. Here, the only evidence before the Court on this point is Ms. McShane's sworn statement that "JHTSI does not

supervise or otherwise exercise control over the operations of JHI or TSA." See McShane Decl. ¶ 8. Plaintiffs have not refuted this claim. Therefore, plaintiffs have failed to establish the requisite element of control to find proper venue with respect to JHTSI under Section 12 of the Clayton Act. Cf. DataCell ehf. v. Visa, Inc., No. 1:14-CV-1658, 2015 WL 4624714, at *4 (E.D. Va. July 30, 2015) (Lee, J.) (finding that MasterCard did not satisfy venue provision of Clayton Act or satisfy minimum contacts to be sued in Virginia because it "is a New York company that holds stock and does little else. It is not found, nor does it conduct business in Virginia.").

In summary, of the three Jackson Hewitt Defendants, which are named as defendants in each of the four cases, plaintiffs can only establish Section 12 venue as to defendant JHI. But, as noted above, venue must be established as to each defendant. Therefore, plaintiffs in each of the four cases have failed to show that Section 12 of the Clayton Act provides a valid basis to lay venue in this Court.

**B.     THE GENERAL VENUE STATUTE, 28 U.S.C. § 1391**

Notwithstanding their venue arguments under the Clayton Act, plaintiffs contend that venue is properly laid in this Court pursuant to the general venue statute, 28 U.S.C. § 1391, which "govern[s] the venue of all civil actions brought in the district courts of the United States." 28 U.S.C. § 1391(a). This section provides that a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Id. § 1391(b). Plaintiffs concede that the residual provision of § 1391(b)(3) does not apply, but

they argue that venue is proper in each case because all defendants are residents of this district within the meaning of § 1391(b)(1) and because a substantial part of the events or omissions giving rise to the claim occurred in this district within the meaning of § 1391(b)(2). The Court will address each of these arguments in turn.

### 1. Venue under § 1391(b)(1)

The first issue is whether all defendants in each case are residents of Virginia within the meaning of § 1391(b)(1) and, if so, whether at least one defendant resides in this district. For purposes of this section, a defendant entity is deemed to reside "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." Id. § 1391(c). Section 1391(d) provides additional venue rules for determining the residency of corporations in States with multiple districts like Virginia:

> For purposes of venue under this chapter, in a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

Id. § 1391(d).

### a. Determining Residency of Corporate Defendants

When applying § 1391(b)(1) to corporate defendants, this Court has held that personal jurisdiction and venue are similar but not identical questions, with the jurisdictional inquiry focusing on contacts with the forum state and the venue inquiry focusing on contacts with the forum district. See Global Touch Solutions, LLC v. Toshiba, Corp., 109 F. Supp. 3d 882, 891–92 (E.D. Va. 2015) (Davis, J.) (collecting cases). Therefore, for each corporate defendant, a district court must first determine if such defendant is subject to personal jurisdiction in Virginia by having sufficient minimum contacts therein. Id. at 891. The Court must then determine if such defendant

has sufficient minimum contacts in the forum district. Id. at 892. If so, the corporation is deemed to "reside" there for venue purposes. Id. If the corporation does not have sufficient minimum contacts in any of the judicial districts in the State, it will be deemed to reside in the district within which it has the "most significant" contacts. 28 U.S.C. § 1391(d).

"A federal district court may only exercise personal jurisdiction over a foreign corporation if such jurisdiction is authorized by the long-arm statute of the State in which it sits and application of the long-arm statute is consistent with the due process clause of the Fourteenth Amendment, U.S. Const. amend. XIV § 1. Consulting Engineers Corp. v. Geometric Ltd., 561 F.3d 273, 277 (4th Cir. 2009) (citation omitted). The relevant portion of Virginia's long-arm statute provides: "A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's . . . [t]ransacting any business in this Commonwealth [or] . . . "[c]ausing tortious injury by an act or omission in this Commonwealth . . ." Va. Code Ann. § 8.01–328.1(A)(1), (3). The exercise of personal jurisdiction is proper, then, only if the asserted cause of action "arises from" the non-resident defendant's transacting business or causing tortious injury in Virginia. "Because Virginia's long-arm statute is intended to extend personal jurisdiction to the extent permissible under the due process clause, the statutory inquiry merges with the constitutional inquiry." Consulting Engineers, 561 F. 3d at 277 (citation omitted).

