# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JESSICA ROBINSON, STACEY JENNINGS, and PRISCILLA MCGOWAN, individually and on behalf of others similarly situated, | : | Civil Action No.: 2:19-cv-9066(MEF)(JRA) |
|  | : |  |
|  | : |  |
| *Plaintiffs*, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| JACKSON HEWITT INC. and TAX SERVICES OF AMERICA, INC., | : |  |
|  | : |  |
| *Defendants*. | : |  |
|  | : |  |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

**LITE DEPALMA GREENBERG & AFANADOR, LLC**
Bruce D. Greenberg
570 Broad Street, Suite 1201
Newark, New Jersey 07102
Telephone: (973) 623-3000
bgreenberg@litedepalma.com

**[Additional Counsel listed on signature page]**

TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................iv

Introduction ...........................................................................................................1

Background ............................................................................................................3

    A.    Factual Background...............................................................................3

    B.    Procedural History................................................................................4

    C.    Plaintiffs' Antitrust Claims ..................................................................6

The Proposed Settlement .......................................................................................7

    A.    Notice Plan ...........................................................................................8

    B.    Release..................................................................................................9

    C.    Attorneys' Fees and Costs, Service Awards, and Administrative Expenses ..............................................................................................9

    D.    Proposed Settlement Administrator ..................................................10

    E.    Net Settlement Fund...........................................................................10

Argument..............................................................................................................11

I.    The Settlement Should Be Preliminarily Approved as Fair, Reasonable, and Adequate ...............................................................................................13

    A.    Standard for Preliminary Approval ...................................................13

    B.    The Settlement Satisfies Rule 23(e)(2) .............................................15

        1.    The Settlement Was Negotiated at Arm's Length....................15

        2.    The Relief Provided is Adequate Under the Rule 23(e)(2)(C) Factors.....................................................................................17

3.     The Settlement Treats Class Members Equitably.....................19

4.     Class Representatives and Counsel are Adequate ...................19

C.     The Settlement Satisfies the Girsh Factors for Fairness, Reasonableness, and Adequacy ......................................................................................20

1.     The Complexity, Expense and Likely Duration of the Litigation ......................................................................................20

2.     The Reaction of the Class to the Settlement ............................21

3.     The Stage of the Proceedings and the Amount of Discovery Completed ................................................................................21

4.     The Risks of Establishing Liability and Damages...................22

5.     The Risks of Maintaining the Class Action Through Trial ......23

6.     The Ability of Jackson Hewitt to Withstand a Greater Judgment ..................................................................................23

7.     The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and All the Attendant Risks of Litigation ..................................................................................24

II.     The Proposed Settlement Class Satisfies the Requirements for Class Certification at the Settlement Stage ............................................................25

A.     Rule 23(a)'s Requirements Are Satisfied............................................25

1.     Numerosity................................................................................25

2.     Commonality.............................................................................26

3.     Typicality .................................................................................27

4.     Adequacy of Representation .....................................................28

B.     Rule 23(b)(3) is Satisfied ....................................................................29

      1.     Common Issues Predominate.....................................................29

      2.     A Class Action is the Superior Method for Resolving these Claims .......................................................................................30

III.    The Proposed Notice Program Satisfies Rule 23 and Due Process..............31

IV.    Proposed Schedule of Events .......................................................................33

V.    Conclusion ....................................................................................................33

TABLE OF AUTHORITIES

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997) ..................................................................... 25, 29

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013) ........................................................................ 29

*Baby Neal v. Casey*,
    43 F.3d 48 (3d Cir. 1994) ................................................................ 27

*Burtch v. Milberg Factors, Inc.*,
    662 F.3d 212 (3d Cir. 2011) .............................................................. 6

*Carlin v. DairyAmerica, Inc.*,
    380 F. Supp. 3d 998 (E.D. Cal. 2019)............................................... 18

*Ehrheart v. Verizon Wireless*,
    609 F.3d 590 (3d Cir. 2010) ............................................................. 12

*Eichenholtz v. Brennan*,
    52 F.3d 478 (3d Cir. 1995) ............................................................... 13

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975) ............................................................. 15

*In re Aetna Sec. Litig., MDL No. 1219*,
    2001 WL 20928 (E.D. Pa. Jan. 4, 2001) ...................................... 24-25

*In re Auto. Refinishing Paint Antitrust Litig., MDL No. 1426*,
    2004 WL 1068807 (E.D. Pa. May 11, 2004) ........................... *passim*

*In re Cmty. Bank of N. Virginia Mortg. Lending Pracs. Litig.*,
    795 F.3d 380 (3d Cir. 2015) ............................................................. 26

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) .................................................... 13, 20, 21

*In re Linerboard Antitrust Litig.*,
    292 F.Supp.2d 631 (E.D. Pa. 2003) ........................................... 22, 24

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ............................................................ 18

*In re Nat'l Football League Players Concussion Inj. Litig.*,
821 F.3d ................................................................................................. 31

*In re Nat'l Football League Players' Concussion Inj. Litig.*,
301 F.R.D. 191 (E.D. Pa. 2014) .................................................... 14, 26

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998) ........................................................... 8, 10

*In re Prudential Sec. Inc. Ltd. Pshps. Litig.*,
163 F.R.D. 200 (S.D.N.Y. 1995) .................................................. 11-12

*In re Viropharma Inc., Sec. Litig.*,
No. 12-2714, 2016 WL 312108 (E.D. Pa. Jan 25, 2016) ......................... *passim*

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004) ........................................................ 15, 26

*Jones v. Commerce Bancorp.*,
No. 05-5600 (RBK), 2007 WL 2085357 (D.N.J. July 16, 2007) .................... 11

*McCoy v. HealthNet, Inc.*,
569 F. Supp. 2d 448 (D.N.J. 2008) .................................................... 12

*McDonald's USA, LLC v. Deslandes*,
81 F.4th 699 (7th Cir. 2023) ........................................................... 16

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
259 F.3d 154 (3d Cir. 2001) ........................................................... 28

*Ortiz v. Fibreboard Corp.*,
527 U.S. 815 (1999) ....................................................................... 25

*Pennwalt Corp. v. Plough*,
676 F.2d 77 (3d Cir. 1982) .............................................................. 13

*Shapiro v. Alliance MMA, Inc.*,
2018 WL 3158812 (D.N.J. June 28, 2018) ........................................... 12

*Singleton v. First Student Mgmt., LLC*,
No. 13-744 (JEI/JS), 2014 WL 3865853 (D.N.J. Aug. 6, 2014) ..................... 11