With respect to the constitutional inquiry, the corporation must have sufficient "minimum contacts" with Virginia as required under International Shoe Co. v. Washington, 326 U.S. 310 (1945), and its progeny. The Fourth Circuit has "synthesized the due process requirements for asserting specific personal jurisdiction in a three part test," id. at 278, which considers "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and

(3) whether the exercise of personal jurisdiction would be constitutionally reasonable," id. (quoting

ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002)).

        b.     Analysis

Based on the above, determining whether venue is proper under § 1391(b)(1) is a defendant-based inquiry. In the Endres and Robinson Cases, the three Jackson Hewitt Defendants (all corporations) are the only named defendants. In the Newbauer and Gibson Cases, Bayside Capital, Inc. ("Bayside") and Corsair Capital, LLC ("Corsair") are named defendants along with the Jackson Hewitt Defendants.

As an initial matter, the Jackson Hewitt Defendants admit that defendant JHI, a Virginia corporation, has significant contacts within Virginia, including in the Eastern District of Virginia, because JHI "is the franchisor of the Jackson Hewitt® brand and provides . . . support to Jackson Hewitt® franchisees in the Commonwealth," including several franchisees in this district. See McShane Decl. ¶ 10. Therefore, the Jackson Hewitt Defendants concede that JHI is deemed to reside in this district for purposes of §1391(b)(1). The issue then is whether each remaining defendant "resides" in Virginia as required to lay venue here under that provision.

        i.     TSA "Resides" in Virginia.

Based on the evidence before it, the Court finds that defendant TSA, a Delaware corporation, "resides" in Virginia for purposes of § 1391(b)(1). The Jackson Hewitt Defendants admit that TSA conducts business in Virginia. See Newbauer Case, ECF No. 39 at 11. Furthermore, according to the unrebutted McShane Declaration, TSA operates five company-owned Jackson Hewitt® locations in Virginia, including in Martinsville, Danville, and Stuart. McShane Decl. ¶ 12. Therefore, TSA clearly satisfies Virginia's long-arm statute and has sufficient minimum contacts in Virginia to be subject to the Court's personal jurisdiction in

Virginia.[3]  See Reynolds, 301 F. Supp. 2d at 551 ("A nonresident corporation consents to jurisdiction in a state's courts by actually doing business in that state . . . [and] avail[ing] itself of the protections of that state's laws . . .").

### ii.  But All Remaining Defendants Do Not "Reside" in Virginia.

However, the Court finds that plaintiffs have failed to show that all remaining defendants also "reside" in Virginia for purposes of establishing venue under § 1391(b)(1).  As noted above, Defendant JHTSI is a Delaware corporation and, for all intents and purposes, is a holding company for JHI and TSA.  See McShane Decl. ¶ 7.  It does not conduct any business or have any employees or agents in Virginia, nor does is it supervise or direct the actions of its subsidiaries in Virginia.  Id. ¶ 12.  Similarly, defendants Bayside and Corsair (sued in the Newbauer and Gibson Cases), which are the former and current majority-owners of JHTSI, respectively, are foreign entities and do not have any offices or employees in Virginia.  See Declaration of Jeremy Schein, Newbauer Case, ECF No. 39-2, ¶ 5; Declaration of Richard Siegel, Newbauer Case, ECF No. 39-3, ¶ 5.

"Generally, a foreign parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there[.]"  Hargrave v. Fibreboard Corp., 710 F.2d 1154, 1159 (5th Cir. 1983).  Therefore, unless plaintiffs can pierce the corporate veil as to the remaining defendants in each case, JHI's contacts in Virginia cannot be attributed to these remaining defendants for venue purposes.  See Wince v. Easterbrooke Cellular Corp., 681 F. Supp. 2d 688, 692 (N.D.W. Va. 2010) (finding that a parent company did not have sufficient minimum contacts in West Virginia because it "is merely a Delaware holding company that conducts no business and sells no services or products in West Virginia, or elsewhere[;] . . . it has no employees

---

[3] Even though it appears that TSA only has sufficient minimum contacts in the Western District of Virginia, not in this district, the Court need only determine whether TSA resides in the *State* for purposes of § 1391(b) because the Jackson Hewitt Defendants concede that at least one of the defendants in each case – JHI – resides in the Eastern District of Virginia.  See 28 U.S.C. § 1391(b)(1).

or real property in West Virginia, it is not licensed to do business in West Virginia, it has no registered agent in West Virginia, and it does not advertise in West Virginia."); cf. Roanoke Cement Co., LLC v. Chesapeake Prod., Inc., No. 2:07cv97, 2007 WL 2071731, at *6 (E.D. Va. July 13, 2007) (Morgan, J.) (finding that a foreign holding company could be hailed into court in Virginia because its officers "ignored corporate formalities in negotiating on behalf of [its subsidiary in Virginia]" and therefore could not "hide behind the fiduciary shield of their directorship or corporate offices to avoid personal jurisdiction").