*Stevens v. SEI Invs. Co.*,
No. CV 18-4205, 2020 WL 996418 (E.D. Pa. Feb. 28, 2020) .................. 13, 27

*Sullivan v. DB Investments, Inc.*,
    667 F.3d 273 (3d Cir. 2011) .............................................................................. 29

*Varacallo v. Mass. Mut. Ins. Co.*,
    226 F.R.D. 207 (D.N.J. 2005) ........................................................................ 16

*Vista Healthplan, Inc. v. Cephalon, Inc.*,
    No. 2:06-CV-1833, 2020 WL 1922902 (E.D. Pa. Apr. 21, 2020) ........ 13, 26, 30

*Wal-Mart Stores, Inc., v. Dukes*,
    564 U.S. 338 (2011) ........................................................................................ 26

*Warfarin*,
    212 F.R.D. ........................................................................................................ 23

*Whiteley v. Zynerba Pharms., Inc.*,
    2021 WL 4206696 (E.D. Pa Sept. 16, 2021) ................................................ 30

*Williams v. First Nat'l Bank*,
    216 U.S. 582 (1910) ........................................................................................ 12

**Statutes**

15 U.S.C. § 1 ..............................................................................................*passim*

Manual Complex Lit. § 30.42 (4th ed.) ................................................................ 22

**Rules**

Fed.R.Civ.P. 23 ....................................................................................... *passim*

Fed.R.Civ.P. 23(a)(2).............................................................................26, 29

Fed.R.Civ.P. 23(a)(3).....................................................................................27

Fed.R.Civ.P. 23(a)(4).....................................................................................28

Fed.R.Civ.P. 23 (b)(3).............................................................................*passim*

Fed.R.Civ.P. 23(c)(3).....................................................................................31

Fed.R.Civ.P. 23(e)(2).................................................................................14, 15

Fed.R.Civ.P. 23(e)(2)(C) .........................................................................................17

Fed.R.Civ.P. 23(e)(2)(C)(iv).....................................................................................19

Fed.R.Civ.P. 23(e)(3) .........................................................................................14,19

Fed.R.Civ.P. 23(f)................................................................................................23

**INTRODUCTION**

Plaintiffs Jessica Robinson, Stacey Jennings, and Priscilla McGowan, on behalf of themselves and others similarly situated, and defendants Jackson Hewitt Inc. and Tax Services of America, Inc. (collectively "Jackson Hewitt"), have agreed to settle this case (the "Settlement").[1] The Settlement was reached after arm's length settlement negotiations between Class Counsel and Jackson Hewitt's Counsel, facilitated by Robert Meyer, a JAMS Mediator. Moreover, the Settlement was reached by counsel experienced in antitrust class actions who understand the risks of proceeding through class certification, trial, and appeal.

The proposed Settlement Class includes approximately 30,000 Jackson Hewitt tax preparers and is defined as:

> All persons who worked in a tax preparer position at any company owned Jackson Hewitt location in the United States at any time during the Class Period.[2]

The proposed Settlement would establish an all-cash Settlement Fund of $10,800,000, with no reversion or claims process. The $10.8 million gross settlement amount represents 100% of the actual damages Plaintiffs' expert preliminarily

---

[1] All capitalized terms not defined herein have the meanings set forth in the Parties' Settlement Agreement ("Agreement"), attached as Exhibit 1 to the Joint Declaration of Richard M. Paul, Jason Hartley, and Joseph Saveri (*hereafter* "Joint Decl. at Ex.1").

[2] Excluded from the Settlement Class are: Jackson Hewitt and its affiliates, the Judge, including the Judge's staff and immediate family members, senior executives, personnel in Jackson Hewitt's executive, HR and recruiting departments, persons outside of the United States, franchisee owners, and managers.

calculated as of the time Plaintiffs filed their motion for class certification based on then-available data through February 29, 2020. *See* Joint Decl. at ¶¶ 18,28. Considering the size of the Settlement Class, the nature of Plaintiffs' claim, potentially recoverable damages, Jackson Hewitt's potential defenses, and the risks and time required to prosecute this litigation to conclusion, Class Counsel believes that the Settlement is an excellent outcome and in the best interests of the Settlement Class and well within the range of possible outcomes warranting preliminary approval.

The Settlement is fair, reasonable, and adequate for purposes of approval under Federal Rule of Civil Procedure 23(e). The proposed Settlement Class satisfies Federal Rule 23(a) and (b)(3), and the proposed notice and allocation plans are reasonable. Plaintiffs move the Court to: (1) preliminarily approve the Settlement; (2) certify the Settlement Class; (3) appoint Joseph Saveri with Joseph Saveri Law Firm, LLP, Jason Hartley with Hartley LLP, Rick Paul with Paul LLP as Settlement Class Counsel, and Bruce Greenberg with Lite DePalma Greenberg & Afanador, LLC as Plaintiffs' Liaison Counsel; (4) appoint plaintiffs Jessica Robinson, Stacey Jennings, and Priscilla McGowan as Class Representatives; (5) approve the proposed Notice Plan and Notice; (6) appoint the proposed Settlement Administrator; and (7) schedule the Final Approval Hearing and related dates as proposed.

## BACKGROUND

### A.    Factual Background

Jackson Hewitt is the second largest consumer tax preparation services provider in the United States, providing in-person tax preparation services in nearly 6,000 offices across the United States. Defendant Jackson Hewitt has roughly 2,000 company-owned locations and 4,000 franchise locations. (ECF 211-1 at 29:19-21, 31:2-8).

To own a Jackson Hewitt franchise, franchisees must sign and abide by a Franchise Agreement. (*Id.* at 29:22-30:22). Jackson Hewitt's franchise locations are owned and operated by independent owners who are ultimately responsible for their daily operations and in fact, the Franchise Agreements require each franchisee to hold itself out as "independently owned and operated." (*Id.* at 159:23-24; ECF 199-4 at ¶11.11). Plaintiffs have alleged that this makes the franchises horizontal competitors to one another and to Jackson Hewitt's corporate locations and, by agreeing to the Franchise Agreements, they have agreed with Jackson Hewitt to follow the terms therein.

From 2014 through 2018, Jackson Hewitt included a clause in its standard franchise agreement prohibiting Jackson Hewitt franchisees from hiring Jackson Hewitt's corporate workers (the "No-Poach Provision"). (*Id.* at 37:1-39:7; ECF 199-4 at ¶17.3; ECF 199-33; ECF 199-3 at 106:18-107:14, 108:3-22, 111:11-16).