Here, plaintiffs have not alleged that defendant JHTSI has ignored any corporate formalities with respect to JHI or TSA, nor have plaintiffs rebutted Ms. McShane's sworn declaration that "JHTSI does not supervise or otherwise exercise control over the operations of JHI or TSA." McShane Decl. ¶ 8. Therefore, based on the evidence before it, the Court finds that defendant JHTSI does not have sufficient minimum contacts in Virginia to be sued here and thus cannot "reside" here for venue purpose. Furthermore, because JHTSI is named in each of the four cases, the fact that JHTSI does not reside in Virginia means that § 1391(b)(1) fails to establish proper venue in each case.

### 2. Venue under § 1391(b)(2)

Regardless, plaintiffs argue that § 1391(b)(2) permits venue to be laid in this district because "a substantial part of the events or omissions giving rise to the claim[s]" in each case occurred here. 28 U.S.C. § 1391(b)(2). Determining whether venue is proper under this provision requires a two-part analysis. See Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 432 (2d Cir. 2005). First, the court must identify the nature of the claims and the acts or omissions that the plaintiff alleges give rise to those claims. Id. Second, the court must determine whether a substantial part of those acts or omissions occurred in this district. Id. When deciding the second part –

15

[the] analysis looks to the "entire sequence of events underlying the claim," not only "those matters that are in dispute or that directly led to the filing of the action." Mitrano v. Hawes, 377 F.3d 402, 405 (4th Cir. 2004). However, events or omissions "that might only have some tangential connection with the dispute in litigation are not enough." CMA CGM, LLC v. RLI Ins. Co., No. 12-cv-03306, 2013 WL 588978, at *2 (D. Md. Feb. 13, 2013) (quoting Cottman Transmission Sys., Inc. v. Martino, 36 F.3d 291, 294 (3d Cir. 1994)). In other words, courts "take seriously the adjective 'substantial.'" Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 357 (2d Cir. 2005).

See Adhikari v. KBR, Inc., No. 1:15cv1248, 2016 WL 4162012, at *4 (E.D. Va. Aug. 4, 2016).

At the hearing on the motions to transfer, plaintiffs argued that, for purposes of this analysis, the Court should consider the claims of all purported class members, many of whom allegedly reside in and were allegedly harmed by the defendants in the Eastern District of Virginia. But "[t]he law is clear that in determining whether venue for a putative class action is proper, courts are to look only at the allegations pertaining to the named representatives." Murdoch v. Rosenberg & Assocs., LLC, 875 F. Supp. 2d 6, 11 (D.D.C. 2012) (quoting Cook v. UBS Fin. Srvcs., Inc., No. 05 Civ. 8842(SHS), 2006 WL 760284, at *6 n.2 (S.D.N.Y. Mar. 21, 2006) (citing 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1757 (3d ed.) and United States ex rel. Sero v. Preiser, 506 F.2d 1115, 1129 (2d Cir. 1974)). "Courts accordingly focus on facts relevant to a named plaintiff's claim in determining venue and reject attempts to venture into the facts as may be relevant to prospective class members." Id. Therefore, the Court now turns to a case-by-case venue analysis under § 1391(b)(2), relying only on those claims asserted by the named plaintiffs in each action.

### a. The Newbauer Case

Plaintiff Carson Newbauer alleges that, between January 2005 and the present, the Jackson Hewitt Defendants, along with defendants Bayside and Corsair, engaged in *per se* violations of Sections 1 and 3 of the Sherman Act, 15 U.S.C. §§ 1, 3, when they conspired to suppress wages and eliminate competition for labor among the Jackson Hewitt Defendants and their franchisees

by entering into and enforcing certain no-poach and no-recruit agreements with their franchisees. See Newbauer Case, ECF No. 1, ¶¶ 108–111. According to the complaint, Newbauer is an individual residing in Saginaw, Michigan, who, during the purported class period, "worked as an Assistant General Manager for franchise locations of Jackson Hewitt that were owned by the same franchisee, Dara Ana Tax Service." Newbauer Case, ECF No. 1, ¶ 14. Newbauer claims that he received lower compensation for such employment than he otherwise would have received in the absence of the alleged conspiracy and thus has been "injured in [his] property" and has suffered damages. Id. ¶ 112.