Plaintiffs allege that this is an illegal agreement that was not limited to what was laid out in the No-Poach Provision. Plaintiffs allege that Jackson Hewitt also maintained a "corporate culture" that discouraged soliciting and hiring franchisee employees by Jackson Hewitt corporate, and of Jackson Hewitt corporate employees by franchisees. (ECF 211-1 at 193:21-194:2). Plaintiffs allege that this "corporate culture" of restrictive hiring practices continued well after the No-Poach Provision was removed from Jackson Hewitt's franchise agreements.

## B.   Procedural History

After similar class actions were filed, on April 12, 2019, Plaintiffs filed their Amended Consolidated Class Action Complaint. (ECF 37). The operative Complaint alleges that the No-Poach Provision had the desired effect of benefiting Jackson Hewitt and its franchisees by limiting mobility and suppressing the compensation of Jackson Hewitt employees. (ECF 161 at ¶6). Plaintiffs further allege that by acting in concert during the Class Period, company owned locations were able to eliminate competition for tax preparers and due to the lack of competition, were able to suppress wages. (*Id* at ¶13). Thus, Plaintiffs allege that the No-Poach Provision had an anticompetitive effect and violated Section 1 of the Sherman Act, 15 U.S.C. § 1. (*Id* at ¶119).

4

Since filing the original consolidated complaint in early 2019, the Parties engaged in extensive discovery and briefed numerous legal issues that informed the Settlement.

First, the Parties briefed Jackson Hewitt's Motion to Dismiss that was granted in part and denied in part in October 2019 (ECF 74). Thereafter, the Parties began discovery in earnest. Through the discovery process, Plaintiffs collected and reviewed tens of thousands of documents related to Jackson Hewitt's corporate policies, training, and potential general liability. Joint Decl. at ¶16. Plaintiffs produced the three named plaintiffs for their depositions, took six depositions of Jackson Hewitt witnesses and numerous depositions of franchisees. *Id.* at ¶16,17.

Prior to the initial discovery cut-off date of April 30, 2021, the parties agreed to mediation to attempt to resolve the case. (ECF 139). The parties ultimately mediated with Robert A. Meyer with JAMS on June 2, 2021 but were not able to reach a resolution (ECF 144; Joint Decl. at ¶21). Thereafter, the parties continued with discovery and completed fact discovery on January 17, 2022 (ECF 165). Plaintiffs then served their expert witness report on February 22, 2022, followed by Defendants' expert witness reports on April 25, 2022 and Plaintiffs rebuttal report on June 3, 2022. The parties completed depositions of each other's experts by July 8, 2022. Through the end of 2022, the Parties briefed Plaintiffs' Motion for Class

Certification and cross *Daubert* motions to exclude experts. (ECF 190, 193, 196, 200, and 203).

On April 6, 2023, the Court denied the motions to exclude (ECF 257), and the parties stood on their original class certification briefing (Docs. 258, 259). The Court held a hearing on Plaintiffs' Motion for Class Certification and ordered supplemental briefing on the antitrust standard that was completed in December 2023.

In approximately December 2023, the Parties reengaged with Robert A. Meyer with JAMS before ultimately reaching the resolution presented herein. *See* Joint Decl. at ¶¶ 23-24. Due to the extensive discovery process, the Parties possess adequate information concerning the strengths and weaknesses of Plaintiffs' claims. Settlement did not come easily and was only achieved by a mediator who remained engaged for over one year through several failed attempts to resolve this dispute. *Id.* at ¶¶ 15-24.

**C.      Plaintiffs' Antitrust Claims**

The Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.*, prohibits the restraint of trade or commerce. To claim a violation of the act, an antitrust plaintiff must plead: "(1) that the defendant was a party to a contract, combination ... or conspiracy ... and (2) that the conspiracy to which the defendant was a party imposed an unreasonable restraint on trade." *Burtch v. Milberg Factors, Inc.,* 662 F.3d 212, 221 (3d Cir. 2011) (internal quotations omitted).

6

While it remained a disputed issue in the case, the Court denied Jackson Hewitt's motion to dismiss the litigation on the basis that Jackson Hewitt was not a separate economic actor from its franchisees sufficient to support a conspiracy under § 1 of the Sherman Act. *See* ECF 73 (finding that franchisees were "separate economic actors pursuing separate economic interests" from Jackson Hewitt).

### THE PROPOSED SETTLEMENT

Pursuant to the Settlement Agreement, Plaintiffs seek certification of the following Settlement Class for settlement purposes only:

> All persons who worked in a tax preparer position at any company owned Jackson Hewitt location in the United States at any time during the Class Period.

> Excluded from the Settlement Class are: Defendants and their affiliates, the Judge, including the Judge's staff and immediate family members, senior executives, personnel in Jackson Hewitt's executive, HR and recruiting departments, persons outside of the United States, franchisee owners, and managers.

The proposed Settlement establishes a $10,800,000 Settlement Fund, which will exclusively be used to pay: the costs of notice and settlement administration, attorneys' fees and costs, any incentive awards, and settlement class members' pro-rata share of the remainder based on the total, regular earnings for hours worked at Jackson Hewitt during the Class Period. No settlement funds will be subject to reversion to Defendants.

7

**A.    Notice Plan**

Settlement Class Members can be identified based on employment records provided by Jackson Hewitt. The Parties will provide the Settlement Administrator with the relevant data, including the Settlement Class Members' last known mailing addresses. Plaintiffs propose that Notice be sent via first class U.S. mail. The Notice will also tell Settlement Class Members the settlement amount, and identify the fees and costs to be paid from it. The Settlement Administrator will maintain a dedicated toll-free phone line to answer class member questions and a website for real-time information and updates with an email address for class member questions. Plaintiffs' notice plan is the best notice practicable under the circumstances. Fed. R. Civ. P. 23(c)(2)(B); *see also* Declaration of Carla Peak.

Settlement Class Members will have an opportunity to object to or exclude themselves from the Settlement. The procedures and deadlines for filing objections and requests for exclusion will be conspicuously listed on the Notice and will inform Settlement Class Members that they will be bound by the Settlement unless they timely opt-out. This Notice satisfies the requirement of *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 527 (3d Cir. 1998) (notice must "afford [interested parties] an opportunity to present their objections").