Based on these allegations, a substantial part of the events or omissions giving rise to Newbauer's claims obviously arose in Michigan, where Newbauer resides, where he was allegedly employed by a Jackson Hewitt franchisee, where he was allegedly harmed by antitrust violations, and where labor competition between the Jackson Hewitt Defendants and his employer was allegedly suppressed.[4] Additionally, certain relevant acts or omissions may have occurred in New Jersey to the extent the Jackson Hewitt Defendants negotiated, entered into, and/or enforced the allegedly unlawful agreements from their principal place of business. But there is no substantial connection between the events underlying Newbauer's claims and the Eastern District of Virginia.

Nevertheless, plaintiffs argue that when conducting a § 1391(b)(2) analysis, the Court must consider "the entire sequence of events underlying the claim," which, in plaintiffs' view, includes the history of JHI, which was founded and headquartered in the Eastern District of Virginia for seventeen years before it moved to New Jersey. Opp., ECF No. 51, at 11 (quoting Mitrano v. Hawes, 377 F.3d 402, 405 (4th Cir. 2004)). Plaintiffs claim that the allegedly unlawful no-poach

---

[4] Though not expressly stated in the complaint, Dara Ana Tax Service, the alleged owner of the franchise locations where Newbauer worked, is based in Saginaw, Michigan where Newbauer allegedly resides. See Michigan's Department of Licensing and Regulatory Affairs (LARA), Corporations Online Filing System, https://cofs.lara.state.mi.us/CorpWeb/CorpSearch/CorpSearchResults.aspx (last visited March 25, 2019).

and no-recruit agreements at issue were "likely" established in Jackson Hewitt's standard franchise agreement while JHI was still headquartered in Virginia. Id. at 12–13. However, as alleged in the complaint, Newbauer's claims are limited to the purported class period beginning in 2005, which is six years after JHI moved its headquarters from Virginia Beach, Virginia to New Jersey in 1999. See McShane Decl. ¶ 5. Therefore, the Court finds that any purported connection between Newbauer's claims and JHI's former headquarters in Virginia Beach is merely "tangential" and therefore insufficient to establish venue under § 1391(b)(2). See Adhikari, WL 4162012, at *4 (internal citation omitted).

b.    The Robinson Case

In the Robinson Case, plaintiff Jessica Robinson alleges essentially the same Sherman Act violations as those alleged in the Newbauer Case except Robinson sues only the Jackson Hewitt Defendants and she alleges "antitrust injury" stemming from her employment with a Jackson Hewitt location in Maine, not Michigan.[5]  Robinson Case, ECF No. 1, ¶¶ 99–106.   Specifically, Robinson alleges that she resides in Rockland, Maine and that she "worked as a Tax Preparer primarily at Jackson Hewitt's Rockland, Maine location from 2017 through 2018." Id. ¶ 6. She claims that the defendants' antitrust conspiracy "severely limited [her] job mobility and served to significantly suppress [her] compensation" during the time she worked for Jackson Hewitt. Id. ¶¶ 1, 6.

Based on these allegations, § 1391(b)(2) fails to establish venue in the Robinson Case for the same reasons it fails in the Newbauer Case. All the significant events or omissions underlying Robinson's claims occurred either in Maine, where she was employed by Jackson Hewitt and where her alleged antitrust injury occurred, or in New Jersey, the defendants' principal place of

---

[5] Robinson also defines the relevant class period as beginning in 2003 rather than 2005. Id. ¶ 79.

business. No such events or omissions occurred in the Eastern District of Virginia. Furthermore, plaintiffs' reliance on JHI's historical ties to this district fails for the same reasons it fails in the Newbauer Case. Indeed, Robinson's alleged term of employment with Jackson Hewitt began in 2017, eighteen years after JHI moved its headquarters from Virginia Beach to New Jersey.

In sum, plaintiff Robinson has failed to show that "a substantial part of the events or omissions" giving rise to her claims occurred in the Eastern District of Virginia and therefore has failed to show that venue is proper in this district pursuant to § 1391(b)(2).

      c.    <u>The Gibson Case</u>

In the Gibson Case, plaintiff Nicole Gibson brings her purported class action against the Jackson Hewitt Defendants and defendants Corsair and Bayside, and she alleges essentially the same violations of the Sherman Act as those alleged in the Newbauer and Robinson Cases above.[6] <u>See</u> Gibson Case, ECF No. 1, ¶¶ 89–98. Gibson alleges that, from 2000 to 2016, she worked for Jackson Hewitt as a tax preparer. <u>Id.</u> ¶ 17. Though she alleges that she is a Pennsylvania resident, she does not allege where she was employed by Jackson Hewitt. <u>Id.</u> Gibson claims that, as a direct result of the defendants' alleged antitrust conspiracy, "[she] suffered reduced wages, reduced employment benefits, loss of professional growth opportunities, and worsened working conditions because of the express restraint of trade among Jackson Hewitt and Jackson Hewitt franchisees." <u>Id.</u> ¶ 91.