8

## B.   Release

The release is appropriately tailored to this case and is limited to those Settlement Class Members identified in the Class based on information exchanged in discovery. In exchange for settlement benefits, the Settlement Class Members who do not timely opt out of the Settlement will release Jackson Hewitt from any and all claims that arise out of or relate to the allegations in the Fourth Amended Complaint (ECF 161), namely Jackson Hewitt's implementation, use, and enforcement of its alleged restriction on hiring in their corporate and franchisee Jackson Hewitt offices across the country in connection with the No-Poach Provision and "corporate culture." The release is narrowly drawn so as not to extend beyond the types of claims brought in this case. *See* Joint Decl. at Ex. 1, ¶¶ 11-12.

## C.   Attorneys' Fees and Costs, Service Awards, and Administrative Expenses

If the Settlement receives preliminary approval, Class Counsel will apply to the Court for an award of attorneys' fees of 33% of the Settlement Fund, as well as reimbursement of litigation expenses of no more than $1,712,737.01. Joint Decl. ¶¶ 31-32. An award of attorneys' fees and costs will compensate Class Counsel for the work already performed in relation to the Released Class Claims, as well as the remaining work to be performed in documenting the Settlement, securing Court approval of the Settlement, and making sure the Settlement is fairly implemented so that as many Settlement Class Members as possible receive settlement benefits.

9

Class Counsel will also apply to the Court for total service awards of $30,000 for the Class Representatives ($10,000 to each Class Representative). The Class Representatives each actively participated in this litigation and advocated for the best interest of the Settlement Class, cooperated and assisted counsel in litigating the case, produced documents, and submitted to a full-day deposition. *Id.* at ¶¶ 17, 20, 33.

**D.    Proposed Settlement Administrator**

After soliciting bids from several class action settlement administrators, Class Counsel requests that the Court appoint KCC as the Settlement Administrator. KCC has ample experience in administering settlements, including in cases like this one. Joint Decl. ¶25. The cost of settlement administration will be approximately $140,000. Class Counsel believes that this fee is reasonable and that KCC's experience in similar cases makes it the most qualified administrator for this case.

**E.    Net Settlement Fund**

The amount remaining in the Settlement Fund after paying attorneys' fees and costs, service awards, and administrative expenses is the Net Settlement Fund, which will be allocated to Settlement Class Members. As described in detail in the Allocation Plan, Settlement Class Members' settlement amounts will be based on their pro rata share of the Net Settlement Fund according to their earnings based on hours worked as a tax preparer at Jackson Hewitt during the Class Period. Joint Decl.

10

at Ex. 7.

Settlement Class Members' Notices will include their estimated settlement award based on the pro rata calculations. The Settlement Administrator will populate each Settlement Class Member's Notice and mail the Notice to him or her via first class U.S. mail. Joint Decl. ¶25.

Undistributed class member funds (e.g., for Settlement Class Members who cannot be located after reasonable and customary efforts and/or do not cash their checks by the stale date) will be disposed of via additional possible distributions to the Settlement Class and/or *cy pres* distribution as approved by the Court. No portion of the Settlement Fund shall revert or be returned to Jackson Hewitt.

## ARGUMENT

"Review of a proposed class action settlement is a two-step process: preliminary approval and a subsequent fairness hearing." *Jones v. Commerce Bancorp*., No. 05-5600(RBK), 2007 WL 2085357, at *2 (D.N.J. July 16, 2007). "The purpose of having a preliminary stage is to ensure that there are no obvious deficiencies in the settlement that would preclude final approval." *Singleton v. First Student Mgmt*., LLC, No. 13-744(JEI/JS), 2014 WL 3865853, at *5 (D.N.J. Aug. 6, 2014). The Court's duty during preliminary review is "'to ascertain whether there is any reason not to notify the class members of the proposed settlement and to proceed with a fairness hearing.'" *In re Prudential Sec. Inc. Ltd. Pshps. Litig.*, 163 F.R.D. 200, 209

(S.D.N.Y. 1995) (quoting *Armstrong v. Board of School Directors of the City of Milwaukee,* 616 F.2d 305, 314 (7th Cir. 1980)).

"Generally, '[w]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted.'" *Shapiro v. Alliance MMA, Inc*., 2018 WL 3158812, at *2 (D.N.J. June 28, 2018) (quoting *In re NASDAQ Market Makers Antitrust Litig*., 176 F.R.D. 99, 102 (S.D.N.Y. 1997)). A proposed class action settlement is entitled to a presumption of fairness. *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir. 2010); *McCoy v. HealthNet, Inc*., 569 F. Supp. 2d 448, 458 (D.N.J. 2008). This approach is consistent with the principle that "[c]ompromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank,* 216 U.S. 582, 595 (1910).

Because there are no "obvious deficiencies" in the Settlement Agreement, the standards for granting preliminary approval are satisfied here. Plaintiffs submit that this Settlement is fair, adequate, and reasonable; that the requirements for final approval will be satisfied; and that Class members will be provided with notice in a manner that satisfies the requirements of due process and Fed. R. Civ. P. 23(e). Therefore, Plaintiffs request that this Court enter the proposed order granting preliminary approval, which will: (i) preliminarily approve the proposed Settlement;

12

(ii) certify the Settlement Class pursuant to the provisions of Fed. R. Civ. P. 23; (iii) schedule a Final Approval Hearing to consider final approval and an award of fees, expenses, and service awards; and (iv) direct that notice of the proposed Settlement and hearing be provided to Class members in a manner consistent with the agreed-upon notice plan in the Settlement Agreement.

## I.   The Settlement Should Be Preliminarily Approved as Fair, Reasonable, and Adequate

### A.   Standard for Preliminary Approval

There is a strong presumption in favor of voluntary settlement agreements in this Circuit. *See, e.g.*, *Pennwalt Corp. v. Plough,* 676 F.2d 77, 79-80 (3d Cir. 1982). Settlement is particularly favored in class actions and complex cases to conserve judicial resources by avoiding lengthy trials. *In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.,* 55 F.3d 768, 784 (3d Cir. 1995); *see also Stevens v. SEI Invs. Co.,* No. CV 18-4205, 2020 WL 996418, at *2 (E.D. Pa. Feb. 28, 2020). Nevertheless, a court must review any proposed settlement to ensure that it is "fair, reasonable, and adequate" before directing notice. Fed. R. Civ. 23(e); *see also Vista Healthplan, Inc. v. Cephalon, Inc.,* No. 2:06-CV-1833, 2020 WL 1922902, at *5 (E.D. Pa. Apr. 21, 2020) (quoting *In re Nat'l Football League Players Concussion Inj. Litig.,* 775 F.3d at 581 (3d Cir. 2014)). Typically, courts are afforded broad discretion in determining whether to approve a proposed class action settlement. *Eichenholtz v. Brennan,* 52 F.3d 478, 482 (3d Cir. 1995).