Based on these allegations, a substantial part of the events and omissions giving rise to Gibson's claims occurred either where she was employed with Jackson Hewitt (presumably Pennsylvania) or in New Jersey, where one or more of the Jackson Hewitt Defendants were negotiating, entering, and/or enforcing the allegedly unlawful non-competition agreements with

---

[6] Gibson defines her purported class period as beginning in 2003. <u>See</u> Gibson Case, ECF No. 1, ¶ 99.

Gibson's Jackson Hewitt location(s). As noted above, Gibson's complaint does not clarify whether she worked for Jackson Hewitt in her state of residence, Pennsylvania. But she does not allege that she worked for Jackson Hewitt in the Eastern District of Virginia. Nor do any other events or omissions giving rise to her antitrust claims occur in this district. Moreover, as with the two previous cases, JHI's former operations in Virginia Beach are not substantially connected to Gibson's claims given that Gibson allegedly began her employment with Jackson Hewitt in 2000, after JHI moved its headquarter to New Jersey.

In sum, like the plaintiffs in the Newbauer and Robinson Cases, plaintiff Gibson has failed to show that "a substantial part of the events or omissions" giving rise to her claims occurred in the Eastern District of Virginia and therefore has failed to show that venue is proper in this district pursuant to § 1391(b)(2).

      d.    The Endres Case

Lastly, the Court turns to the Endres Case. In Endres, plaintiffs Tom Endres, Latonya Fields, and Laura Metz bring a purported class action against the Jackson Hewitt Defendants, alleging essentially the same violations of the Sherman Act as alleged in the other three cases. See Endres Case, Amended Complaint, ECF No. 10, ¶¶ 101–108. Each plaintiff in Endres alleges that he or she worked as a tax preparer at a Jackson Hewitt location during the purported class period (2003–present) and suffered suppressed wages and other harms as a result of the defendants' alleged conspiracy to restrain trade by entering into certain "anticompetitive agreements." Id. ¶¶ 6–8, 105.

However, the Endres Case is clearly distinct from the previous three cases for purposes of the venue inquiry because one of its named plaintiffs, Laura Metz, resides in the Eastern District of Virginia. Id. ¶ 8. Indeed, plaintiff Metz alleges that she resides in Virginia Beach, that she worked as a tax preparer and supervisor at Jackson Hewitt's Norfolk and Virginia Beach locations

20

from 2007–2013, and that she received suppressed wages from such employment as a result of the defendants' alleged conspiracy. Id. Given these allegations, the Court finds that a substantial part of the events or omissions giving rise to the claims in the Endres Case occurred in this district. Therefore, unlike the plaintiffs in the Newbauer, Robinson, and Gibson Cases, the plaintiffs in the Endres Case have met their burden to show that venue is properly laid in this Court under 28 U.S.C § 1391(b)(2).

C. CONCLUSION

In summary, upon consideration of the Jackson Hewitt Defendants' § 1406 motions to transfer based on improper venue in each case, the Court finds that the plaintiffs in the Newbauer, Robinson, and Gibson Cases have failed to show that either of their two purported bases for laying venue in this Court – Section 12 of the Clayton Act, 15 U.S.C. § 22, or the general venue statute, 28 U.S.C. § 1391 – establishes proper venue in their respective cases. The Court further finds, and the parties have agreed, that venue in each such cases would be proper in the District of New Jersey, Newark Division.

Therefore, the Jackson Hewitt Defendants' Motions to Transfer filed in the Newbauer, Robinson, and Gibson Cases are hereby **GRANTED**, and such cases shall be transferred to the District of New Jersey, Newark Division, pursuant to 28 U.S.C. § 1406(a).

However, with respect to the Endres Case, the Court finds that plaintiffs have met their burden to show that venue is proper in this Court under 28 U.S.C. § 1391(b)(2). Therefore, the Jackson Hewitt Defendants' § 1406(a) motion to transfer the Endres Case based on improper venue is hereby **DENIED**. Below, the Court shall address whether transfer of the Endres Case is nonetheless warranted under 28 U.S.C. § 1404(a).