13

When determining whether a settlement should receive preliminary approval, a court assesses whether "the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval." *In re Nat'l Football League Players' Concussion Inj. Litig.,* 301 F.R.D. 191, 197-98 (E.D. Pa. 2014). The parties must demonstrate that the court will likely be able to approve the proposed settlement and certify the settlement class. Fed. R. Civ. P. 23(e).

Under Rule 23(e)(2), the Court must consider the following factors to determine whether the proposed settlement is "fair, reasonable, and adequate:"

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the cost, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3);
> and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Further, the Third Circuit advises courts to consider the "*Girsh* factors" in deciding whether to preliminarily approve a class action settlement, which include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of the discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh v. Jepson,* 521 F.2d 153, 156 (3d Cir. 1975).

Finally, a presumption of fairness applies when "(1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 535 (3d Cir. 2004) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 232 n.18 (3d Cir. 2001)).

## B.     The Settlement Satisfies Rule 23(e)(2)

The proposed settlement satisfies all the foregoing Rule 23(e)(2) standards.

### 1.   *The Settlement Was Negotiated at Arm's Length*

First, the Settlement was reached in arm's length negotiations by counsel experienced in litigating and settling class actions who were well-informed of the facts and legal issues of this case. *See In re Auto. Refinishing Paint Antitrust Litig.,* MDL No. 1426, 2004 WL 1068807, at *2 (E.D. Pa. May 11, 2004) (preliminary approval granted in a class settlement that "was reached after extensive arms-length

negotiation between very experienced and competent counsel"); *see also* Fed. R. Civ. P. 23(e)(2)(B). Before beginning settlement talks, the Parties engaged in extensive discovery, hired experts, took six corporate depositions and additional third-party depositions, issued subpoenas and had briefed critical legal issues. Plaintiffs continued to monitor the posture of cases raising similar legal issues, including *McDonald's USA, LLC v. Deslandes*, 81 F.4th 699 (7th Cir. 2023), for which a petition for certiorari had been filed with the United States Supreme Court at the time settlement was reached. (*Petition for cert. filed* (U.S. Nov. 21, 2023) (No. 23-562); *cert. denied* Mar. 18, 2024). Through this discovery and legal research, Plaintiffs were able to assess the strengths of the case, and the propriety of settlement at this juncture. All Parties' counsel are experienced in class actions and antitrust matters.

When Settlement was eventually reached, Plaintiffs and their counsel had a clear understanding of the merits and weaknesses of their case. Given the extensive work completed in this case, Plaintiffs and their counsel are in a strong position to make an informed decision on the merits of recommending the settlement. *See Varacallo v. Mass. Mut. Ins. Co.,* 226 F.R.D. 207, 240 (D.N.J. 2005) ("Class Counsel's approval of the Settlement also weighs in favor of the Settlement's fairness"); *In re Viropharma Inc., Sec. Litig.,* No. 12-2714, 2016 WL 312108, at *11 (E.D. Pa. Jan 25, 2016) (the Court "affords considerable weight to the views of experienced

counsel regarding the merits of the settlement."). This strongly supports approval of the Settlement.

Moreover, the negotiations leading to the Settlement were conducted through an experienced mediator with extensive experience in resolving complex litigation and who ensured the negotiations were conducted at arm's length. "The participation of an independent mediator in settlement negotiations virtually insures [sic] that the negotiations were conducted at arm's length and without collusion between the parties." *Viropharma*, 2016 WL 312108, at *11.

### 2. *The Relief Provided is Adequate Under the Rule 23(e)(2)(C) Factors.*

The Settlement, which provides for significant monetary consideration, affords important relief to class members and is well within the range of reasonableness. *See* Rule 23(e)(2)(C). Damages in an antitrust conspiracy case generally are based on the amount of overcharge (or in this case, undercompensation) resulting from the anticompetitive conduct. The percentage recovered from Defendants here is an extraordinary result. Jackson Hewitt will pay $10,800,000 in Settlement, which is 100% of the class damages calculated by Plaintiffs' expert economist based on data through February 29, 2020. The percentage recovered here far exceeds the percentage recovered in many other class action settlements, antitrust and otherwise. *See*, *e.g.*, *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 WL 1068807, at *2 (E.D. Pa. May 11, 2004) (collecting cases approving class action

antitrust settlements of under 5% class sales); *Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1020 (E.D. Cal. 2019) ("Courts regularly approve class settlements where class members recover less than one quarter of the maximum potential recovery amount."); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (finding settlement that provided plaintiffs one-sixth of their potential recovery to be fair and adequate)). Based on the Settlement Class data produced by Jackson Hewitt, the Settlement Class size is approximately 30,000 persons. The consideration would provide Class Members with significant cash compensation.

The Settlement amount is also reasonable in light of the costs and risks of continuing litigation. If litigation were to continue, the Parties would face a renewed motion for class certification, a renewed motion to strike the class, summary judgment motions, trial preparation, and eventually a trial. Continued litigation would result in increased expenses for the Parties and a significant amount of the Court's resources. And settlement avoids the risk that the jury may side with Defendants, or not award the full damages sought by Plaintiffs, or the delay of an appeal even with a successful trial verdict. Given the uncertainty of ongoing litigation, the consideration here represents an excellent result.

In addition to the financial component of this Settlement, Defendants have agreed to notify all managers of company-owned locations and franchise operators and/or owners (as applicable) that there is no prohibition, restriction, "corporate culture,"

or any other understanding preventing the solicitation or hiring of Defendants'
current or former employees or current or former employees of franchise operators
and/or owners (as applicable), and to post this notification on Defendants' internal
website. Plaintiffs also propose an effective method of distributing relief, and a
reasonable award of attorneys' fees. Plaintiffs have not entered into any agreements
that are required to be disclosed by Rule 23(e)(3). *See* Rule 23(e)(2)(C)(iv).

### 3.  *The Settlement Treats Class Members Equitably*

The Settlement treats Settlement Class Members equitably relative to each other.
Funds will be awarded to class members on a pro rata basis, taking into account the
earnings for hours worked during the Settlement Class Period. The Parties have
designed a simple process to maximize the number of Settlement Class Members
who receive and accept compensation for their claims. This supports settlement
approval.