## IV.  MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404

With the Jackson Hewitt Defendants prevailing on their § 1406 motions in all but the Endres Case, the only remaining issue before the Court is whether transfer of the Endres Case is justified under 28 U.S.C. § 1404(a).

### A.  APPLICABLE LAW

The decision whether to transfer a civil action pursuant to § 1404 is committed to "the sound discretion of the district court." Beam Laser Sys., Inc. v. Cox Commc'ns, Inc., 117 F. Supp. 2d 515, 517 (E.D. Va. 2000). In making that determination, the Court must consider "(1) whether the claims might have been brought in the transferee forum; and (2) whether the interest of justice and convenience of the parties and witnesses justify transfer to that forum." Nader v. McAuliffe, 549 F. Supp. 2d. 760, 762 (E.D. Va. 2008) (internal quotation omitted). The second prong of that analysis involves weighing several factors, including: "(1) the plaintiff's [initial] choice of venue; (2) witness convenience and access; (3) the convenience of the parties; and (4) the interest of justice." Id. at 763 (internal quotation omitted). As noted above, the party seeking transfer under § 1404(a) bears the burden to prove that transfer is appropriate. Lee, 482 F. Supp. 2d at 736.

### B.  DISCUSSION

As an initial matter, there is no dispute that the Endres Case could have been brought in the requested transferee forum, the District of New Jersey (Newark Division). Therefore, the issue is whether the Jackson Hewitt Defendants have met their burden to show that the relevant § 1404(a) factors ultimately weigh in favor of transferring the Endres Case.

#### 1.  Plaintiffs' Choice of Venue

With respect to the first factor, the Jackson Hewitt Defendants argue that the plaintiffs' choice of venue in the Endres Case "is entitled to no weight" because the initial iteration of the lawsuit was brought by Endres, an Illinois resident, and Fields, a Mississippi resident, who have

no ties to the Eastern District of Virginia. <u>See</u> Endres Case, ECF No. 14, at 18 (citing, e.g., <u>Advanced Mktg. Sys., LLC v. Delhaize Am., LLC</u>, No. 2:15CV74, 2015 WL 12806533, at *3 (E.D. Va. July 31, 2015) (finding that where plaintiff is not at "home" in chosen venue, plaintiff's choice of venue is "not entitled to substantial weight")). Defendants further argue that plaintiff Laura Metz, who is the only plaintiff at "home" in this district, was added after the lawsuit was already filed "in a transparent effort at forum-shopping." <u>Id.</u>

In response, plaintiffs acknowledge that "the weight given to plaintiff's choice of venue varies with the significance of the contacts between the venue chosen by plaintiff and the underlying cause of action." Opp., ECF No. 24, at 19 (quoting <u>Bd. of Trustees, Sheet Metal Workers Nat. Fund v. Baylor Heating & Air Conditioning, Inc.</u>, 702 F. Supp. 1253, 1256 (E.D. Va. 1988)). However, plaintiffs argue that plaintiff Metz's strong ties to the Eastern District of Virginia, which is also where she allegedly worked at Jackson Hewitt locations and allegedly suffered from suppressed wages and other antitrust injuries, constitute significant contacts with this district that justify giving Metz's choice of forum substantial weight.[7] <u>Id.</u> at 20.

Upon consideration of the first factor, the Court finds it significant that only one of the three named plaintiffs is at home in this district, and such plaintiff (Metz) was added after the lawsuit was originally filed. That said, Metz's choice of forum when filing the amended complaint should still have some weight given that both she and her claims have significant contacts in this district. Therefore, given the totality of the circumstances, the Court finds that the plaintiffs'

---

[7] In their joint Opposition, plaintiffs also argue that their choice of forum in this case should receive even greater weight than normal because Congress "intended" to give plaintiffs a wide choice of venue by enacting a "liberal venue provision" for antitrust cases, namely, Section 12 of the Clayton Act. <u>See</u> ECF No. 24, at 20 (citing <u>Trustees of the Plumbers & Pipefitters Nat. Pension Fund, v. Plumbing Servs., Inc.</u>, 791 F.3d 436, 444–45 (4th Cir. 2015) (applying same logic in ERISA case)). However, as stated above, plaintiffs have failed to establish proper venue under Section12 of the Clayton Act. Therefore, this argument is without merit.

choice of venue weighs moderately against transfer.