### 4.  *Class Representatives and Counsel are Adequate*

Finally, the proposed Class Representatives have diligently represented the
Settlement Class. They have actively participated in discovery and have worked with
counsel to attempt to locate and produce relevant documents. Throughout the
litigation they have stayed in contact with Class Counsel and acted with the interests
of the Class in mind. Each of them submitted to a full-day deposition as well. Joint
Decl. at ¶¶ 20, 33.

Class Counsel have also adequately represented the Class. They vigorously prosecuted this case, including class certification briefing, expert exclusion briefing, responding to Jackson Hewitt's motion to dismiss, and so on, as the extensive docket reflects. They also conducted robust discovery and had developed liability evidence. As part of these efforts, Class Counsel worked over 8100 hours and has advanced more than $1,712,737.01 in litigation expenses on behalf of the Class, with no assurance that those expenses would be reimbursed. Joint Decl. at ¶¶ 14-19,31.

Considering all these guideposts, the Court should preliminarily conclude that the proposed Settlement is fair, reasonable, and adequate, and likely to receive final approval.

## C.    The Settlement Satisfies the *Girsh* Factors for Fairness, Reasonableness, and Adequacy

### *1.    The Complexity, Expense and Likely Duration of the Litigation*

The first *Girsh* factor is intended to capture the likely costs of continued litigation. *In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d at 812. This action is a complex and expensive antitrust case and, absent settlement, would be likely to continue for a significant period of time. This case was filed more than five years ago and while pleading, motions and much of the fact discovery have been completed, absent settlement, the parties would continue to engage in significant and expensive litigation of class certification, summary judgment, trial, and potential appeals for more months or even years. *See*

*Viropharma*, 2016 WL 312108, at *10 (finding that continuing litigation would involve substantially more motion practice, including motions to dismiss and for class certification, each of which would likely require oral argument, extensive briefing, potential *Daubert* challenges and "battles between competing reports"). Thus, this factor weighs in favor of approval.

### 2.    *The Reaction of the Class to the Settlement*

Plaintiffs Robinson, Jennings, and McGowan support the Settlement and believe it is in the best interest of the Settlement Class. The reaction of other Class Members to the Settlement will be addressed after Class Members have been given notice of the Settlement and have had an opportunity to be heard.

### 3.    *The Stage of the Proceedings and the Amount of Discovery Completed*

Third*,* this case is at a stage of proceedings where counsel understand its strengths and weaknesses. This factor "captures the degree of case development that class counsel have accomplished prior to settlement," and allows the court to "determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re General Motors Corp.,* 55 F.3d at 813. As previously mentioned, the Parties have engaged in substantial discovery to date, including formal and informal exchange of documents, third-party subpoenas and depositions. Thus, Class Counsel had more than adequate appreciation for the strengths and weaknesses of their case. *See Viropharma,* 2016 WL 312108, at *10-11 (finding that the third

21

*Girsh* factor was satisfied when the parties had fully briefed defendants' motion to dismiss, completed expedited discovery, and had met and conferred multiple times). Therefore, this factor weighs strongly in favor of approval of the Settlement.

### 4. The Risks of Establishing Liability and Damages

The fourth and fifth *Girsh* factors – the risks of establishing liability and the risks of establishing damages – require a court to "balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *In re Linerboard Antitrust Litig.,* 292 F.Supp.2d 631, 640-41 (E.D. Pa. 2003). Here, these factors weigh in favor of preliminary approval. Section 30.42 of the *Manual for Complex Litigation (Third*) states that a court evaluating a class action settlement "should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation." Manual Complex Lit. § 30.42 (4th ed.). As mentioned previously, both Parties' counsel are very experienced in class actions and antitrust litigation.

The timing of this Settlement occurred after the major risk factors in the case were extensively briefed, namely the applicable antitrust standard and class certification. Both of these issues are pending and thus each side was able to evaluate the risks involved in letting those issues be decided.

Also, proving damages at trial is unpredictable because "damages would likely be established at trial through a 'battle of experts' with each side presenting its

22

figures to the jury and with no guarantee whom the jury would believe." *Warfarin,*
212 F.R.D. at 256. In *In re Cendant*, the court reasoned that there was no compelling
reason to think that a jury confronted with competing expert opinions would favor
one over the other. 264 F.3d at 239. Thus, this factor favors preliminary approval.

### 5.   *The Risks of Maintaining the Class Action Through Trial*

Sixth, the risk of maintaining a class action through trial favors settlement.
"Under Federal Rule of Civil Procedure 23(a), a district court may decertify or
modify a class at any time during the litigation if it proves to be unmanageable." *Id.*
at 262. Outside of the settlement arena, Jackson Hewitt has opposed certifying a
nationwide class. At the class certification hearing, the Court stressed the importance
of the antitrust standard to this decision, thus heightening the risks to all parties. And
even if the Court certified a nationwide class for litigation, Jackson Hewitt could
seek Rule 23(f) review. Moreover, proceeding to trial would inevitably carry the risk
of decertification. Thus, this factor favors settlement.

### 6.   *The Ability of Jackson Hewitt to Withstand a Greater Judgment*

The seventh *Girsh* factor, whether a defendant is able to withstand a greater
judgment, is neutral because Jackson Hewitt is likely to be able to withstand a greater
judgment. However, as further outlined herein, the proposed Settlement provides the
Class substantial damages. As discussed above, settlements recovering 5% of
damages in antitrust cases are the norm, thus this settlement recovering 100% of the

damages calculated by Plaintiffs' expert through February 29, 2020 is rare, especially in the antitrust context.

> **7.** **_The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and All the Attendant Risks of Litigation_**

The eighth and ninth _Girsh_ factors require a court to consider whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial. _In re Linerboard Antitrust Litig.,_ 292 F.Supp.2d at 642-43. This assessment should consider "the present value of damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, compared with the amount of the proposed settlement. _Id._ (quoting _In re Prudential_, 148 F.3d at 322). The total settlement is 100% of the estimated Class damages based on the data produced prior to the time the settlement was reached (bringing the data current will reduce this percentage), far exceeding the normal percentage of claimed damages recovered in class settlements, whether antitrust or otherwise. Indeed, courts routinely approve class action settlements in the antitrust context representing a smaller percentage of recovery.

This Settlement provides a great outcome to all Settlement Class Members as it provides guaranteed financial relief to the injured parties. Compared with the substantial risks and costs associated with ongoing litigation, the finality and certainty of settlement should be preferred. _See In re Aetna Sec. Litig.,_ MDL No. 1219, 2001 WL 20928, at *11 (E.D. Pa. Jan. 4, 2001) ("settlement represents a

compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution"). Thus, this factor weighs in favor of certification.