### 2.    Witness Convenience and Access to Proof

The second factor requires the Court to weigh the convenience to witnesses and access to proof in litigating in either venue. "The party asserting witness inconvenience has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience." Koh v. Microtek Int'l, Inc., 250 F. Supp. 2d 627, 636 (E.D. Va. 2003).

Here, the Jackson Hewitt Defendants, via sworn declaration of Ms. McShane, assert the following facts to show that the District of New Jersey is the more convenient forum for witnesses: (1) defendants are not aware of any material witness located in the Eastern District of Virginia "that would have unique information or unique documents" relevant to the case; (2) each potential witnesses is located outside of Virginia, "with the vast majority located in New Jersey," (3) any relevant documents or information, including the custodians thereof, are located outside of Virginia, "with the vast majority located in New Jersey," and (4) "[m]ost other potentially relevant witnesses, custodians, and documents are located at an office in Sarasota, Florida." McShane Decl., ECF No. ECF No. 14-1, ¶ 15.

In response, plaintiffs argue that Defendants have not met their burden with respect to the second factor because the McShane Declaration only demonstrates inconvenience to Defendants' "own party witnesses;" but "the witness convenience factor is primarily aimed at facilitating convenience for *non-party* witnesses." ECF No. 24 at 25 (emphasis added) (citing Prod. Grp. Int'l, Inc. v. Goldman, 337 F. Supp. 2d 788, 800 (E.D. Va. 2004)). Plaintiffs further argue that whether certain witnesses have "unique knowledge" is irrelevant to the transfer analysis; rather, the relevant inquiry is what evidence is likely to be presented by the parties and where that evidence is most conveniently accessed. Id.

After considering the above, the Court finds that Defendants' evidentiary support for the witness-convenience factor is limited because it lacks specificity as to which witnesses and evidence are likely to be presented and where such witnesses and evidence are likely to be found. See Koh, 250 F. Supp. 2d at 636. That said, Defendants have presented credible evidence that certain records custodians and other likely witnesses are in New Jersey. For this reason, the Court finds that the second factor is inconclusive in the § 1404 analysis.

### 3. Convenience of the Parties

The third § 1404(a) factor considers the convenience of the parties. Defendants argue that the District of New Jersey is clearly the more convenient forum for Defendants given that they are all headquartered in Jersey City, New Jersey, and they do not have offices or employees located in the Eastern District of Virginia. McShane Decl., ECF No. 14-1, ¶¶ 4, 6–8, 12. However, when considering convenience to the plaintiffs, the result is mixed because one plaintiff (Endres) resides in Illinois, one plaintiff (Fields) resides in Mississippi, and one plaintiff (Metz) resides in Virginia Beach. Therefore, for two plaintiffs, neither venue is particularly convenient, whereas for the third plaintiff, the Eastern District of Virginia is obviously more convenient.

In sum, when comparing the convenience of all six parties, the District of New Jersey appears to be the more convenient forum. Nevertheless, plaintiffs argue that transfer is not warranted on this ground because § 1404(a) does not permit a defendant to "merely shift the balance of inconvenience in defendant's favor." ECF No. 24 at 26 (citing Goldman, 337 F. Supp. at 799–800). However, the Goldman case cited by plaintiffs involved a single plaintiff who filed suit in his home district. 337 F. Supp. 2d at 799. Here, by contrast, only one of the plaintiffs resides in the Eastern District of Virginia, and she was added as a party after the suit was filed. Therefore, the Court does not find that transfer would cause a mere shifting of the balance of inconvenience in Defendants' favor. Accordingly, the third factor weighs in favor of transfer.

25

### 4.      The Interest of Justice

The final § 1404(a) factor considers the interest of justice, which "encompasses public interest factors aimed at 'systemic integrity and fairness.'" Byerson v. Equifax Info. Servs., LLC, 467 F. Supp. 2d 627, 635 (E.D. Va. 2006) (internal citation omitted). "Most prominent among the elements of systemic integrity are judicial economy and the avoidance of inconsistent judgments." Id. Furthermore, "fairness" considers several factors including docket congestion and "the interest in having local controversies decided at home." Id.

In support of transfer, Defendants focus on two such factors: (1) their interest in having a local controversy decided in their home district and (2) the plaintiffs' concerted forum-shopping efforts, which, according to Defendants, damages the systemic integrity of the courts. ECF No. 14 at 22. Defendants further argue that, although securing a place in the "Rocket Docket" ensures less docket congestion and a faster time-to-decision, these conditions cannot be "the primary reason for retaining a case in this district." ECF No. 14 at 20 (citing High Point SARL v. Sprint Nextel Corp., No. 2:08cv625, 2009 WL 10671368, at *9 (E.D. Va. May 18, 2009) (internal citation omitted)). For the reasons below, the Court agrees.