## II.   The Proposed Settlement Class Satisfies the Requirements for Class Certification at the Settlement Stage

The U.S. Supreme Court has determined that even when a court establishes that a settlement is fair under Fed. R. Civ. P. 23(e), the court still must consider whether a class can be preliminarily certified under Rules 23(a) and (b). *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 858 (1999); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 619-21 (1997).

### A.   Rule 23(a)'s Requirements Are Satisfied

Rule 23(a) requires the movants to establish each of the following: (1) that the members of the proposed class are so numerous that joinder of the individual claims would be impracticable; (2) that there are questions of law or fact common to the class; (3) that the claims of the proposed class representatives are typical of the claims of the Class members; and (4) that the proposed class representatives will adequately represent the interests of the class. Fed. R. Civ. P. 23(a).

#### *1.   Numerosity*

For a class action to be appropriate, the proposed class must be so numerous that joinder of all members is "impracticable." Fed. R. Civ. P. 23(a)(1). Although no minimum number is required to maintain a class action suit, the Third Circuit has held that classes "in excess of forty members" will generally satisfy the numerosity

25

requirement. *Vista Healthplan*, 2015 WL 3623005, at *3; Here, the proposed settlement class encompasses more than 30,000 individuals and therefore satisfies numerosity. Joint Decl. at ¶26.

### 2.   *Commonality*

Rule 23(a)(2) requires a showing of the existence of "questions of law or fact common to the class." *In re Nat'l Football League Players Concussion Inj. Litig.,* 301 F.R.D. at 200. The commonality requirement requires that plaintiffs "share at least one question of fact or law with the grievances of the prospective class." *Warfarin,* 391 F.3d at 527-28. To satisfy Rule 23's commonality requirement, class claims must "depend upon a common contention ... of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc., v. Dukes*, 564 U.S. 338, 350 (2011). The Third Circuit has stated that "[t]he bar is not high; we have acknowledged commonality to be present even when not all members of the plaintiff class suffered an actual injury, when class members did not have identical claims, and, most dramatically, when some members' claims were arguably not even viable." *In re Cmty. Bank of N. Virginia Mortg. Lending Pracs. Litig.*, 795 F.3d 380, 397 (3d Cir. 2015).

Here, there are common questions that can be resolved using common proof and uniform legal analysis. They include (1) whether Jackson Hewitt engaged in

unlawful contracts and/or conspiracies in restraint of trade and commerce and in violation of the Sherman Antitrust Act, 15 U.S.C. § 1, *et seq.*; (2) whether such alleged agreements had an antitrust impact in suppressing wages; (3) whether Plaintiffs and Class Members are entitled to damages, restitution, disgorgement, equitable relief, and/or other relief; and (4) the amount and nature of such relief to be awarded to Plaintiffs and the class. These common questions will yield common answers and readily satisfy the commonality requirement.

### 3.    *Typicality*

Rule 23(a)(3) requires that the class representatives' claims be "typical of the claims ... of the class." "The typicality inquiry is intended to assess ... whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." *Baby Neal v. Casey,* 43 F.3d 48, 57-58 (3d Cir. 1994). Typicality is satisfied if "a single overarching common question ... cuts across every claim of every Settlement Class Member." *Stevens,* 2020 WL 996418, at *8 (finding typicality where all settlement class members' claims asked whether defendant's fee practice related to in-network services violated ERISA).

Here, Plaintiffs' and all Settlement Class Members' legal claims arise out of the same alleged conduct, namely, that Plaintiffs and Settlement Class Members all worked at a Jackson Hewitt corporate office during the time the No-Poach Provision

and/or the corporate no-poach environment was allegedly in effect. In short, Plaintiffs' and Settlement Class Members' claims arise out of the same alleged course of conduct, involve the same alleged injury, and seek the same relief. Thus, typicality is satisfied.

### 4.  *Adequacy of Representation*

Under Rule 23(a)(4), a class representative must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To meet this requirement, the Court must find that "(1) plaintiff's interests do not conflict with those of the class; and (2) the proposed class counsel are capable of representing the class." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 259 F.3d 154 (3d Cir. 2001) (internal quotations omitted). Both of these requirements are met.

First, Plaintiffs' counsel are experienced antitrust lawyers whose combined experience in class action antitrust cases, and current diligence in this litigation, helped to achieve this settlement and will more than adequately protect the interests of the class through settlement administration. Joint Decl. at ¶¶ 2-19.

Second, there is no conflict or antagonism whatsoever between the Plaintiffs and the Settlement Class Members. All share a united interest in putting an end to Jackson Hewitt's allegedly illegal No-Poach agreements, and all seek redress for the harm they suffered because of those practices.

28

**B.      Rule 23(b)(3) is Satisfied**

**1.      *Common Issues Predominate***

As the Supreme Court has held, while Rule 23(b)(3) requires a showing that questions common to the class predominate, it does not require proof that those questions will be answered, on the merits, *in favor of* the class. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013). Courts are "more inclined to find the predominance test met in the settlement context." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 304 n.29 (3d Cir. 2011).

Plaintiffs' claims of Jackson Hewitt's violation of the Sherman Act rely on a common legal theory related to a singular body of alleged facts – that Jackson Hewitt utilized the No-Poach Restriction to artificially and anticompetitively eliminate employee mobility and suppress wages. Thus, a common course of conduct affected each plaintiff in the same way. *See Amchem,* 521 U.S. at 625 (noting that "predominance is a test readily met in certain cases alleging consumer fraud or violations of antitrust laws"). Further, as discussed above in connection with the commonality requirement under Rule 23(a)(2), Plaintiffs have identified at least five common issues that arise from Jackson Hewitt's common course of conduct and are suitable for class adjudication. Those many and weighty issues predominate over any potential individual issues.

Additionally, courts in this district have recognized that "[a]s a general rule,

29

liability for anticompetitive conduct focuses on the defendants' actions, not the conduct of individual class members." *Vista Healthplan,* 2020 WL 1922902, at *11. As discussed above, multiple common questions lie at the heart of all Settlement Class Members' claims, including whether Jackson Hewitt engaged in a contract and/or conspiracy in restraint of trade. Because the question of liability is common to the class, predominance is satisfied here.