It is apparent from the procedural history of this case that plaintiffs' choice to file here was at least partly motivated by forum-shopping. As Defendants point out in their motion, the Endres complaint was initially filed in the United States District Court for the District of New Jersey until the plaintiffs voluntarily dismissed such complaint and refiled it in this Court. See Tom Endres, et al. v. Jackson Hewitt Inc., et al., No. 18-cv-17452 (D.N.J.). This switch occurred approximately one month after the Newbauer Case was filed in this Court. The Endres plaintiffs argue that this switch of venue was a good-faith effort to coordinate and consolidate their action with the other related cases to promote judicial efficiency. However, the Newbauer Case it followed to the

26

Eastern District of Virginia did not have proper venue in this district, nor did the Robinson or Gibson Cases filed here shortly thereafter. See supra Part III.

Moreover, at the time the Endres Case was originally filed in this Court, Metz – the only Virginia-based plaintiff – was not yet a party to the case. In fact, before the Endres plaintiffs filed their amended complaint on February 11, 2019, none of the named plaintiffs in any of the four cases was a Virginia resident. See Newbauer Case, ECF No. 1; Endres Case, ECF No. 1; Robinson Case, ECF No. 1; Gibson Case, ECF No. 1. Given these circumstances, the Court finds that the plaintiffs' choice of forum in the Endres Case is considerably outweighed by concerns for systemic integrity and fairness for purposes of § 1404(a).

Lastly, the Court has considered the fact that the other three cases – the Newbauer, Robinson and Gibson Cases – which raise essentially the same issues of law and fact as those raised in the Endres Case, will be transferred to the District of New Jersey as set forth above. In general, the pendency of a related action in the transferee forum and the potential for consolidating the related actions weigh in favor of transfer. Coors Brewing Co. v. Oak Beverage, Inc., 549 F. Supp. 2d 764, 773 (E.D. Va. 2008). Therefore, given the likelihood of consolidation of these matters, transfer of the Endres Case would promote judicial efficiency, avoid the risk of inconsistent rulings, and therefore promote the interest of justice.

In summary, upon consideration of all the § 1404(a) factors, the Court finds that Defendants have met their burden to show that the interest of justice and convenience of the parties and witnesses justify transfer of the Endres Case. Accordingly, Defendant's motion to transfer the Endres Case pursuant to § 1404(a) is hereby **GRANTED**, and such case is **TRANSFERRED** to the District of New Jersey, Newark Division.

## V.    CONCLUSION

For the reasons set forth above, the Court hereby **ORDERS** as follows:

1.    In the Newbauer Case, No. 2:18cv679, the Jackson Hewitt Defendants' motion to transfer pursuant to 28 U.S.C. § 1406(a) is hereby **GRANTED**, ECF No. 38, and such case is **TRANSFERRED** to the United States District Court for the District of New Jersey, Newark Division.

2.    In the Endres Case, No. 2:19cv37, defendants' motion to transfer pursuant to 28 U.S.C. § 1406(a) is **DENIED**, ECF No. 11, but such motion is **GRANTED** pursuant to 28 U.S.C § 1404(a). Therefore, the Endres Case is hereby **TRANSFERRED** to the United States District Court for the District of New Jersey, Newark Division.

3.    In the Robinson Case, No. 2:19cv44, defendants' motion to transfer pursuant to 28 U.S.C. § 1406(a) is hereby **GRANTED**, ECF No. 12, and such case is **TRANSFERRED** to the United States District Court for the District of New Jersey, Newark Division.

4.    In the Gibson Case, No. 2:19cv49, the Jackson Hewitt Defendants' motion to transfer pursuant to 28 U.S.C. § 1406(a) is hereby **GRANTED**, ECF No. 22, and such case is **TRANSFERRED** to the United States District Court for the District of New Jersey, Newark Division.

The Clerk is **DIRECTED** to forward a copy of this Opinion and Order to all Counsel of Record and to ensure that an electronic copy of all the files are forwarded to the United States District Court for the District of New Jersey, Newark Division.

**IT IS SO ORDERED**.

/s/
Robert G. Doumar
Senior United States District Judge

UNITED STATES DISTRICT JUDGE

Norfolk, VA
March 28, 2019