### 2.  *A Class Action is the Superior Method for Resolving these Claims*

Rule 23(b)(3) instructs that the matters pertinent to this inquiry include: (a) class members' interests in individually controlling the prosecution of separate actions; (b) whether other litigation exists concerning this controversy; (c) the desirability of concentrating the litigation in this forum; and (d) any difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3). These factors favor certification in this case.

A class action is the superior method of resolving this case. In *Whiteley v. Zynerba Pharms., Inc.,* 2021 WL 4206696, at *9 (E.D. Pa Sept. 16, 2021), the court found superiority where "[a]ll of the Settlement Class Members' claims are based upon the same basic operative facts and legal standards," and held that "[i]t would be a far better use of judicial resources to adjudicate all these identical issues once, on a common basis." Such reasoning holds true here. Requiring each Settlement Class Member to come forward with individual – and identical – claims would deplete the judiciary's resources, create inconsistent results, establish incompatible

standards of conduct for the Defendant, and lead to repetitious, complex trials. Thus, a single litigation is superior to a series of other litigations or to individuals potentially foregoing their claims and satisfies Rule 23(b)(3).

## III.   The Proposed Notice Program Satisfies Rule 23 and Due Process

Federal Rule of Civil Procedure 23(e)(1) provides that, in the event of a class settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). To satisfy due process, notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Nat'l Football League Players Concussion Inj. Litig.,* 821 F.3d at 435.

Here, the Parties have negotiated the form of the notices to be disseminated to the Settlement Class. *See* Joint Decl. at Exs. 5, 6. The proposed Notice provides details about the Settlement, including (i) the nature of the action; (ii) the definition of the class to be certified; (iii) the class claims and issues; (iv) that a class member may enter an appearance through counsel if desired; (v) that the court will exclude from the class any member who requests exclusion (opts out); (vi) the time and manner for requesting exclusion (opting out); and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). The Notice also includes: (1) a comprehensive summary of its terms; (2) Class Counsel's intent to request attorney's

31

fees, reimbursement of costs and expenses, and service awards for the Class Representatives; and (3) detailed information about the Released Claims. In short, the notice contains sufficient information to enable class members to make informed decisions on whether they should take steps to protect their rights, including objecting to the settlement or, when relevant, opting out of the class.

The Court must also direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). Here, individual notice will be sent by first class U.S. mail to each Settlement Class Member, all of whom can be identified from Jackson Hewitt's employment records. The Settlement Administrator will perform a National Change of Address search and conduct advanced address updating using a variety of tools such as Lexis Nexis or other services to obtain a current address. For Settlement Class Members whose notices are returned undeliverable, the Settlement Administrator will update addresses and promptly resend notices.

Plaintiffs request that the Court approve KCC to be the Settlement Administrator, to implement the Class Notice, and to administer the Settlement, subject to review by counsel and the Court. As described above, KCC has the required skills and experience to effectuate Class Notice. *See also* Declaration of Carla Peak.

32

Accordingly, the proposed notice plan is reasonable and adequate, in accord with due process and Rule 23, and should be approved.

## IV.    Proposed Schedule of Events

The proposed order granting preliminary approval proposes the following schedule of events leading up to the Final Approval Hearing.:

| Notice Date | Within 45 days after entry of preliminary approval order |
|---|---|
| Deadline to contest earnings estimate | 45 days after the Notice Date |
| Deadline to file Notice of Objection | 45 days after the Notice Date |
| Deadline to request Exclusion ("Opt-Out Deadline") | 45 days after the Notice Date |
| KCC to provide class counsel list of timely Requests for Exclusion | 5 business days after the Opt-Out Deadline |
| Plaintiffs to file motion for final approval and fees, costs and incentive awards | 50 days after entry of preliminary approval order |
| Final Approval Hearing | 95 days after entry of preliminary approval order |

## V.    Conclusion

For these reasons, Plaintiffs respectfully ask the Court to enter an Order (1) granting preliminary approval of the Settlement; (2) certifying the Class for the purpose of the Settlement; (3) appointing Rick Paul, Jason Hartley, and Joseph Saveri as Settlement Class Counsel and Bruce Greenberg as Liaison Counsel; (4) appointing plaintiffs Jessica Robinson, Stacey Jennings, and Priscilla McGowan as representatives of the Settlement Class; (5) holding that the Notice and Notice plan satisfy due process and provide the best notice practicable under the circumstances;

(6) appointing KCC as the Settlement Administrator; and (7) scheduling the Final

Approval Hearing and related dates as proposed.

Dated: April 5, 2024                                  Respectfully submitted,

**HARTLEY LLP**                                       **LITE DEPALMA GREENBERG &**
Jason S. Hartley (*pro hac vice*)                     **AFANADOR, LLC**
101 West Broadway, Suite 820
San Diego, California 92101                              */s/ Bruce D. Greenberg*
(619) 400-5822                                        Bruce D. Greenberg
hartley@hartleyllp.com                                570 Broad Street, Suite 1201
                                                      Newark, New Jersey 07102
**PAUL LLP**                                          (973) 877-3820
Richard M. Paul III (*pro hac vice*)                  bgreenberg@litedepalma.com
Laura C. Fellows (*pro hac vice*)
601 Walnut Street, Suite 300                          **FREED KANNER LONDON &**
Kansas City, Missouri 64106                           **MILLEN LLC**
(816) 984-8100                                        Douglas A. Millen (*pro hac vice*)
Rick@PaulLLP.com                                      Brian Hogan (*pro hac vice*)
Laura@PaulLLP.com                                     2201 Waukegan Road, Suite 130
                                                      Bannockburn, Illinois 60015
**GUSTAFSON GLUEK PLLC**                              (224) 632-4500
Daniel E. Gustafson                                   dmillen@fklmlaw.com
Amanda M. Williams                                    bhogan@fklmlaw.com
120 South 6th Street, Suite 2600
Minneapolis, MN 55402                                 **JOSEPH SAVERI LAW FIRM, LLP**
(612) 333-8844                                        Joseph R. Saveri (*pro hac vice*)
dgustafson@gustafsongluek.com                         Christopher K.L. Young (*pro hac vice*)
awilliams@gustafsongleuk.com                          601 California Street, Suite 1000
                                                      San Francisco, California 94108
**ADHOOT & WOLFSON, PC**                              (415) 500-6800
Tina Wolfson                                          jsaveri@saverilawfirm.com
10728 Lindbrook Drive                                 cyoung@saverilawfirm.com
Los Angeles, California 90024
(310) 474-9111
twolfson@adhootwolfson.com

**ATTORNEYS FOR PLAINTIFFS**