DocuSign Envelope ID: 7355516A00CF-4D14-8943-A6B9F2BE2FD7

**LITE DEPALMA GREENBERG & AFANADOR, LLC**
Bruce D. Greenberg
570 Broad Street, Suite 1201
Newark, New Jersey 07102
Telephone: (973) 623-3000
bgreenberg@litedepalma.com

**[Additional Counsel listed on signature page]**

| | |
|---|---|
| JESSICA ROBINSON, STACEY JENNINGS, and PRISCILLA MCGOWAN, individually and on behalf of others similarly situated, | Civil Action No.: 2:19-cv-9066(MEF)(JRA) |
| *Plaintiffs*, | **JOINT DECLARATION OF RICHARD M. PAUL III, JASON HARTLEY, AND JOSEPH SAVERI IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND FOR CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS** |
| v. | |
| JACKSON HEWITT, INC. and TAX SERVICES OF AMERICA, INC., | |
| *Defendants*. | |

We, Jason Hartley, Richard M. Paul III, and Joseph R. Saveri, declare as follows:

1.  We submit this joint declaration in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement and Certification of the Proposed Settlement Class.

2.  We were appointed by the Court as Interim Co-Lead Counsel for the proposed Class and are partners at Hartley LLP, Paul LLP, and the Joseph Saveri Law Firm LLP, respectively. (ECF 53).

3.  We have worked on this case and supervised the work of others from the investigation stage through the present. We have worked in lockstep with Interim Liaison Counsel, Bruce D. Greenberg, and other firms to prosecute these claims on behalf of the proposed Class.

4.  We make this joint declaration based on personal knowledge.

5.  A copy of the parties' Settlement Agreement is attached as **Exhibit 1**.

6.  Jason Hartley is the founding partner of Hartley LLP and is licensed to practice in the District of New Jersey *pro hac vice*. (ECF 52).

7.  Hartley LLP is a nationwide plaintiffs' law firm specializing in antitrust, unfair competition, and other complex matters. Hartley LLP lawyers have served as Lead or Co-Lead Counsel in various coordinated multi-district litigation actions and represented plaintiffs in cases that have recovered over $1 billion and counting. Since its inception in 2018, Hartley LLP and its attorneys have received numerous honors and recognitions for outstanding representation. A true and correct copy of Hartley LLP's firm resume is attached as **Exhibit 2**.

8.  Richard Paul is the founding partner of Paul LLP and is licensed to practice in the District of New Jersey *pro hac vice*. (ECF 50).

9.  Paul LLP is regularly engaged in complex, commercial litigation nationwide, including both class and mass actions. In the course of this practice, Mr. Paul has prosecuted over 100 class actions as court-appointed Lead or Co-Lead Class Counsel

in courts across the country, in a variety of commercial litigation disputes, including antitrust actions. A true and correct copy of Paul LLP's firm resume is attached as **Exhibit 3**.

10. Joseph Saveri is the founding partner of The Joseph Saveri Law Firm LLP and is licensed to practice in the District of New Jersey *pro hac vice*. (ECF 51).

11. The Joseph Saveri Law Firm LLP is a highly respected plaintiffs' law firm that specializes in antitrust and other complex litigation. JSLF is recognized as among the preeminent plaintiffs' law firms in the country and has received numerous accolades for its work as a private enforcer of the antitrust laws, including in litigating groundbreaking no-poach cases. Mr. Saveri has led numerous highly complex cases, including cases challenging "no-poach" agreements restricting hiring and recruiting at major companies. A true and correct copy of the Joseph Saveri Law Firm LLP's firm resume is attached as **Exhibit 4**.

12. We have litigated and led numerous antitrust cases, class actions, and complex litigation on behalf of plaintiffs. We are well versed in the applicable law, having prosecuted dozens of antitrust cases in federal courts throughout the United States.

13. We collectively worked to investigate and identify the claims at issue in this case before filing the first complaints alleging substantially similar claims against Jackson Hewitt. In particular, we spent significant time identifying and investigating

DocuSign Envelope ID: 7355516A-00CF-4D14-8943-A6B9F2BE2FD7

the claims, including conducting factual investigation of Defendants, the labor market, and reviewing materials regarding related enforcement actions.

14. Our firms separately filed class actions against Jackson Hewitt in late 2018 and early 2019, Plaintiffs filed their Amended Consolidated Class Action Complaint in this Court on April 12, 2019. (ECF 37). The Complaint alleges that Jackson Hewitt's standard franchise agreement contained a No-Poach Provision that restricted hiring by and among franchisees and corporate stores that limited tax preparers' mobility and decreased their wages.

15. We have vigorously prosecuted this case. We briefed a motion to dismiss, multiple discovery disputes, class certification, motions to exclude, and a supplemental brief regarding the relevant antitrust standard.

16. We also completed robust fact and expert discovery. We reviewed and analyzed Jackson Hewitt's document production, including tens of thousands of documents regarding Jackson Hewitt's corporate policies, training, and potential general liability. We also deposed Jackson Hewitt's corporate representative and five Jackson Hewitt employees and executives, deposed numerous franchisees, and served numerous sets of interrogatories and requests for production.

17. We assisted the named Plaintiffs in responding to discovery Jackson Hewitt served. We also prepared for and defended their depositions.

DocuSign Envelope ID: 7355516A-00CF-4D14-8913-A6B9F2BE2FD7

18. Further, we retained Dr. Phillip Johnson, a renowned economist who provided an initial and rebuttal expert report opining about the economic nature of the conspiracy and its impact and damages on Class Members. We also deposed the two experts Jackson Hewitt hired to rebut Dr. Johnson's opinions.

19. As a result of our vigorous prosecution, we share deep knowledge of the facts and legal issues in this case.

20. With respect to the proposed Class Representatives, Jessica Robinson, Priscilla McGowan, and Stacey Jennings, they have each shown dedication to this case and diligently represented the Class. They actively participated in the litigation and discovery, including sitting for their depositions, conducting ESI searches, and producing documents. They have remained in contact with Class Counsel, stayed apprised of the litigation, and acted with the interests of the Class in mind. We are not aware of any conflicts of interests that the proposed Class Representatives have with the Settlement Class Members.

21. On or about June 2, 2021, the parties participated in a full day mediation with Robert A. Meyer with JAMS. Ultimately, the parties were not able to reach a resolution on that date.

22. Thereafter, the parties turned back to discovery. Plaintiffs briefed their motion for class certification and served an affirmative expert report from Dr. Phil Johnson.

23. In approximately December 2023, the parties reengaged with Robert A. Meyer with JAMS in an attempt to reach a resolution. Ultimately, after a few weeks of back and forth, the parties reached the resolution that they propose herein.

24. On March 21, 2024, the parties executed the formal Settlement Agreement (*see* Ex. 1) now before the Court. There are no other agreements between the parties made in connection with the proposed settlement.

25. Since then, we requested and received bids from three qualified settlement administrators. After reviewing the bids and speaking with representatives from each firm, we request that the Court appoint KCC as settlement administrator. KCC submitted the lowest of the three qualified settlement bid and we believe that its extensive experience in cases involving complex wage-related state and federal tax reporting and withholding makes it the best fit for this case. KCC will charge approximately $140,000, which is reasonable for the work it will perform. KCC developed a robust notice program, as described in the concurrently filed declaration of Carla Peak. In summary, KCC will receive Settlement Class Members' names and addresses from Jackson Hewitt and update them by running them through the U.S. Postal Service's National Change of Address database. KCC will then send notice by first class mail to all Settlement Class Members and make reasonable efforts to resend notices to forwarding addresses for any returned notices. The

proposed short and long form Class Notices are attached as **Exhibits 5 and 6.** KCC will also post the notice on a settlement website in English and Spanish.

26. The parties estimate there are approximately **30,000** individuals in the Settlement Class who worked as a tax preparer at a Jackson Hewitt corporate office during the Class Period. KCC will distribute settlement proceeds directly to Settlement Class Members by check without requiring them to file a claim or submit documents.

27. Class Members will have 120 days to deposit their settlement checks. For funds that remain, the parties will petition the Court for an order to make a secondary distribution if economically feasible or, if not economically feasible, a *cy pres* distribution.

28. During the same period that the parties were working with Robert A. Meyer to settle this case, Class Counsel were also working with their damages expert on a preliminary calculation of class-wide damages based on the data, through February 29, 2020. Based on that analysis, the $10.8 million settlement fund represented 100% of the economic damages Class Counsel and their econometric expert estimated the Class could have recovered up to that time.

29. The settlement fairly allocates net settlement payments to Settlement Class Members. The Net Settlement Proceeds (after attorney's fees and costs and administration expenses are deducted) will be allocated to Settlement Class

Members on a pro rata basis based on their earnings for hours worked as a tax preparer during the Class Period. The proposed allocation plan is attached as **Exhibit 7**.

30. Given the risks and substantial settlement payments Settlement Class Members will receive, Class Counsel strongly believe the $10.8 million non-reversionary settlement is fair, reasonable, and adequate.

31. Through February 2024, Class Counsel has devoted more than 8,100 hours and has advanced $1,712,737.01 of litigation expenses. Class Counsel will continue to devote many hours to the litigation through final approval and the distribution process. We may also incur additional expenses but will not seek reimbursement of more than $1,712,737.01.

32. Class Counsel will request a fee of no more than 33% of the $10.8 million settlement amount, which is $3.564 million.

33. Class Counsel will also ask the Court to award a service award of $10,000 for each of the proposed Class Representatives, who each expended significant time and effort for the benefit of the Class. They participated in discovery, searched for and produced their relevant documents, and made themselves available for the mediation. Class Counsel greatly appreciates their service.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Date:  April 5, 2024

_____
Jason Hartley

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Date:  April 5, 2024

_____
Richard M. Paul III

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Date:  April 5, 2024

_____
Joseph R. Saveri

# EXHIBIT 1

## SETTLEMENT AGREEMENT

This Settlement Agreement is made and entered into this 20th day of March, 2024, by and among defendants Jackson Hewitt Inc. and Tax Services of America, Inc., and plaintiffs Jessica Robinson, Stacey Jennings, and Priscilla McGowan, individually and as representatives of a class of Defendants' employees in *Robinson, et al. v. Jackson Hewitt Inc., et al.*, Case No. 2:19-cv-9066(MEF)(JRA), currently pending before the Honorable Judge Michael E. Farbiarz in the United States District Court for the District of New Jersey. Plaintiffs enter into this Settlement Agreement both individually and on behalf of the Settlement Class, as defined below. This Settlement Agreement is intended by Defendants and Plaintiffs to fully, finally, and forever compromise, release, resolve, discharge, and settle the Released Claims, upon and subject to the terms and conditions hereof and subject to the approval of the Court.

**WHEREAS,** Plaintiffs allege, among other things, that Defendants entered into unlawful agreements to eliminate competition among them for skilled labor, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

**WHEREAS,** Defendants deny each and all of Plaintiffs' claims and allegations of wrongdoing arising out of any of the conduct, statements, acts or omissions alleged in the Action; have not conceded or admitted any liability in this Action, or that they violated any duty owed to Plaintiffs or the Settlement Class; further deny the allegations that Plaintiffs or any member of the Settlement Class were harmed by any conduct by Defendants alleged in the Action or otherwise; have asserted defenses to each of Plaintiffs' claims; and intend to continue with a vigorous defense of this Action if this Settlement is not approved by the Court;

**WHEREAS,** Plaintiffs and Defendants have engaged in extensive discovery regarding the facts pertaining to the Settlement Class's claims and Defendants' defenses;

1

**WHEREAS,** Plaintiffs and Defendants agree that neither this Settlement Agreement nor any statement made in the negotiation thereof shall be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by Defendants or of the truth of any of the claims or allegations alleged in the Action;

**WHEREAS,** Plaintiffs have thoroughly analyzed the facts and the law regarding the Action and have concluded that a settlement with Defendants according to the terms set forth below is fair, adequate, reasonable, and in the best interest of Plaintiffs and the Settlement Class;

**WHEREAS,** despite their belief that they are not liable for the claims asserted against them in the Action and that they have strong defenses thereto, Defendants have decided to enter into this Settlement Agreement to avoid the expense, inconvenience, and distraction of burdensome and protracted further litigation, and thereby to put to rest this controversy with respect to the Settlement Class and avoid the risks inherent in complex litigation;

**WHEREAS,** arm's-length settlement negotiations have taken place between Class Counsel and Defendants' Counsel, including through mediation, and this Settlement Agreement, together with the Escrow Agreement, embodies all the terms and conditions of the settlement between the Defendants and Plaintiffs, both individually and on behalf of the Settlement Class;

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED** by and among the Settling Parties, by and through their undersigned attorneys of record, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, that the claims of Plaintiffs and the Settlement Class be finally and fully settled, compromised, released, and dismissed on the merits and with prejudice as to Defendants and the Releasees, without costs, upon and subject to the approval of the Court, following notice to the Settlement Class, on the following terms and conditions:

**Definitions**

The following terms, as used in any part of this Settlement Agreement, shall have the following meanings:

a.       "Action" means the action captioned *Robinson, et al. v. Jackson Hewitt Inc., et al.*, Case No. 2:19-cv-9066(MEF)(JRA), pending in the United States District Court for the District of New Jersey.

b.       "Affiliates" means entities controlling, controlled by or under common control with another entity.

c.       "Class Counsel" refers to Lite DePalma Greenberg & Afanador, LLC, Hartley LLP, Paul LLP, Joseph Saveri Law Firm, LLP, Gustafson Gluek PLLC, Freed Kanner London & Millen LLC, and Ahdoot & Wolfson, PC.

d.       "Class Period" means the period beginning December 20, 2014, through and including the date the Preliminary Approval Order is entered.

e.       "Class Representatives" refers to plaintiffs Jessica Robinson, Stacey Jennings, and Priscilla McGowan.

f.       "Complaint" means the operative Fourth Amended Consolidated Class Action Complaint, filed in this Action on November 1, 2021, ECF No. 161.

g.       "Court" or "District Court" means the United States District Court for the District of New Jersey.

h.       "Defendants" means Jackson Hewitt Inc. and Tax Services of America, Inc.

i.       "Defendants' Counsel" means Quarles & Brady LLP and Ansa Assuncao LLP.

j.      "Effective Date" means the first date after all of the following events and

conditions have been met or have occurred:

i.      All Settling Parties have executed this Settlement Agreement;

ii.     The Court has entered an order granting final approval of this

Settlement Agreement under Rule 23(e) of the Federal Rules of Civil

Procedure and entered Final Judgment dismissing this Action with

prejudice as to the Defendants; and

iii.    The time for any person with standing to appeal or to seek

permission to appeal from the Court's approval of this Settlement

Agreement and entry of Final Judgment as to the Defendants has expired,

or, if appealed, the Court's approval of this Agreement and the Final

Judgment as to the Defendants have been affirmed or undisturbed in their

entirety by the court to which such appeal is taken and such affirmance

has become no longer subject to further appeal or review; provided,

however, a modification or reversal on appeal of any Fee and Cost

Amount awarded by the Court or the Plan of Allocation approved by the

Court shall not be deemed a modification of all or part of the terms of this

Settlement Agreement or the Final Judgment. Neither the provisions of

Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28

U.S.C. § 1651, shall be taken into account in determining the above-stated

times.

k.      "Escrow Account" means that escrow account to be established with a

bank or trust company pursuant to the terms and conditions of the Escrow Agreement.

4

l.      "Escrow Agent" means the bank or trust company that agrees to establish and maintain the Escrow Account pursuant to the terms of the Escrow Agreement.

m.      "Escrow Agreement" means an escrow agreement in a form mutually satisfactory to the Settlement Class and Defendants.

n.      "Fee and Cost Amount" means an amount to be sought by Class Counsel to provide payment of their reasonable attorneys' fees, reimbursement of their costs (including all costs related to settlement administration and notice to the Settlement Class), and payment of incentive awards to the Class Representatives.

o.      "Final Judgment" means a final order approving the Settlement Agreement under Federal Rule of Civil Procedure 23(e) and dismissing the Action and all claims therein against Defendants with prejudice as to all Settlement Class Members, together with entry of a final judgment sufficient under Rule 58 of the Federal Rules of Civil Procedure. Notwithstanding the foregoing, the Settling Parties agree that the Court's determination of the Fee and Cost Amount, or modifications to any amounts of individual payments shall not affect whether a judgment or other order is deemed a Final Judgment.

p.      "IRS" means the United States Internal Revenue Service

q.       "Person" means an individual or an entity.

r.      "Released Claims" means those claims released pursuant to Paragraphs 11-16 of this Settlement Agreement.

s.      "Releasees" refers to Defendants and to all of their respective past and present, direct and indirect, parent companies, subsidiaries, joint ventures, and Affiliates, including, but not limited to the predecessors, successors, and assigns of any Releasee; and each and all of the present and former principals, partners, members, officers, directors, employees,

representatives, insurers, attorneys, shareholders, heirs, executors, administrators, agents, and assigns of each of the foregoing. Each of the Releasees shall have the full benefits of this Settlement Agreement, including, without limitation, those benefits set forth in Paragraphs 11-16 of this Settlement Agreement, even though the specific name of each of the Releasees is not set forth herein.

t.      "Releasors" refers jointly and severally, individually and collectively to each of the Plaintiffs and the Settlement Class Members, and to their respective past and present officers, directors, employees, agents, shareholders, attorneys, servants, representatives, parent companies, subsidiaries, Affiliates, partners, insurers, receivers, and bankruptcy trustees and the predecessors, successors, heirs, executors, executives, administrators, beneficiaries, estates, and assigns of any of the foregoing.

u.      "Settlement Administrator" means the entity approved by the Court to administer the Settlement Agreement according to its terms under the supervision of Class Counsel. Plaintiffs shall select the Settlement Administrator, subject to approval of the Court

v.      "Settlement Fund Amount" means ten million, eight hundred thousand dollars ($10,800,000.00) payable in lawful money of the United States, and any interest earned on amounts held in the Escrow Account.

w.      "Settlement Class" means:

> All persons who worked in a tax preparer position at any company owned Jackson Hewitt location in the United States at any time during the Class Period.

> Excluded from the Settlement Class are: Defendants and their affiliates, the Judge, including the Judge's staff and immediate family members, senior executives, personnel in Jackson Hewitt's executive, HR and recruiting departments, persons outside of the United States, franchisee owners, and managers.

x.      "Settlement Class Member" means any person who meets the "Settlement Class" definition above and who has not timely and validly opted out of the settlement set forth in this Settlement Agreement.

y.      "Settling Parties" means, collectively, Plaintiffs, on behalf of themselves and the Settlement Class, and Defendants.

z.      "Taxing Authority" or "Taxing Authorities" means the IRS or any other appropriate taxing authorities.

aa.     "Tax Expenses" means any tax payments, including interest and penalties due on income earned by the Settlement Fund Amount.

bb.     "Tax Preparer" means a person with the job title "Tax Preparer", "Tax Preparer I," "Tax Preparer II," "Tax Preparer III" or a similar title designating that the employee's primary job responsibility was the preparation of customer tax returns.

**Approval of this Settlement Agreement, Preliminary Approval, Notice, Final Approval and Judgment, and Dismissal of Claims**

1.      ***Best Efforts to Effectuate this Settlement.*** The Settlement Class and Defendants shall use their best efforts to effectuate this Settlement Agreement and obtain a Court order that Defendants are excused from further proceedings in the Action, and shall cooperate in the Settlement Class's efforts to promptly seek and obtain the Court's preliminary and final approval of this Settlement Agreement and to secure the prompt, complete, and final dismissal with prejudice of the Action as to Defendants.

2.      ***Notice to the Court of Settlement Agreement.*** If not already notified, the Settlement Class and Defendants shall use their best efforts to promptly notify the Court of the fact of this settlement.

3.      ***Settlement Class Certification***. The Settling Parties hereby stipulate for purposes of settlement only that the requirements of Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure are satisfied, and, subject to Court approval, the Settlement Class set forth in Definition w above shall be certified for settlement purposes only. Defendants have not waived and expressly have reserved the right to oppose class certification and seek an appeal under Rule 23(f) of the Federal Rules of Civil Procedure of any order certifying a class other than the Settlement Class. Nothing in this Settlement Agreement may be used in any judicial or administrative proceedings respecting the propriety of class certification other than for purposes of effectuating this Settlement Agreement. The Court's certification of a Settlement Class is not and shall not be deemed to be the adjudication of any fact or issue for any purpose other than the accomplishment of the provisions of this Settlement Agreement, and shall not be considered as law of the case, res judicata, or collateral estoppel in this or any other proceeding unless the Court has entered Final Judgment.

4.      ***Motion for Preliminary Approval and Notice to Class.*** As set out in the Parties' February 2, 2024 Joint Letter to the Court (Dkt. 304), the Settlement Class shall submit this Settlement Agreement to the Court by March 18, 2024, with a motion for preliminary approval, requesting entry of an order in form and substance mutually satisfactory to the Settlement Class and Defendants preliminarily approving the settlement, authorizing dissemination of notice to the Settlement Class that includes notice of the opportunity to opt out, and scheduling a fairness hearing for final approval of the settlement (the "Preliminary Approval Motion"). Additionally, Plaintiffs may seek an award of the Fee and Cost Amount.

5.      ***Notice.*** The Preliminary Approval Motion shall include the proposed form of, method for, and timetable for disseminating notice to the Settlement Class and ask the Court to

8

find that the proposed form of and method for dissemination of the notice to the Settlement Class constitutes valid, due and sufficient notice to the Settlement Class, constitutes the best notice practicable under the circumstances, and complies fully with the requirements of due process and Rule 23 of the Federal Rules of Civil Procedure. Notice to the Settlement Class will include notice by mail or email to a class list promptly produced by Defendants providing, no later than 15 days after Defendants sign this Settlement Agreement, updated class information, including names, last known email and postal addresses, and dates of employment as a Tax Preparer (including the month that employment began and, if applicable, the month that employment ended), to Class Counsel for Settlement Class Members who currently are, or were formerly, employed by Defendants. To the extent reasonably possible, Defendants agree to provide the class list in the same form previously disclosed by Defendants in the Action based on Defendants' payroll data (e.g., JH-034906 and JH-034902) and Work Assignment Data (JH-095747), except that it shall also include the names, social security number, most recent address, and to the extent known, email address for the employees included on the class list based on the information maintained by Defendants. Class Counsel shall, in accordance with Rule 23(c)(2) of the Federal Rules of Civil Procedure, direct the Settlement Administrator to provide the Settlement Class with Notice as ordered by the Court. Provided Defendants provide the information described above, Settlement Class Members shall have no recourse as to Defendants or Defendants' Counsel with respect to any claims they may have that arise from any failure of the notice process.

6.     ***Dissemination of Notice.*** Class Counsel shall propose, and Defendants' Counsel shall not oppose, that the Notice be disseminated through mail and email using a methodology developed by the Settlement Administrator.

7.      ***Settlement Administrator.*** The Settlement Class shall retain a Settlement Administrator, which shall, under the direction of Class Counsel, be responsible for the notice administration process, distribution to the Settlement Class, withholding and paying applicable taxes, and other duties as provided herein. Class Counsel shall obtain approval by the Court of the choice of Settlement Administrator. The Settlement Administrator shall sign and be bound by the Protective Order entered in the Action. The fees and expenses of the Settlement Administrator shall be reimbursed out of the Settlement Fund Amount. Defendants shall deposit the amount budgeted by the Settlement Administrator for notice and claims administration in lawful United States money into an escrow account within 15 calendar days of entry of the Court's order granting Preliminary Approval of the Settlement.

8.      ***Motion for Final Approval and Entry of Final Judgment.*** Not less than thirty-five (35) calendar days before the date set by the Court to hold a fairness hearing to consider whether this Settlement should be finally approved, Plaintiffs shall submit, in consultation with Defendants, a Motion for Final Approval of the Settlement. Defendants shall not object to a Motion for Final Approval of the Settlement by the Court seeking the following:

a.      Fully and finally approving this Settlement Agreement and its terms as being a fair, reasonable, and adequate settlement as to the Settlement Class within the meaning of Rule 23(e) of the Federal Rules of Civil Procedure and directing its consummation according to its terms and conditions;

b.      Finding that the notice given to the Settlement Class constitutes the best notice practicable under the circumstances and complies in all respects with the due, adequate, and sufficient notice requirements of Federal Rule of Civil Procedure 23, and meets the requirements of due process;

c.     Directing that, as to Defendants, the Action and all claims therein be dismissed with prejudice and, except as provided for in this Settlement Agreement, without costs;

d.     Discharging and releasing the Releasees from the Released Claims;

e.     Permanently barring and enjoining the institution and prosecution, by any Settlement Class Member, of any other action against the Releasees based on the Released Claims;

f.     Reserving continuing and exclusive jurisdiction over the settlement and this Settlement Agreement, including all future proceedings concerning the administration, interpretation, consummation, and enforcement of this settlement, to the United States District Court for District of New Jersey;

g.     Finding under Rule 54(b) of the Federal Rules of Civil Procedure that there is no just reason for delay and directing that the judgment of dismissal as to Defendants shall be final and entered forthwith; and

h.     Requiring Plaintiffs' Counsel to file with the Clerk of the Court under seal a record with the names and addresses of individuals who timely opt out of the Settlement Class and to provide a copy of the record to Defendants' Counsel.

No later than five (5) business days after the Court fully and finally approves this Settlement Agreement and its terms, Plaintiffs shall seek entry of Final Judgment of the Action.

9.     ***Effect on Continued Proceedings against the Defendants.*** On the date the Court enters an order preliminarily approving the Settlement Agreement, Plaintiffs and each Settlement Class Member, and anyone claiming through or on behalf of them, shall be barred and enjoined

from commencing, instituting, continuing to prosecute, intervening in, participating in as class members or otherwise, or receiving any benefits or relief from any action or any proceeding against Defendants in any court of law or equity, arbitration tribunal, administrative forum, or other forum of any kind, asserting any of the Released Claims against the Releasees or Defendants' Counsel and any claims arising out of, relating to, or in connection with the defense, settlement, or resolution of the Action or the Released Claims, except for claims relating to the enforcement of the terms of this Settlement Agreement.

10.    ***Notification of Federal and State Officials.*** The Settlement Administrator shall notify federal and state officials of the Settlement as specified in 28 U.S.C. §§ 1715(a) & (b).

**Release and Discharge**

11.    ***Released Claims.*** In addition to the effect of the Final Judgment entered in the Action, on the Effective Date and in consideration of payment of the Settlement Fund Amount described in Paragraph 17 of this Settlement Agreement, the Releasees shall be fully, finally, and forever released, acquitted, and discharged from any and all manner of claims, demands, rights, actions, suits, and causes of action, whether class, individual, or otherwise in nature, damages whenever incurred, liabilities of any nature whatsoever, including costs, expenses, penalties, injuries, attorneys' fees, judgments, liens, losses, debts, obligations, guarantees, indemnities, and obligations of every kind and nature in law, equity, or otherwise that Releasors, or any one of them, whether directly, representatively, derivatively, or in any other capacity, ever had, now have, or hereafter can, shall, or may have against the Releasees, jointly or severally, whether known or unknown, relating in any way whatsoever to the allegations, claims, demands, or causes of action asserted in the Action by the Settlement Class. The parties intend that this release extinguish all claims that have been or could have been brought by the settlement class

members based on the antitrust matters set forth or otherwise alleged or referred to in the Fourth Amended Complaint filed in the Action. For the sake of clarity, the Settling Parties recognize and agree that (1) Released Claims shall include antitrust claims that are known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, disclosed or undisclosed, contingent or accrued, regardless of the type or amount of relief or damages claimed; and (2) Released Claims shall include any unknown antitrust claims regardless of whether, if known by Settlement Class Members, such claims might have affected this Settlement Agreement with Defendants and the release of the Releasees.

12.     The Released Claims do not include any claim for any product defect, breach of warranty, breach of contract, claim under the Uniform Commercial Code, claims for personal or bodily injury, claims for violation of ERISA, claims for discrimination, classification or misclassification, workplace safety, employee leave or benefits or claims under the WARN Act, or overtime pay under the Fair Labor Standards Act or similar state labor codes.

13.     ***Covenant Not to Sue.*** Releasors, and anyone claiming through or on behalf of them, shall not sue or otherwise seek to establish liability against Defendants or any of the Releasees based, in whole or in part, on any of the Released Claims or conduct at issue in the Released Claims. Releasors and Class Counsel acknowledge that they and Defendants each consider it to be a material term of this Settlement Agreement that all Releasors will be bound by the provisions of this paragraph.

14.     ***Select Relinquishment of Rights.*** Upon final approval and entry of Final Judgment by the Court, Defendants waive and relinquish as against each Settlement Class Member any rights that they might otherwise have pursuant to arbitration agreements, forum selection clauses, or jury waiver clauses with respect to the Released Claims.

15.     ***Waiver of California Civil Code Section 1542 and Similar Laws.*** The Releasors acknowledge that for the consideration received hereunder, it is their intention to release, and they are releasing all Released Claims, whether known or unknown. In furtherance of this intention, the Releasors expressly waive and relinquish, to the fullest extent permitted by law, any rights or benefits conferred by the provisions of California Civil Code Section 1542 ("Section 1542") and similar statutes or common law principles in other states. The Releasors acknowledge that they have been advised by Class Counsel of the contents and effects of Section 1542, which provides:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

16.     ***Express Waiver of Rights.*** The provisions of the Release set forth above in Paragraph 11 shall apply according to their terms, regardless of provisions of Section 1542 or any equivalent, similar, or comparable present or future law or principle of law of any jurisdiction. The Releasors may hereafter discover facts other than or different from those that they know or believe to be true with respect to the subject matter of the Released Claims, but the Releasors hereby expressly waive and fully, finally, and forever relinquish any and all rights and benefits existing under (i) Section 1542 or any equivalent, similar, or comparable present or future law or principle of law of any jurisdiction and (ii) any law or principle of law of any jurisdiction that would limit or restrict the effect or scope of the provisions of the release and covenant not to sue set forth in Paragraphs 11, 12, and 13.

## Settlement Consideration: Payment

17.     ***Settlement Payment.*** Subject to the provisions hereof, and in full, complete, and final settlement of the Action as provided herein, Defendants shall pay the remaining balance of

the Settlement Fund Amount, less the amount for notice and claims administration already paid by Defendants pursuant to Paragraph 7 herein, in lawful money of the United States into the Escrow Account within fifteen (15) calendar days of entry of the Court's Order of Final Approval of the Settlement.

18.     ***Notice, Fees, and Costs.*** Upon entry of the Court's order granting the Preliminary Approval Motion (the "Preliminary Approval Order"), Plaintiffs and the Settlement Administrator shall provide notice to the Settlement Class as set forth in the Preliminary Approval Order. Costs, fees, and expenses related to administering the settlement, including providing notice to the Settlement Class and providing notice to state and federal officials, shall be paid out of the Settlement Fund Amount.

19.     ***No Additional Payments by Defendants.*** Under no circumstances will Defendants or any of the Releasees be required to pay more than the Settlement Fund Amount and under no circumstances shall this Settlement Agreement be construed to require Defendants or any of the Releasees to make any other payments.

20.     ***No Other Discovery.*** From and after the date this Settlement Agreement is fully executed, neither Defendants nor Plaintiffs or any Settlement Class Member, shall file motions against the other or initiate or participate in any discovery, motion practice, or proceeding directly adverse to the other in connection with the Action, except as specifically provided for herein. Defendants and Plaintiffs shall not be obligated to respond or supplement prior responses to formal discovery that have been previously propounded by the other in the Action. Defendants shall retain the right, by motion or otherwise, to protect, or attempt to protect, from disclosure any and all documents and information designated as Confidential and/or Attorneys' Eyes Only under the Discovery Confidentiality Order in this Action (ECF No. 86).

**Settlement Fund Amount**

21.      ***Exclusivity of Relief in Settlement Fund Amount.*** Each Settlement Class Member shall look solely to the Settlement Fund Amount for settlement and satisfaction, as provided herein, of all claims released by the Releasors under Paragraphs 11-16 herein. Except as provided by order of the Court after finally approving the Settlement Agreement, no Settlement Class Member shall have any interest in the Settlement Fund Amount or any portion thereof. Incentive awards to Class Representatives may be ordered or authorized by the Court and paid from the Settlement Fund Amount. Any payment or lack of payment of incentive awards shall have no effect on the finality of the Settlement Agreement or the claims released by the Releasors under Paragraphs 11-16 of this Settlement Agreement.

22.      ***Escrow Fund Interest.*** Payments into the Escrow Account may, when made, be invested in instruments secured by the full faith and credit of the United States, and any interest earned thereon shall add to and become part of the Settlement Fund Amount.

23.      ***Allocation of Settlement Fund Amount***. All Settlement Class Members will receive payment from the Settlement Fund Amount and shall only be excluded from receiving payment if they timely and validly opt out in accordance with the procedures set forth in the notice served on the Class, subject to approval by the Court. Allocating the Settlement Fund Amount among the Settlement Class shall be based on a Plan of Allocation approved by the Court. The parties shall endeavor to calculate each class member's *pro rata* share of the settlement and send distributions to them directly without the need for individual claim forms. If there is insufficient information to make the distribution for any class members, then they will be entitled to submit a claim.

24. ***No Liability for Distribution of Settlement Fund Amount.*** Except as provided in Paragraph 17, neither Defendants nor Defendants' Counsel nor any of the Releasees shall have any responsibility for, financial obligation for, or liability whatsoever with respect to the investment, distribution, use, or administration of the Settlement Fund Amount, including, but not limited to, the costs and expenses of such investment, distribution, or administration. Defendants , the Releasees, and Defendants' Counsel shall likewise have no responsibility for, financial obligation for, or liability whatsoever with respect to distribution of the Settlement Fund Amount. Defendants shall not be responsible or otherwise liable for any disputes relating to the amount, allocation, or distribution of any attorneys' fees, costs, or incentive awards.

25. ***Distribution of Settlement Fund Amount.*** After the Effective Date, the Settlement Fund Amount will be distributed in accordance with the orders of the Court and this Settlement Agreement, including a Plan of Allocation that Class Counsel shall submit at the appropriate time for approval by the Court.

**Attorneys' Fees and Reimbursement of Costs; Incentive Awards**

26. Class Counsel may, in its sole discretion, seek an award of the Fee and Cost Amount at the time of filing the Preliminary Approval Motion or at the time notice is disseminated to the Settlement Class. Defendants will not oppose Class Counsel's request for the Fee and Cost Amount.

27. Any order or proceeding relating to any application for, or approval of, the Fee and Cost Amount, the pendency of any such application, or any appeal or review of an order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel this Settlement Agreement, or affect or delay the finality of the Final Judgment.

28.     Class Counsel shall have sole authority to determine the allocation of attorneys' fees awarded by the Court. Defendants, Defendants' Counsel, and the Releasees shall have no responsibility for, and no liability whatsoever with respect to, the division of attorneys' fees and expenses among Class Counsel, and any negotiation or dispute among Class Counsel in that regard shall not operate to terminate or cancel this Settlement Agreement or affect or delay the finality of the Final Judgment. Defendants, Defendants' Counsel, and the Releasees shall have no responsibility for, and no liability whatsoever with respect to, any payment to Class Counsel or to any other counsel representing any Plaintiff or any member of the Settlement Class or to any other Person who may assert some claim thereto or to any other fee and expense award that the Court may make in this Action, other than as set forth in this Settlement Agreement.

29.     *Incentive Awards*. Class Counsel may seek Court approval for incentive awards to the Class Representatives to compensate them for their participation in this Action, which Defendants will not oppose. Such incentive awards shall be paid out of the Settlement Fund Amount after Court approval and the Effective Date, and in no event shall Defendants or any of the Releasees be obligated to pay anything in addition to the Settlement Fund Amount.

**Disbursement of the Settlement Fund Amount**

30.     Disbursements of the Settlement Fund Amount may be distributed to Settlement Class Members in accordance with a Plan of Allocation subject to approval by the Court.

31.     The Settlement Fund shall be applied:  (i) first, to pay the costs of all required notices and settlement administration; (ii) to pay Plaintiffs' Counsel's attorneys' fees and expenses and any Plaintiff incentive awards in the amount awarded by the Court, neither of which Defendants will oppose; and (iii) third, to pay Settlement Class Members their *pro rata* share of the remaining Settlement Fund Amount.

32.      ***Balance Remaining in Settlement Fund Amount; No Reversion.*** If monies remain from the Settlement Fund Amount following all distribution efforts approved by the Court (whether by reason of tax refunds, uncashed checks, or otherwise), Class Counsel shall move the Court for an order disposing of all such funds, including additional possible distributions to the Settlement Class and/or *cy pres* distribution as approved by the Court. In such event, no portion of the Settlement Fund Amount shall revert or be returned to Defendants. The parties shall negotiate in good faith regarding a *cy pres* recipient, if any.

**Settlement Consideration: Corporate Reform**

33.      Defendants agree to notify all managers of company-owned locations and franchise operators and/or owners (as applicable) that there is no prohibition, restriction, "corporate culture," or any other understanding preventing the solicitation or hiring of Defendants' current or former employees or current or former employees of franchise operators and/or owners (as applicable). Defendants agree to provide notice to all managers of company-owned locations and franchise operators and/or owners (as applicable), and also agree to post this communication on its internal website.

**Rescission of the Settlement Agreement**

34.      ***Option to Rescind.*** If (a) this Settlement Agreement is not approved by the Court in substantially the form drafted and agreed upon by the Parties, including certification of the Settlement Class; or (b) if any material objections to the Settlement Agreement are sustained by the Court; or (c) if final approval of this Settlement does not occur and the Court does not enter the Final Order and Judgment substantially in the form agreed to by the Parties; then Defendants and Plaintiffs shall each, in their respective sole discretion, have the option to rescind this Settlement Agreement in its entirety by providing written notice to the undersigned counsel, by

personal delivery, email, or by overnight courier within ten (10) business days of an Order by the Court satisfying any of the preceding conditions in this Paragraph. A modification or reversal on appeal of the Fee and Cost Amount awarded by the Court, the Class Representatives' incentive awards, or the Plan of Allocation shall not be deemed a modification of this Settlement Agreement or the Final Judgment and shall not provide an option to rescind under this paragraph.

35.     ***Effect of Paragraph 34 Rescission or Elective Withdrawal under Paragraph 36.*** If the Settlement Agreement is rescinded, canceled, or terminated pursuant to Paragraphs 34 or 36, any and all obligations pursuant to this Settlement Agreement shall cease immediately. In no event, however, shall any funds deposited pursuant to Paragraph 7 for notice and/or administration be refunded.

36.     ***Elective Withdrawal.*** If the number of individuals that timely and validly opt out of the Settlement Class exceeds 5% of the headcount of the Settlement Class then Defendants, in their sole discretion, shall have the unilateral, unconditional option to withdraw from the Settlement Agreement and render the Settlement Agreement null and void.

37.     ***Written Notice of Termination.*** To exercise its option to terminate the Settlement Agreement, Defendants' Counsel must provide Class Counsel with written notice no later than twenty-eight (28) days after Defendants have received from the Settlement Administrator information indicating that more than 5% of the headcount of the Settlement Class have timely and validly opted out of the Settlement.

38.     ***Use of Agreement as Evidence.*** This Settlement Agreement, regardless of whether it shall become final, and any and all negotiations, documents, and discussions associated with it, shall be governed by Rule 408 of the Federal Rules of Evidence and shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or

of any liability or wrongdoing by Defendants or of the truth of any of the claims or allegations made in the Action, and evidence thereof shall not be admissible or used directly or indirectly in any way in the Action or in any other action or proceeding, except an action to enforce or interpret the Settlement Agreement. The parties expressly reserve all of their rights if this Settlement does not become final in accordance with the terms of this Settlement Agreement.

**Taxes**

39.     ***Responsibility regarding Taxes.*** Class Counsel shall be solely responsible for directing the Settlement Administrator to file all informational and other tax returns necessary to report any taxable and/or net taxable income earned by the Settlement Fund Amount. Further, Class Counsel shall be solely responsible for directing the Escrow Agent to pay from the Settlement Fund, as and when legally required, any and all Tax Expenses. Class Counsel shall be entitled to direct the Escrow Agent in writing to pay customary and reasonable Tax Expenses, including reasonable professional fees and expenses incurred in connection with carrying out their responsibilities as set forth in this paragraph, from the Settlement Fund by notifying the Escrow Agent in writing. Defendants and the Releasees shall have no responsibility to make any tax filings or tax payments relating in any way to payments made pursuant to this Settlement Agreement.

40.     ***Settlement Administrator is IRS Administrator.*** For purposes of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "Administrator" of the Escrow Account shall be the Settlement Administrator, who shall timely and properly file or cause to be filed on a timely basis, all tax returns necessary or advisable with respect to the Escrow Account (including without limitation all income tax returns, all informational returns, and all returns described in Treas. Reg. § 1.468B-2(1)).

21

41.     ***Treatment of Escrow Account.*** The parties to the Settlement Agreement and their counsel shall treat, and shall cause the Settlement Administrator to treat, the Escrow Account as being at all times a "qualified settlement fund" ("QSF") within the meaning of Treas. Reg.§ 1.468B-1. The Settlement Fund Amount will be invested in instruments secured by the full faith and credit of the United States or an interest bearing or non-interest bearing deposit obligation of Endeavor Bank insured by the Federal Deposit Insurance Corporation to the applicable limits, and any interest earned (or negative interest) thereon shall become part of (or paid from) the Settlement Fund Amount. Defendants shall be the "transferor" to the QSF within the meaning of Section 1.468B-1(d)(1) of the Treasury Regulations with respect to the Settlement Fund Amount or any other amount transferred to the QSF pursuant to this Settlement Agreement. The Settlement Administrator shall be the "administrator" of the QSF within the meaning of Section 1.468B-2(k)(3) of the Treasury Regulations, responsible for causing the filing of all tax returns required to be filed by or with respect to the QSF, paying from the QSF any taxes owed by or with respect to the QSF, and complying with any applicable information reporting or tax withholding requirements imposed by Section 1.468B-2(l)(2) of the Treasury Regulations or any other applicable law on or with respect to the QSF. Defendants and the Settlement Administrator shall reasonably cooperate in providing any statements or making any elections or filings necessary or required by applicable law for satisfying the requirements for qualification as a QSF, including any relation-back election within the meaning of Section 1.468B-1(j) of the Treasury Regulations.

42.     ***Treatment of Escrow Account as QSF.*** The Settling Parties, their counsel, the Settlement Administrator, and the Escrow Agent agree that they will not ask the Court to take any action inconsistent with the treatment of the Escrow Account as a QSF. In addition, the

Settlement Administrator and, as required, the parties shall timely make such elections as necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-l(j)) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Settlement Administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties and thereafter to cause the appropriate filing to occur. All provisions of this Settlement Agreement shall be interpreted in a manner that is consistent with the Escrow Account being a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.

43.     ***Settlement Fund Amount Interest.*** Interest earned by the Settlement Fund Amount shall be for the benefit of the Settlement Class.

44.     ***Tax Withholding and Reporting.*** Payments to Plaintiffs and other Settlement Class Members from the Escrow Account will be subject to applicable tax withholding and reporting requirements and shall be made net of all applicable employment taxes, including, without limitation, federal, state, and local income tax withholding and applicable FICA and Medicare taxes. Disbursements from the Settlement Fund Amount for the payment of any taxes shall be made by the Escrow Agent in accordance with all applicable state and federal statutes and regulations.

45.     ***Employment Taxes and Withholding.*** The Settlement Administrator, as administrator of the QSF, shall report that portion of the Settlement Fund Amount payable by the QSF as wages to each eligible Settlement Class Member to the IRS and to other appropriate Taxing Authorities, and each of them, on an IRS Form W-2, or any other applicable form. Such amounts shall be subject to applicable employment taxes and withholding taxes, including,

23

without limitation, FICA, FUTA, Medicare, and any state and local taxes, including without limitation, SUTA, as determined by the Settlement Administrator as administrator of the QSF making such payments.

46.     ***Payment of Taxes.*** The Settlement Administrator shall pay from the QSF the employee's and employer's shares of all applicable U.S. federal, state, and local taxes, including, without limitation, the employer's share of FICA, FUTA, Medicare, and any state and local taxes, including without, limitation, SUTA, required to be paid by an employee or employer on amounts treated as wages (all such U.S. federal, state, and local taxes, collectively the "Payroll Taxes"). Plaintiffs, Class Counsel, Settlement Class Members, and the Settlement Administrator shall not seek payment for payroll taxes from Defendants or any of the Releasees.

47.     ***Reporting if Treated as Other than Wages.*** If any portion of the Settlement Fund Amount payable by the QSF to any eligible Settlement Class Member is determined to be treated as other than wages, the Settlement Administrator, as administrator of the QSF, shall report that portion to the Settlement Class Member, and all applicable Taxing Authorities, to the extent required by law, under the Settlement Class Member's name and U.S. federal taxpayer identification number on IRS Forms 1099, 1042-S, or other applicable forms, and such payments shall be made without deduction for taxes and withholdings, except as required by law, as determined by the Settlement Administrator as administrator of the QSF making such payments.

48.     ***Satisfaction of Taxes and Reporting.*** The Settlement Administrator shall be responsible to satisfy from the Settlement Fund Amount any and all federal, state, and local employment and withholding taxes, including, without limitation, federal, state and local income tax withholding, and any U.S. federal taxes including, without limitation, FICA, FUTA, and Medicare and any state employment taxes including, without limitation, SUTA. The Settlement

Administrator shall promptly provide to Defendants the information and documentation (including copies of applicable IRS and state forms) reasonably requested by Defendants with respect to the payment or remittance of such employment and withholding taxes. The Settlement Administrator shall satisfy all federal, state, local, and other reporting requirements (including, without limitation, any applicable reporting with respect to attorneys' fees and other costs subject to reporting), and any and all taxes, together with interest and penalties imposed thereon, and any other obligations with respect to the payments or distributions under the terms of this Settlement Agreement not otherwise addressed herein.

49. ***Tax Forms.*** The Settlement Administrator shall be responsible for procuring any required tax forms from Settlement Class Members before making any such payments or distributions.

50. ***Express Statement of No Liability for Tax Obligations.*** For avoidance of doubt, Defendants, Defendants' Counsel, the Releasees, Plaintiffs, and Class Counsel shall have no liability, obligation or responsibility whatsoever for tax obligations arising from payments to any Settlement Class Member or based on the activities and income of the QSF. In addition, Defendants, Defendants' Counsel, and the Releasees shall have no liability, obligation or responsibility whatsoever for tax obligations arising from payments to Plaintiffs or Class Counsel. The QSF shall be solely responsible for its tax obligations. Class Counsel shall be solely responsible for their own tax obligations.

51. ***No Tax Advice or Representations.*** Plaintiffs, individually and on behalf of the Settlement Class, and Class Counsel and each of them represent and agree that they have not received and/or relied on any advice and/or representations from Defendants, the Releasees, or Defendants' Counsel as to taxes, including the taxability of the payments received pursuant to

this Settlement Agreement. Class Counsel represent that neither Plaintiffs nor Class Counsel provided any advice as to the taxability of payments received pursuant to this Agreement.

**Miscellaneous**

52.     ***Basis for Plaintiffs' Agreement to Settle.*** Plaintiffs expressly warrant that, in entering into the settlement, they have relied solely on their own knowledge and investigation, and not on any promise, representation, warranty, or other statement by Defendants not expressly contained in this Settlement Agreement.

53.     ***Objections.*** The procedures and requirements regarding Settlement Class Members' rights and options, including filing objections in connection with and/or appearing at the fairness hearing, are intended to ensure the efficient administration of justice and the orderly presentation of any Settlement Class Members' objections to the Settlement Agreement, in accordance with such Settlement Class Member's due process rights. The Settling Parties will request that the Preliminary Approval Order further provide that objectors who fail to properly or timely file their objections, along with the required information and documentation set forth above, or to serve them as provided above, shall not be heard during the fairness hearing, nor shall their objections be considered by the Court.

54.     ***Headings.*** The headings used in this Settlement Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Settlement Agreement.

55.     ***No Party Deemed to Be the Drafter.*** None of the parties hereto shall be deemed to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

56.     ***Entire Agreement.*** This Settlement Agreement constitutes the entire agreement among Plaintiffs and Defendants pertaining to the settlement of the Action and supersedes any and all prior and contemporaneous undertakings of the Settling Parties in connection therewith. This is an integrated agreement. This Settlement Agreement may be modified or amended only by a writing executed by Class Counsel and Defendants' Counsel and approved by the Court.

57.     ***Determination of Illegal, Invalid, or Unenforceable Provision.*** With the exception of Paragraphs 11-16 of this Settlement Agreement, if any one or more of the provisions of this Settlement Agreement shall for any reason be held to be illegal, invalid or unenforceable in any respect, such illegality, invalidity or unenforceability shall not affect any other provision if Defendants' Counsel and Class Counsel mutually agree to proceed as if such illegal, invalid, or unenforceable provision had never been included in the Settlement Agreement. If any portion or all of Paragraphs 11-16 of this Settlement Agreement shall for any reason be held to be illegal, invalid or unenforceable in any respect, Plaintiffs and Defendants shall each, in their sole discretion, have the option to rescind this Settlement Agreement in its entirety by providing written notice to the undersigned counsel, by personal delivery, email, or by overnight courier within ten (10) business days of such holding.

58.     ***Retention of Rights***. Defendants retain their rights under the Discovery Confidentiality Order in this Action (ECF No. 86) to seek to maintain the confidentiality of any of their documents so designated, including with respect to any appeal in the Action.

59.     ***Choice of Law.*** All terms of this Settlement Agreement shall be governed and interpreted according to the substantive laws of New Jersey without regard to its choice of law or conflict of laws principles.

60.    ***Consent to Jurisdiction.*** The Court retains exclusive jurisdiction over all matters relating to the implementation, enforcement, and performance of the Settlement Agreement. The Settling Parties hereby irrevocably submit to the exclusive and continuing jurisdiction of the Court for any suit, action, proceeding, or dispute arising out of or related to this Settlement Agreement or the applicability or interpretation of this Settlement Agreement, including without limitation any suit, action, proceeding, or dispute relating to the Released Claims and Paragraphs 11-16 of this Settlement Agreement.

61.    ***Execution in Counterparts.*** This Settlement Agreement may be executed in counterparts by Class Counsel and Defendants' Counsel, and a PDF signature shall be deemed an original signature for purposes of executing this Settlement Agreement and so executed shall constitute one agreement.

62.    ***Binding Effect***. This Settlement Agreement shall be binding on, and inure to the benefit of, the heirs, successors, and assigns of the Settling Parties hereto. Without limiting the generality of the foregoing, each and every covenant and agreement herein by Plaintiffs and Class Counsel shall be binding on all Settlement Class Members and all Releasees and Releasors.

63.    ***Timeframe.*** To the extent that any timeframe set out in this Settlement Agreement is ambiguous, said ambiguity shall be resolved by applying the convention contained in Rule 6 of the Federal Rules of Civil Procedure.

64.    ***Authorization to Enter Settlement Agreement.*** Each of the undersigned attorneys represents that he or she is fully authorized to conduct settlement negotiations and to enter into the terms and conditions of, and to execute, this Settlement Agreement on behalf of his or her respective clients, subject to Court approval.

65.     ***Confidentiality of Settlement Negotiations***. Class Counsel shall keep strictly confidential and not disclose to any third party, including specifically any counsel representing any other current, future, or former party to the Action, any non-public information regarding the Settling Parties' negotiation of the settlement or the Settlement Agreement, except that the Settling Parties may file under seal any documents concerning this settlement or the negotiation of the Settlement Agreement in connection with a motion or proceeding to enforce or contest the terms of this Settlement Agreement. Information contained within this Settlement Agreement shall be considered public. After Preliminary Approval, the Settling Parties reserve the right to issue a press release regarding execution of the Settlement Agreement and the amount paid in connection with the Settlement Agreement.  The Settling Parties agree that before Preliminary Approval of the Settlement Agreement, they shall not publish, issue, or cause to be issued any such press release concerning the Settlement Agreement. In response to media inquiries, the Settling Parties, and their counsel, agree to limit their response to "the parties have reached an agreement to settle the matter."  However, the Settling Parties agree that nothing in this paragraph precludes or limits the Defendants from communicating with their employees or franchisees about the Settlement Agreement as they deem appropriate in their sole discretion, and as contemplated by the corporate reform provisions in Section 33 of this Settlement Agreement.

66.     ***Notices.*** Any notice or other communication required or permitted to be delivered to any party under this Settlement Agreement shall be in writing and shall be deemed properly delivered, given, and received when delivered either by hand, by registered mail, by courier or express delivery service, or by electronic mail, (or to such other address or electronic mail address, as such party shall have specified in a written notice given to the other parties):

If to Class Counsel:

LITE DEPALMA GREENBERG & AFANADOR, LLC
Bruce D. Greenberg
570 Broad Street, Suite 1201
Newark, New Jersey 07102
Tel: (973) 623-3000
bgreenberg@litedepalma.com

HARTLEY LLP
Jason S. Hartley
101 West Broadway, Suite 820
San Diego, California 92101
Tel: (619) 400-5822
hartley@hartleyllp.com

PAUL LLP
Richard M. Paul III
601 Walnut Street, Suite 300
Kansas City, Missouri 64106
Tel: (816) 984-8100
Rick@PaulLLP.com

JOSEPH SAVERI LAW FIRM, LLP
Joseph R. Saveri
601 California Street, Suite 1000
San Francisco, California 94108
Tel: (415) 500-6800
jsaveri@saverilawfirm.com


If to Counsel for Defendants:

QUARLES & BRADY LLP
Edward A. Salanga
One Renaissance Square
Two North Central Avenue
Phoenix, AZ  85004
Tel: (602) 229-5200
Edward.salanga@quarles.com

QUARLES & BRADY LLP
Joshua D. Maggard, Esq. *(Pro Hac Vice)*
Joseph P. Poehlmann, Esq. (*Pro Hac Vice*)
411 East Wisconsin Avenue, Suite 2400
Milwaukee, WI 53202
Tel: (414) 277-5855
joshua.maggard@quarles.com
joseph.poehlmann@quarles.com

QUARLES & BRADY LLP
Jonathan P. Labukas (*Pro Hac Vice*)
2020 K Street, NW, Suite 400
Washington, DC 20006
Tel: (202) 372-9514
Jonathan.Labukas@quarles.com

**IN WITNESS WHEREOF**, the parties hereto, through their fully authorized

representatives, have agreed to this Settlement Agreement as of the date first herein written

above.

By: _____
**LITE DEPALMA GREENBERG &
AFANADOR, LLC**
Bruce D. Greenberg
570 Broad Street, Suite 1201
Newark, New Jersey 07102
Tel: (973) 623-3000
bgreenberg@litedepalma.com

**HARTLEY LLP**
Jason S. Hartley
101 West Broadway, Suite 820
San Diego, California 92101
Tel: (619) 400-5822
hartley@hartleyllp.com

By: _____
**QUARLES & BRADY LLP**
Edward A. Salanga
One Renaissance Square
Two North Central Avenue
Phoenix, AZ  85004
Tel: (602) 229-5200
Edward.salanga@quarles.com

**QUARLES & BRADY LLP**
Joshua D. Maggard, Esq. *(Pro Hac Vice)*
Joseph P. Poehlmann, Esq. (*Pro Hac Vice*)
411 East Wisconsin Avenue, Suite 2400
Milwaukee, WI 53202
Tel: (414) 277-5855
joshua.maggard@quarles.com
joseph.poehlmann@quarles.com

**PAUL LLP**
Richard M. Paul III
Laura C. Fellows
601 Walnut Street, Suite 300
Kansas City, Missouri 64106
Tel: (816) 984-8100
Rick@PaulLLP.com
Laura@PaulLLP.com

**JOSEPH SAVERI LAW FIRM, LLP**
Joseph R. Saveri
Christopher K.L. Young
601 California Street, Suite 1000
San Francisco, California 94108
Tel: (415) 500-6800
jsaveri@saverilawfirm.com
cyoung@saverilawfirm.com

*Attorneys for Plaintiffs Jessica Robinson,*
*Stacey Jennings, and Priscilla McGowan*
*and interim co-lead and liaison class*
*counsel*

**QUARLES & BRADY LLP**
Jonathan P. Labukas (*Pro Hac Vice*)
2020 K Street, NW, Suite 400
Washington, DC 20006
Tel: (202) 372-9514
Jonathan.Labukas@quarles.com

**ANSA ASSUNCAO LLP**
James S. Coons
David A. Gonzalez
100 Matawan Road, Suite 400
Matawan, New Jersey 07747
Tel:  (732) 993-9850
james.coons@ansalaw.com
david.gonzalez@asalaw.com

*Attorneys for Defendants Jackson Hewitt*
*Inc. and Tax Services of America, Inc.*

QUARLES & BRADY LLP
Joshua D. Maggard, Esq. *(Pro Hac Vice)*
Joseph P. Poehlmann, Esq. *(Pro Hac Vice)*
411 East Wisconsin Avenue, Suite 2400
Milwaukee, WI 53202
Tel: (414) 277-5855
joshua.maggard@quarles.com
joseph.poehlmann@quarles.com

QUARLES & BRADY LLP
Jonathan P. Labukas *(Pro Hac Vice)*
2020 K Street, NW, Suite 400
Washington, DC 20006
Tel: (202) 372-9514
Jonathan.Labukas@quarles.com


**IN WITNESS WHEREOF**, the parties hereto, through their fully authorized

representatives, have agreed to this Settlement Agreement as of the date first herein written

above.


By: _____

**LITE DEPALMA GREENBERG &
AFANADOR, LLC**
Bruce D. Greenberg
570 Broad Street, Suite 1201
Newark, New Jersey 07102
Tel: (973) 623-3000
bgreenberg@litedepalma.com

**HARTLEY LLP**
Jason S. Hartley
101 West Broadway, Suite 820
San Diego, California 92101
Tel: (619) 400-5822
hartley@hartleyllp.com

By: _____

**QUARLES & BRADY LLP**
Edward A. Salanga
One Renaissance Square
Two North Central Avenue
Phoenix, AZ  85004
Tel: (602) 229-5200
Edward.salanga@quarles.com

**QUARLES & BRADY LLP**
Joshua D. Maggard, Esq. *(Pro Hac Vice)*
Joseph P. Poehlmann, Esq. *(Pro Hac Vice)*
411 East Wisconsin Avenue, Suite 2400
Milwaukee, WI 53202
Tel: (414) 277-5855
joshua.maggard@quarles.com
joseph.poehlmann@quarles.com

31

# EXHIBIT 2



101 West Broadway, Suite 820
San Diego, California 92101
(619) 400-5822
http://hartleyllp.com
Email: info@hartleyllp.com

**Firm Profile:**

Hartley LLP was formed in 2018 by founding partners who had previously worked together for nearly two decades. Hartley LLP attorneys have extensive experience in all aspects of complex plaintiffs' contingency litigation, including antitrust, consumer protection, unfair competition, wage and hour, breach of contract, and other large class action cases.

Hartley LLP lawyers have served as Court-appointed Lead or Co-Lead Class Counsel in multiple coordinated multi-district litigation actions, as well as numerous Executive Committee and other leadership positions in all forms of complex litigation.

Judges in class action cases have stated that Hartley LLP lawyers "ably represented their clients and vigorously pursued their case" and noted Hartley LLP's experience in antitrust and class action litigation, including the ability to navigate difficult litigation hurdles such as overseas depositions while achieving settlements with multiple defendants for class members.

Clients have stated that they have "never had more competent counsel," that Hartley LLP lawyers were "knowledgeable and helped make our case with minimal impact to the business" while being "fun to work with," and that founding partner Jason Hartley is a "fierce negotiator."

# Attorneys

## Jason S. Hartley
## Founding Partner



Jason exclusively represents plaintiffs in commercial contingency representation, class action litigation, antitrust, and unfair competition. He is involved in all aspects of civil litigation and has handled cases in both federal and state courts, in litigation and at trial. For the past several years, his practice has involved primarily antitrust and consumer class actions, often representing the largest plaintiff class members in nationwide antitrust actions.

Jason has successfully represented plaintiffs in federal Section 1 (conspiracy) and Section 2 (monopoly) Sherman Act cases and in state law actions alleging unfair business practices, false advertising, pharmaceutical "sham patent" and "pay-for-delay "cases, among other claims. He has developed an expertise litigating against foreign defendants in cases implicating global markets. Jason has represented a number of Fortune 500 companies as plaintiffs and served as lead counsel and in senior litigation roles in numerous class actions, which have collectively recovered billions of dollars for plaintiffs.

Jason has obtained notable results for his clients in numerous groundbreaking decisions and on issues of first impression. For example, he obtained the first ever certification of a class of purchasers in a patent related Walker Process antitrust claim (*Alfred T. Giuliano, et al. v. SanDisk Corporation*, Case No. 4:10-cv-02787, ECF 302 (N.D. Ca. 2015)); he obtained the first and only court-ordered denial of ACPERA protection claimed by Defendants cooperating with the Department of Justice, thus increasing three-fold the potential damages available to the plaintiffs he represented (*In re Aftermarket Automotive Lighting Products Antitrust Litigation*, 2013 WL 4536569 (C.D.Ca. 2013)) and he obtained the denial of a motion to dismiss based upon the Foreign Trade Antitrust Improvements Act ("FTAIA") in a case that helped set the standard for FTAIA dismissal motions (*Fond du Lac Bumper Exchange, Inc. v. Jui Li Enterprise Co. Ltd*., et al; 753 F. Supp.2d 792 (E.D.Wis. 2010)).

Jason has been appointed by federal courts around the country as plaintiffs' class counsel in over a dozen cases, which have recovered hundreds of millions of dollars for his clients. He was chosen by the Judges of the Southern District of California to serve as a lawyer representative since 2017, is part of the planning committee for the ABA's Institute on Class Actions, and regularly speaks at CLE seminars and publishes articles on class and antitrust issues. He was recognized as "Best of the Bar" by the San Diego Business Journal in 2017, a "Man of Influence" by San Diego Metro magazine in 2019 and a 2020 Top Antitrust Attorney by California's Daily Journal.  Hartley LLP was the only San Diego firm awarded a "Top Boutique Law Firm" by the Daily Journal in 2021. Jason served on the Board of both the American Association for Justice and the Consumer Attorneys of California, has an AV rating and has been selected by his peers as a Super Lawyer for the last ten consecutive years.

## Education

- **Tulane Law School**, **J.D.** *cum laude* 1997
  **Honors:** Winner, Nathan Burkan Memorial Writing Competition by ASCAP Law Journal: Tulane Journal of International and Comparative Law, Assistant Executive Editor
- **University of California**, **San Diego, B.A.** 1993
- **Honors:** Provost's Honor List

## Community Involvement

- San Diego Museum of Man, Balboa Park (Board of Trustees)
- San Diego Regional Economic Development Corporation (Policy Committee)
- ElderHelp of San Diego (Fundraising Committee Member)
- YMCA Adventure Guides (Circle Chief)

## Professional Organizations

- American Bar Association (Member)
- American Association for Justice (Board of Governors)
- Consumer Attorneys of California (Board of Directors, Board of Governors)
- Consumer Attorneys of San Diego (Member)
- San Diego County Bar Association (Member)
- American Bar Foundation (Fellow)
- The National Trial Lawyers, Top 100 (Member)
- "Man of Influence" – San Diego Metro Magazine
- Super Lawyers ® San Diego
- Best Lawyers ® - Class Actions
- Top Antitrust Attorneys - Daily Journal
- "Best of the Bar" – San Diego Business Journal
- Top Boutique Law Firm – Daily Journal

# Jason M. Lindner
## Partner

Jason's practice includes litigation of antitrust, unfair competition, complex business, California wage and hour, Fair Labor Standards Act, and other general class action litigation. He has been involved in all aspects of civil litigation in both federal and state courts.

Jason has successfully represented plaintiffs in federal Section 1 and Section 2 Sherman Act cases and in state law actions alleging unfair business practices. He has also represented classes of plaintiff employees under both the FLSA and under California State wage and hour statutes. He has served as lead counsel and in senior litigation roles in numerous class actions, which have collectively recovered billions of dollars for plaintiffs.

## Education

- **University of Miami**, B.A., *cum laude*, 1997
- **University of Pennsylvania**, J.D., 2000

## Community Involvement & Publications

- Super Lawyers – San Diego 2015-2018, 2020-2021
- Twice received the Wiley M. Manuel award for excellence in providing Pro Bono Legal Services
- "*Class Action Litigation in the United States and Mexico*" – San Diego Bar Panelist and Author (October 2012)
- "*How Does a Participant Withdraw From a Conspiracy*?" Section of the American Bar Association Section of Antitrust Law's Proof of Conspiracy Under the Federal Antitrust Law
- "*Background of the Illinois Brick Decision*," Appendix, American Bar Association Section of Antitrust Law's Indirect Purchaser Litigation Handbook
- Co-Author, "*Monopolization in Telecommunication Markets*," Chapter of American Bar Association Section of Antitrust Law's Telecommunications and Antitrust Practice Guide

## Dylan J. McFarland
## Of Counsel



Dylan brings a wealth of knowledge and experience to the practice of complex commercial civil litigation. Most recently he worked at Heins Mills & Olson, PLC, first as a partner and then as of counsel, where he represented plaintiff classes comprising individuals, governmental entities, and closely and publicly held corporations asserting violations of antitrust, securities fraud, unfair competition, and consumer protection laws. During his career, Dylan has first-chaired more than two dozen trials, and has briefed and argued numerous appeals in both federal and state courts.

Dylan has participated in some of the nation's largest and most challenging cases. In the arena of securities fraud, for example, he was the principal brief writer for the plaintiff shareholder class in *In re AOL Time Warner Securities Litig.* (S.D.N.Y.), which achieved a $2.65 billion recovery for shareholders who allegedly suffered losses as a result of the merger of AOL and Time Warner. He played a similar role in *In re Broadcom Corp. Securities Litig.* (C.D. Cal.), which recovered $150 million for shareholders of a semiconductor manufacturer.

Dylan has also been involved in a number of antitrust class actions that have resulted in large recoveries. Examples include *In re Municipal Derivatives Antitrust Litig.* (S.D.N.Y.) (alleging bid-rigging of municipal derivatives by brokers and financial institutions); *In re TFT-LCD (Flat Panel) Antitrust Litig.* (N.D. Cal.) (alleged price-fixing by producers of LCD screens); *In re LIBOR-Based Financial Instruments Antitrust Litig.* (S.D.N.Y.) (alleging conspiracy by British Bankers' Association member banks to manipulate London InterBank Offered Rates); *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.* (E.D.N.Y.) (representing opt-out merchants alleging conspiracy by Visa, Mastercard and their network banks to charge excessive fees for accepting their brand credit and debit cards); *In re Lidoderm Antitrust Litig.* (N.D. Cal.) (alleging anticompetitive conduct by pharmaceutical companies to delay generic competition with Lidoderm transdermal patches); *In re Foreign Exchange Benchmark Rates Antitrust Litig.* (S.D.N.Y.) (alleging conspiracy by international financial institutions to manipulate foreign exchange currency rates).

Dylan also worked on class actions arising in other areas of law, including *In re National Hockey League Players' Concussion Injury Litig.* (D. Minn.) (alleging negligence claims against the NHL on behalf of retired NHL hockey players for concussion-related brain injuries); *In Re Target Corporation Customer Data Security Breach Litigation* (D. Minn.) (seeking damages for Target customers caused by one of the largest payment card security breaches in U.S. history); *Simmons v. Kemp* (D. Minn.) (recovering a $100 million payment from HUD on behalf of the Minneapolis Public Housing Authority and Minneapolis Community Development Agency as part of a consent decree to remedy unlawful racial segregation in the original siting of public housing in Minneapolis).

In addition to his private practice, Dylan was an adjunct Professor of Law from 1997 to 2002 at the Mitchell Hamline School of Law in St. Paul, Minnesota, which has one of the top-

rated clinical programs in the country. In that program he taught law students trial skills, appellate advocacy and legal writing.

## Education

**Harvard Law School**
J.D. *cum laude*

- Note and Comment Editor, *Harvard Civil Rights–Civil Liberties Law Review*
- Legal Writing teaching assistant
- Harvard University varsity men's track & field and cross–country (one year)

**University of Minnesota Medical School**
*No degree*

**University of Minnesota**
B.A. *summa cum laude*

- Phi Beta Kappa
- Varsity men's track & field and cross–country

## Community Involvement & Publications

- Former "Super Lawyer," *Minnesota Law & Politics*
- Former "Rising Star," *Minnesota Law & Politics*
- "Litigation Star," *Benchmark Plaintiff: The Definitive Guide to America's Leading Plaintiff Firms & Attorneys*

## Maureen Forsyth
## Of Counsel



Maureen brings a wide array of knowledge to Hartley LLP.   Maureen has experience in antitrust, shareholder litigation, government contracts and debt recovery. Since 2016 Maureen has focused on antitrust and class action cases. Maureen has assisted in legal strategy and case development in an array of cases serving both individual and business clients. She has also focused on government subpoena responses as well as internal investigations during merger negotiations. Previously Maureen formed her own private practice focusing primarily on monetary recovery for clients.

Maureen has more recently been involved in securities fraud litigation against a pharmaceutical company, alleging an unlawful kickback scheme which artificially increased the stock value.

### Education

- **Suffolk University Law School, Boston, MA; J.D. 1998**

- **University of Massachusetts at Amherst, Amherst, MA; B.A. Legal Studies and English 1994**
  **Honors:** *Cum Laude*

**Teresa Jones**
**Attorney**



Teresa's practice includes antitrust, unfair competition, and consumer protection litigation with a focus on complex class action matters.

Most recently she worked at Heins Mills & Olson, PLC, where she represented plaintiff classes asserting violations of antitrust, securities fraud, unfair competition, and consumer protection laws.

During her career, Teresa represented plaintiffs in a number of antitrust class actions alleging anticompetitive conduct by pharmaceutical companies to delay entry of lower priced generic drugs into the market, including *In re Lidoderm Antitrust Litigation*, MDL No. 2521 (N.D. Cal.)(resulting in the September 2018 final approval of a $104.75 million settlement, a week before jury selection, representing one of the largest recoveries by end-payors in a federal "pay-for-delay" generic suppression case in more than a decade); *In re Aggrenox Antitrust Litigation*, MDL No. 2516 (D. Conn.) (resulting in July 2018 final approval of a $54 million settlement for the end-payor plaintiffs), and In re Lipitor Antitrust Litigation MDL No. 2332 (D.N.J.) (antitrust claims for alleged patent fraud, sham litigation and an anti-competitive reverse payment scheme on behalf of proposed class of indirect purchasers).

She is currently working on In re Generic Pharmaceuticals Pricing Antitrust Litigation, MDL 2724 (ED Pa) (a massive nationwide case alleging that dozens of the world's largest drug makers conspired to raise prices, allocate the market, and prevent competition on commonly used generic drugs); In re Interior Molded Doors Antitrust Litigation, 3:18-cv-00718-JAG (E.D. Va.)and 3:18-cv-00850-JAG (E.D. Va.) (alleging that the two largest producers of interior molded doors entered into an illegal price fixing agreement to control the market for interior doors); and,In re Diisocyanates Antitrust Litigation, MDL No. 2862 (alleging a conspiracy to fix prices for MDI and TDI products, the precursor ingredients for polyurethane foam).

Teresa's prior experience includes some of the most notable antitrust cases in the country, such as In re Target Corporation Customer Data Security Breach Litigation (D. Minn.) (representing consumers against Target Corporation arising from one of the largest payment card security breaches in U.S. history); In re Domestic Drywall Antitrust Litigation (E.D. Pa.) (supply and price-fixing claims against manufacturers of gypsum wallboard); Fond Du Lac Bumper Exchange, Inc., et. al. v. Jui Li Enterprise Company, Ltd., et. al. (E.D. Wis.) (supply and price–fixing claims against manufacturers and distributors of aftermarket automotive sheet metal parts); In re Plasma Derivative Protein Therapies Antitrust Litigation (N.D. Ill.) (supply and price-fixing claims against manufacturers of plasma-derivative protein therapies); In rePolyurethane Foam Antitrust litigation, MDL. No. 2196 (N.D. Ohio) (price-fixing claims on behalf of a class of direct purchasers); Glaberson v. Comcast Corp. (E.D. Pa.) (antitrust claims against cable services provider on behalf of subscribers); and In re AOL Time Warner Securities Litigation (S.D.N.Y) (securities fraud claims on behalf of AOL and Time Warner shareholders, achieving a $2.65 billion recovery for the plaintiff shareholder class).

Prior to Heins Mills and Olson, Teresa was part of the trial team in a large antitrust class action lawsuit against a major software company which settled in 2007 after several months of trial for $180 million.

Teresa graduated magna cum laude from William Mitchell College of Law and is admitted to practice in the state courts of Minnesota, the U.S. District Court for the District of Minnesota, and the United States Court of Appeals for the Eighth Circuit. Teresa has held leadership positions in the Minnesota State Bar Association, Hennepin County Bar Association and American Bar Association.

## Education

- **William Mitchell College of Law, St. Paul, MN., J.D. 1996**
  <u>**Honors**</u>:  Magna Cum Laude

- **University of Minnesota, Minneapolis, MN., B.A. 1992**
  <u>**Honors**</u>:  *Honors Major: Sociology / Criminology*

# Case Results

**Hartley LLP attorneys have achieved successful results in all forms of complex class action litigation.  Below are a select few examples.**

### *In re: Urethane Antitrust Litig.,* **No. 04-md-01616 (D. Kan.)**

Hartley LLP attorneys were appointed Co-Lead Counsel for plaintiffs by the court in this nationwide antitrust MDL case. The complaints asserted a class action on behalf of companies in the United States that purchased the input chemicals to manufacture polyurethane products. Polyurethane is made by the combination of a polyol and an isocyanate. The two major polyols used are polyester polyols and polyether polyols. This first Urethanes class action concerned a conspiracy to fix and raise the prices of polyester polyols manufactured by Crompton/Chemtura, Bayer, Rhein Chemie and Uniroyal Chemical. The case settled for over $33 million.

### *Aftermarket Automotive Lighting Prods. Antitrust Litig.,* **No. 09-ML-2007 (C.D. Cal.)**

Hartley LLP attorneys were the first to file this case behalf of a class of businesses that purchased aftermarket automotive lighting products. Months after the civil antitrust cases were filed, the United States Department of Justice intervened in the case and announced their criminal investigation of Defendants antitrust violations. Hartley LLP attorneys, as court-appointed Lead Counsel, worked in conjunction with the DOJ attorneys to bring the case to a successful resolution. The defendants included Taiwan-based companies and their U.S. subsidiaries that manufactured and sold replacement automotive lighting products such as headlights and taillights to businesses around the country. Hartley LLP attorneys reviewed millions of pages of foreign language documents and took numerous foreign language depositions of defendants.  The case settled weeks before trial was scheduled to commence for over $53 million.

### *Fond du Lac Bumper v. Gordon, et al.,* **No. 09-CV-0852 (E.D. Wis.)**

Hartley LLP attorneys spent months investigating this proprietary case before filing it in 2009. Hartley LLP are court-appointed Lead Counsel on behalf of companies in the U.S. that purchased automotive sheet metal parts, such as hoods, fenders, and panels. The case alleges that each of the defendants, all of which are located in Taiwan, conspired to fix the prices of aftermarket sheet metal products sold in the United States. Defendants implemented their conspiracy in several ways, including routine price fixing agreements, client allocation, and joint tooling agreements in which some Defendants mothballed their tools for making certain parts in order to give production control to a single Defendant, eliminating competition for the tool and setting higher prices for customers. Hartley LLP attorneys recovered more than $30 million in settlements for the Class.

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation,* **No. 05-md-01720 (E.D.N.Y)**

Hartley LLP attorneys are part of the executive committee in this ground-breaking antitrust case, one of the largest in U.S. history. In it, merchants challenged the very structure of the credit card industry, asserting that the setting of interchange fees by credit card associations and banks constitutes illegal price fixing. The case also challenges the credit card associations' ability to constrain merchant choice by not allowing surcharge fees or minimum purchase amounts for credit card use. The parties reached a settlement that was approved for up to $6.26 billion in cash for merchants across the country. The settlement is currently on appeal.

*In re: Capacitors Antitrust Litigation*, **No. 14-cv-03264-JD (N.D. Cal.)**

Hartley LLP represents U.S. purchasers of aluminum and tantalum electrolytic capacitors and film capacitors. Capacitors are a ubiquitous passive components found in virtually every electronic device. They store an electric charge which allowed devices to remember data even when they are powered down. The complaint alleges that the major manufacturers of capacitors conspired to fix the prices of products sold in the United States. The case settled for over $600 million at trial.

*Spangler, et al., v. National College of Technical Instruction, et al.*, **No. 14-cv-03005-DMS-RBB (S.D. Cal.)**

Hartley LLP attorneys were appointed class counsel for a class of students of NCTI, a subsidiary of AMR, one of the country's largest provider of emergency medical responders. Those students alleged that NCTI failed to timely provide the necessary internships as required under the law, misrepresented the duration of instruction before eligibility for licensing as an EMT, and misrepresented the potential for job placement, among many other violations. Even before trial or settlement of the action, Hartley LLP attorneys obtained summary judgment in favor of class members on misrepresentations that NCTI students would receive preferential treatment when seeking jobs with AMR. The case then settled, providing hundreds of thousands of dollars in restitution to students who were delayed in their internships.

*In re: Railway Industry Employee No-Poach Antitrust Litig.*, **No. 18-mc-00798 (W.D. Pa.)**

Hartley LLP represented one of the named plaintiffs pursuing antitrust claims on behalf of employees against Wabtec and Knorr-Bremse. These companies agreed not to solicit, hire, or poach each other's employees in order to keep wages suppressed. These no-poach agreements restricted competition for their workers, which limited workers' access to better job opportunities, restricted their mobility, and deprived them of significant information that they could have used to negotiate for better terms of employment. The case settled in 2020 for nearly $50 million.

*Steve Johnson and Scott Sollitt v. U.S. Bank National Assn.,* **No. 3:19-cv-0286-JLS-LL (S.D. Cal.)**

Hartley LLP represented US Bank loan originators. The complaint alleged that US Bank failed to properly compensate its loan originators, including failing to pay commissions for work done if

11

the employee left US Bank before the loan closed. Judge Sammartino of the Southern District of California granted approval of a settlement of $6.5 million in this class action on behalf of California workers.

### *Johnson v. Harvest Management Sub Trs Corp., et al.*, No. 12-cv-00662 (S.D. Cal.)

Hartley LLP attorneys were co-class counsel on behalf of a class of California managers of retirement communities who alleged that they were not properly paid for overnight shift work. These class members worked in difficult conditions, caring for the sick and elderly, and often had to respond to calls all throughout the night when staying at the facilities, but were not paid for that time. Hartley LLP ultimately obtained a $5.5 million dollar settlement for the class.

### *In re: Bank of America Wage and Hour Employment Practices Litig.*, No. 10-md-02138 (D. Kan.)

Hartley LLP attorneys litigated this case as court-appointed Co-Lead Counsel on behalf of a class of all retail bank tellers, loan officers, and call center employees against one of the largest banks in the nation. Class members alleged that, although the bank required overtime, it enforced standards that caused class members to work off-the-clock. Class members also alleged that the bank failed to properly provide meal and rest breaks, and that call center employees were not properly compensated for pre- and post-shift work activities. Hartley LLP attorneys ultimately obtained a $73 million dollar settlement for the class members.

### *Leiszler, et al. v. Align Technologies,* No. 10-CV-2010 (N.D. Cal.)

Hartley LLP attorneys were Class Counsel for a class of more than 22,000 dentists against the maker of Invisalign for unfair competition in suspending or decertifying dentists who did not prescribe a minimum number of new Invisalign cases. Align Tech unilaterally imposed new restrictions and quota requirements as prerequisites to maintain dentists' certification to prescribe Invisalign after the dentists had already spent thousands of dollars and underwent training to obtain certification. Hartley LLP attorneys obtained a settlement that amounted to a 100% recovery for the class, with a value of more than $50 million in cash and non-cash relief.

### *Alfred T. Giuliano, et al. v. SanDisk Corporation*, No. 10-cv-02787 (N.D. Ca.)

Hartley LLP attorneys were co-lead counsel for a class of purchasers of flash memory products from Sandisk in this "Walker Process" antitrust litigation. Plaintiffs alleged that Sandisk fraudulently obtained its "crown jewel" patents regarding flash technology that it then used to exclude competitors and charge monopoly rents on its customer. The Northern District of California certified the class of purchasers in the nation's first class certification of a Walker Process claim.

### *Moore v. The Geo Group, Inc.*, No. 37-2009-0098066 (Cal. Sup. Ct.)

Hartley LLP attorneys were Class Counsel in a case representing a group of officers working at private correctional facilities who were not properly paid overtime due to an automatic rounding

of their time entries by the facilities' computer systems. The class members ultimately received a confidential settlement which was calculated to be well in excess of the actual time they were owed.

***Zeismer v. Linens-N-Things,*** No. 06-cv-1194 (S.D. Cal.)

Hartley LLP attorneys served as Lead Counsel for this nationwide consumer class action alleging false representation of certain bed sheets. Linens N Things claimed that the thread count of its bed sheets was more than twice what it actually was, according to laboratory tests. The settlement resulted in replacement sheets available to every class member around the country.

***Childers IV, et al. v. The New York and Presbyterian Hospital, et al.***, No. 12-cv-05414 (S.D.N.Y)

Hartley LLP attorneys represented thousands of medical students who conducted their residency at New York Presbyterian Hospital (NYP), one of the largest hospitals in the country. The complaints alleged that from 1995 to 2001 NYP took FICA taxes out of the residents' paychecks, which deductions were improper for students under a retroactive 2010 IRS rule. When NYP residents asked NYP to file refund requests with the IRS, as every other hospital in the country was doing, the residents learned that NYP had negotiated away its right to request a refund or return of the FICA taxes it had taken from residents' paychecks as part of a settlement NYP made with the IRS in an unrelated dispute. Hartley LLP attorneys negotiated a settlement that got each of the residents a significant portion of their FICA taxes back from NYP.

***In Re: Korean Air Lines Co. Ltd. Antitrust Litig.,*** MDL No. 07-01891 (C.D. Cal.)

Hartley LLP attorneys served as plaintiffs' counsel in this nationwide class action against Korean Airlines and Asiana Airlines. The plaintiffs alleged that the airlines conspired to fix flight surcharges to passengers flying to and from the United States, costing the passengers millions of dollars. Settlements were reached with the defendants, totaling $50 million in cash and $36 million in flight vouchers.

***In re: Buspirone Antitrust Litig.***, MDL No. 1410 (S.D.N.Y)

Hartley LLP lawyers represented plaintiffs in this nationwide class action against the manufacturer of the drug Buspar for artificially inflating prices. The case settled for $535 million.

***In re: Relafen Antitrust Litig.***, No. 01-12239-WGY (D. Mass.)

Hartley LLP attorneys represented the world's largest pork producer and only self-insured plaintiff in a nationwide class action against the company manufacturing the drug Relafen for artificially inflating prices. The case settled for $75 million.

***In re: Methionine Antitrust Litig.*** No. 00-1311 (N.D. Cal.)

Hartley LLP attorneys represented the largest plaintiff in a nationwide class action for price fixing an animal feed additive. The case settled for $109 million.

***BLS Pharma, Inc. v. Inovio Pharmaceuticals, Inc. and Genetronics, Inc.,* No. 30-2019-01119045 (Orange County Superior Court)**

Hartley LLP representedBLS Pharma in a breach of contract and misrepresentation case against Inovio (NASDAQ-INO) and Genetronics. The lawsuit allegedthat Inovio refused to honor its obligation to supply needle-free injection components to BLS, which were needed for BLS's development of a testosterone therapy drug-device combination (DDC). BLS's DDC would have permitted patients to administer testosterone in their own homes without the expense, discomfort and infection risk of a needle puncturing the skin. The case was successfully settled on a confidential basis.

# Active Litigation

**Hartley LLP is constantly involved in the prosecution of many forms of complex class action litigation. Below are a few examples of our currently active cases:**

*In re: Diisocyanates Antitrust Litig.,* No. 2:18-mc-01001-DWA (W.D. Pa.)

Hartley LLP was appointed co-lead counsel in this nationwide antitrust price-fixing action. The complaint alleges that the prices of isocyanates MDI and TDI which, when combined with polyols form a polyurethane, were artificially manipulated by their manufacturers. Bayer, BASF, Covestro, Huntsman, Dow, and Mitsui are alleged to have jointly raised prices and engaged in coordinated efforts to close manufacturing plants that limited production and increased prices. The majority of these defendants were previously subpoenaed by the Department of Justice as part of a government investigation into this industry.

*In re: DPP Beef Litigation, No. 20-cv-1319-JRT-HB (D. Minn.)*

Hartley LLP was appointed co-lead counsel in this nationwide antitrust price-fixing case. Direct purchasers of beef from defendants Tyson, JBS, National Beef and Cargill claim those suppliers artificially manipulated the price of this $5 billion market. Defendants are accused of throttling the supply of beef, among other things, in order to raise its prices.

*Menezes v. U.C. San Diego Health*, No. 21-cv-1641-BEN (S.D. Cal.)

Hartley LLP filed the first data breach action against one of the largest health care providers in San Diego for permitting the breach of highly sensitive medical information. Hundreds of thousands of patients' personal identifying information, including health care history was stolen by hackers due to U.C. San Diego Health's failure to take reasonable precautions to protect their patients' data.

***Jessica Robinson, et al. v. Jackson Hewitt, Inc., et al.,*** **No. 2:19-cv-9066- SDW-JRA (D.N.J.)**

Hartley LLP was appointed co-lead counsel in this class action against the tax preparing firm Jackson Hewitt. The complaint alleges an illegal conspiracy among Jackson Hewitt companies not to solicit or poach each other's employees.  The effect of these agreements was to depress employees' wages, restrict their ability to move jobs, and limited their leverage to negotiate better pay.  The damaging effect was emphasized by the fact that these workers had a unique skillset with the Jackson Hewitt model that made defendants natural alternative employers for these workers across more than 6,000 locations. The case is pending in the District of New Jersey

***Turlock v. Merck & Co., Inc.,*** **No. 18-cv-00352 (E.D. Va.)**

Hartley LLP is pursuing claims on behalf of end-payors of the prescription drug ExForge, which is used to treat high blood pressure. The complaint, filed in the Southern District of New York, alleges that Novartis, Par (now part of Endo) conspired to keep a cheaper generic version of ExForge off the market starting in 2012.  Novartis' patent for ExForge expired in 2012, and under the federal Hatch-Waxman Act, Par Pharmaceuticals was poised to introduce a generic version of ExForge in the U.S.. Instead, Par agreed with Novartis to not bring a generic version to market in exchange for over $100 million in cash value from Novartis. The branded drug ExForge sells over $400 million annually in the United States alone, so with generic versions taking 80% or more of a market at an average discount of 50% off the price, buyers of the drug suffered hundreds of millions of dollars in damages, according to the complaint.

***In re: Zetia (Ezetimibe) Antitrust Litig.,*** **No. 18-md-02836 (E.D. Va.)**

Hartley LLP represents the Turlock Irrigation District in this end-payor antitrust action alleging that Merck, Schering-Plough, and Glenmark Pharmaceuticals conspired to keep the generic version of the drug Zetia, used to reduce cholesterol and prevent the buildup of plaque in arteries, off the market and thus keep prices at inflated levels.

***In re: Generic Pharmaceuticals Pricing Antitrust Litigation,*** **No. 16-md-2724-CMR (E.D. Pa.)**

Hartley LLP represents a class of end-payors of dozens of generic drugs in this nationwide price fixing case. The lawsuit alleges a conspiracy to fix the prices of generic drugs, resulting in price increases since March 2011. The Antitrust Division of the U.S. Department of Justice continues a wide-ranging parallel criminal investigation of the same conduct.

***In re: Packaged Seafood Products Antitrust Litig.,*** **No. 15-md-02670 (S.D. Cal.)**

Hartley LLP represents named plaintiff Trepco Inc. in this nationwide price-fixing case. The complaint alleges that the country's largest packaged seafood and canned tuna producers, including Starkist, Chicken of the Sea and Bumble Bee, conspired to artificially raise the prices of packaged seafood products sold in the United States. The case implicates over $10 billion of U.S. commerce, and was the subject of a Department of Justice investigation that has already led to multiple criminal guilty pleas among senior executives of the defendant companies.  Hartley LLP

continues to prosecute the civil action, seeking damages on behalf of purchasers of packaged seafood that overpaid as a result of the unlawful conspiracy.

***Lucy Baker, et al. v. Chaffey Jt. Union High School District,*** **San Bernardino Superior Court Case No. CIVSB2128630**

Hartley LLP represents a putative class of students who were victimized by a teacher at Los Osos High School who placed a hidden camera in the girls locker room bathroom for years. The case alleges negligence on behalf of the Chaffey Joint Union High School District for failure to supervise the teacher, among other claims.

***O'Dell v. Aya Healthcare***, No. **22-cv-01151 (S.D. CA)**

Hartley LLP represents a putative class of travel nurses whose contracts with Aya Healthcare were breached by Aya.  The case alleges that Aya unilaterally reduced nurses' compensation, duration and other key provisions in violation of their contracts with the nurses only after these nurses relocated pursuant to the contracts.

***Robert Platt v. Sodexo,*** No. **22-cv-2211 (C.D. CA)**

Hartley LLP represents former smoker employees of Sodexo who were denied the refund of their health insurance surcharge as smokers after completion of company-sponsored programs to remediate smoking.

***In re Realpage Inc, Rental Software Antitrust Litigation, MDL No. 3071***

Hartley LLP represents tenants victimized by a price-fixing conspiracy between RealPage and its large landlord subscribers. RealPage's proprietary algorithm produced suggested rent increases to its subscribers many of whom were required to, and did in fact, implement the new higher rents as a condition to their subscription.

# EXHIBIT 3



601 Walnut, Suite 300
Kansas City, Missouri 64106
Tel (816) 984-8100
Fax (816) 984-8101

www.PaulLLP.com

---

Rick Paul and Ashlea Schwarz founded Paul LLP after years of litigating high stakes commercial cases together. We have fought against some of the biggest companies in the country, including Syngenta, Monsanto, Corteva, JPMorgan Chase, Phillips 66, and General Motors. And we have won big. We founded the firm on two overriding principles: (1) a strong passion for litigating cases on behalf of our clients; and (2) a desire to make meaningful, industry-wide changes that create reshaped markets and improved lives.

We have recovered nearly three billion dollars for our clients through trial, arbitration, and settlement. We have handled some of the largest cases in the country against the largest, most well-funded and well-represented companies. And, we don't just litigate—we prepare cases for trial and take cases to trial.

***The Work We Do***

Agriculture: The agricultural industry is rapidly consolidating and is launching new biotechnology products every year. Located in the Midwest, we have a deep knowledge of how law and agriculture intersect, including the areas of negligence, chemical-drift, trespass, antitrust, food safety, trade, marketing, and resource management. The agricultural and biotechnology industries are highly regulated with a complex web of state and federal regulations, many of which give rise to preemption issues. Our lawyers have handled a wide variety of cases in this area of the law and are well-versed in the statutory and regulatory issues that arise in litigation related to agriculture in individual, mass, and class actions.

Antitrust: Antitrust laws were enacted to ensure that businesses play by the rules to ensure that a free market prevails. Our lawyers have both prosecuted and defended antitrust actions in the agriculture, technology, and health care industries. We handle both antitrust class actions as well as individual cases. We make sure that companies who engage in unfair business practices are kept in check, allowing other businesses the opportunity to compete in a fair marketplace.



<u>Class Actions:</u> We know how difficult it is for a single person to bring a case against a large corporation or entity. The enormity of this task prevents many people from pursuing legitimate claims, which allows companies to continue with unsafe, unlawful, or unfair practices. These are often pervasive, industry-wide violations. Our attorneys have the skill set necessary to bring about meaningful change through class litigation.

<u>Commercial Litigation</u>: Partnerships within or between businesses often lead to disputes. When partnerships are exploited, or contracts are not followed through on, we help pick up the pieces.

<u>Commodities</u>: Being a Midwest law firm, we know commodities litigation. From grains, farm animals, oil and gas, precious metals, we have handled a broad spectrum of commodities-related litigation. We are familiar with the commodities exchanges, the statutory and regulatory environment, and the jargon of these industries.

<u>Products Liability</u>: We have a breadth of experience in ensuring manufacturers take responsibility for products that cause harm or injury to consumers. Injury and financial harm can result from products with faulty design or improper manufacturing, as well as a company's failure to warn consumers of possible injury or unwanted side effects from use of that product.

***The Results We Have Achieved***

*In re Syngenta MIR162 Corn Litigation* (U.S. District Court, District of Kansas) and *In re Syngenta Litigation* (Minnesota Fourth Judicial District) (appointed to Plaintiffs Executive Committee in both federal and state MDLs; trial counsel for individual bellwethers and Minnesota class leading to $1.51 billion settlement)

*In re Dicamba Herbicides Litigation* (U.S. District Court, Eastern District of Missouri) (appointed to Plaintiffs' Executive Committee and Settlement Committee leading to $400 million settlement)

*In re General Motors Dex-Cool Cases* (Alameda County Superior Court, California; Jackson County Circuit Court, Missouri; Southern District of Illinois, MDL 1562) (appointed Co-Lead Counsel in federal MDL and as Co-Lead Class Counsel in two state courts; obtained one of the largest automotive defect settlements of all time)

*In re Eclipse Aviation Depositor Litigation* (Bernalillo County, New Mexico) (negotiated settlement of approximately $49,000,000 on behalf of purchasers of jet aircraft)

*In re: Air Crash of N51RX* (Santa Fe County, New Mexico) (negotiated complex 8-figure settlement in a 5-death air ambulance crash with multiple defendants and insurance companies)

*Malloy v. Pratt & Whitney* (U.S. District Court, Northern District of Oklahoma) ($2.1 million settlement of product liability claim for defective aircraft engines)



*In re Great Plains Air Lines* (U.S. Bankruptcy Court, Northern District of Oklahoma) (negotiated confidential settlement with officers and directors of defunct regional airline carrier)

*In re Mountain Energy Corp.* (U.S. Bankruptcy Court, Western District of Missouri) (officer/director liability, negotiated 14-party settlement with more than $60 million recovery)

*In re Oak Hills Drilling & Operating Co.* (U.S. Bankruptcy Court, Eastern District of Oklahoma) (obtained judgment after trial for over $1.5 million on behalf of bankruptcy estate)

*Malloy v. Commerce Bank* (District Court of Tulsa County, Oklahoma) (negotiated settlement for claims alleging aiding and abetting breach of fiduciary duty, fraudulent transfers, and civil conspiracy on behalf of bankruptcy estate)



*The Lawyers and Reputation We Enjoy*



### Rick Paul
Partner

Rick specializes in complex antitrust, business, product liability, and consumer litigation—typically involving class or mass actions. Rick graduated from the University of Missouri-Columbia School of Law, where he served as Associate Managing Editor of the Missouri Law Review. After law school, Rick was a judicial law clerk at the Missouri Supreme Court and the Missouri Court of Appeals, Western District. In 1996, he began private practice with the firm formerly known as Shughart Thomson & Kilroy, a large Kansas City law firm with offices in Missouri, Kansas, Colorado, and Arizona. In 2002, the Board of Directors of Shughart Thomson elected him a Shareholder and Director. In 2008, Rick moved his practice to Stueve Siegel Hanson LLP. In May 2013, Rick started Paul LLP.

Rick has recovered nearly $3 billion for his clients through trial or settlement. Rick has been appointed by numerous courts across the country to serve as lead counsel in class and mass actions and in MDL proceedings.

Rick enjoys being in the courtroom and has tried and won many types of cases in jury trials, bench trials, and arbitrations. He has repeatedly been brought into a case shortly before trial for just that purpose. Rick served as trial counsel in the *In re Syngenta Litigation* pending in the Minnesota Fourth Judicial District. Rick was co-lead trial counsel for the first individual bellwether trial as well as the Minnesota class action trial. During the third week of the Minnesota class trial, the litigation was settled on behalf of all farmers (individual and classes) across the country. Rick has also argued more than 40 appeals to various state and federal appellate courts and briefed over 100 appeals.

Rick is active in the local bar, including the Kansas City Metropolitan Bar Association. He has served as Vice-Chair on the Business Torts Committee, where he authored the Chapter on Fiduciary Duties for the Business Torts Handbook. Rick is a frequent speaker and moderator at seminars and presentations on trial-related issues. In 2006, Missouri Lawyers Weekly named Rick as one of eight "Up and Coming Lawyers." He is annually named a "Missouri/Kansas Super Lawyer" and has an AV Preeminent Peer Review Rating with Martindale-Hubbell.



*Court Admissions*

Missouri, 1995
Kansas, 1997
U.S. Supreme Court
U.S. Court of Appeals, 3rd Circuit
U.S. Court of Appeals, 4th Circuit
U.S. Court of Appeals, 5th Circuit
U.S. Court of Appeals, 6th Circuit
U.S. Court of Appeals, 7th Circuit
U.S. Court of Appeals, 8th Circuit

U.S. Court of Appeals, 9th Circuit
U.S. Court of Appeals, 10th Circuit
U.S. Court of Appeals, 11th Circuit
U.S. District Court, District of Colorado
U.S. District Court, District of Kansas
U.S. District Court, Eastern District of Missouri
U.S. District Court, Western District of Missouri
U.S. District Court, Eastern District of Wisconsin

*Education*

University of Missouri-Columbia School of Law, Columbia, Missouri, 1995
J.D., Assistant Managing Editor, Missouri Law Review

University of Missouri, Columbia, Missouri, 1992
B.A., Economics and Political Science, Honors College
*Honors*: MU Varsity Tennis Team, Letter winner; Academic All Big-8





**Ashlea Schwarz**
Managing Partner

Ashlea, Managing Partner of Paul LLP, litigates complex business disputes including claims for negligence, breach of contract, breach of fiduciary duty, fraud, and misrepresentation. She also represents clients in a range of litigation matters including complex, consumer class actions.

Ashlea has represented thousands of clients from the inception of a case through a verdict and litigated nearly 100 mass and class actions. Ashlea has taken 6 cases to trial, including three collective/class actions where she recovered over $5 million collectively for her clients. Her practice is nationwide and traditionally includes multi-party and multi-district litigation.

Ashlea remains involved in the legal community through her work as a former board member for the Kansas City Metropolitan Bar Association and Current Past President of the Kansas City Bar Association's Federal Court Advocates Section, and subcommittee chair for American Women Lawyers. In 2014, she was named one of Missouri Lawyers' Weekly's "Up and Coming Lawyers," an award recognizing litigators under age 40 who demonstrate excellence in the legal profession and in their commitment to their communities. Ashlea continues to be selected yearly as a Kansas City Business Journal Rising Star and is a Missouri/Kansas Super Lawyer. Additionally, in 2022 she was selected to the Missouri Lawyers' Weekly's POWER List of Commercial & Consumer Litigation Attorneys and received their Women's Justice Litigation Practitioner Award.

*Court Admissions*

| | |
|---|---|
| Missouri, 2007 | U.S. District Court, District of Colorado |
| Kansas, 2008 | U.S. District Court, District of Kansas |
| U.S. Court of Appeals, 4th Circuit | U.S. District Court, Western District of Missouri |
| U.S. Court of Appeals, 10th Circuit | |



*Education*

University of Kansas School of Law, Lawrence, Kansas, 2007
J.D., Clerk for Judge Julie Robinson, U.S. District, District of Kansas, 2005-2006

*Honors:* P. Mize Award for Trial Advocacy, Robert F. Bennett Award for Public Service

Kansas State University, Manhattan, Kansas, 2004
B.A. in Journalism and Mass Communications and minors in English and German
*Honors:* Phi Beta Kappa, Phi Kappa Phi, Golden Key, Journalism and Mass Communication Ambassador, K-State Student Foundation Board Member, University Ambassador





**Laura Fellows**
Partner

Laura Fellows focuses her practice on complex business litigation, antitrust litigation, class actions, and mass actions. Laura has represented class and collective action plaintiffs, as well as individual plaintiffs, in litigation throughout the country. Most recently, Laura served as first chair in a trial for an individual business owner that resulted in a jury verdict in her client's favor. She has been named a Super Lawyers' Missouri/Kansas Rising Star yearly since 2015.

During law school, Laura was on the national team for the American Bar Association's Negotiation Competition, reaching the semi-final round of the national competition. Laura also served as president of the Association for Women Law Students. Before law school, Laura attended Missouri State University as a Board of Governor's Scholar and member of the honors college. Also, while at Missouri State, Laura served as the homecoming philanthropy chair, helping establish the "Can-Structure" event to benefit Ozarks Food Harvest. Outside of the office, Laura enjoys fostering dogs through her local animal rescue center.

*Court Admissions*

Missouri, 2013          U.S. Court of Appeals, 5th Circuit
Kansas, 2014           U.S. Court of Appeals, 8th Circuit
Arkansas, 2015         U.S. Court of Appeals, 9th Circuit
                       U.S. Court of Appeals, 10th Circuit
                       U.S. District Court, Western District of Missouri
                       U.S. District Court, District of Kansas
                       U.S. District Court, Eastern District of Arkansas
                       U.S. District Court, Western District of Arkansas

*Education*

University of Missouri Kansas City School of Law, 2013 J.D.
Missouri State University, 2010

B.A. in Communications and minor in German, *Cum Laude* in the Honors College
*Honors:* Board of Governors Scholar





### David Bodenheimer
Associate

David focuses his practice on complex antitrust litigation, class actions, mass torts, pharmaceutical drug and medical device litigation, and medical malpractice. David joined Paul LLP in 2022 after graduating Valedictorian from the University of Missouri-Kansas School of Law. During law school, David was a Research Assistant; worked as a legal research and writing Teaching Assistant; served as Vice-Magister of Phi Delta Phi, an international legal honors society; founded an organization; served on the UMKC Law Review staff; and competed in the Ellison Moot Court Competition, placing second overall. He interned at Copilevitz, Lam & Raney, P.C., a firm specializing in First Amendment law, and Paul LLP. Prior to law school, David participated in Boy Scouts of America and earned the rank of Eagle Scout in 2013.

*Court Admissions*

Missouri, 2022

*Education*

University of Missouri Kansas City School of Law
2022 J.D., Valedictorian, *Summa Cum Laude*

Missouri State University
B.S., Fashion Merchandising & Design, 2019, *Cum Laude*



**<u>Ryan Heffner</u>**
Associate

Ryan focuses his practice on the discovery phase of complex litigation. Ryan joined Paul LLP in 2022 after practicing in the government sector for over five years.

While attending Campbell University, Norman Adrian Wiggins School of Law, Ryan interned with Mayer Brown in Düsseldorf, Germany. Ryan worked on complex international mergers and acquisitions.

Ryan is a native of Cleveland, Ohio. He enjoys spending time with his Golden Retriever, Regan, in his free time.

*Court Admissions*
Virginia, 2016
District of Columbia, 2018
U.S. Court of Appeals, Fourth Circuit, 2019
U.S. Court of Appeals, Federal Circuit, 2019

*Education*
American University, School of Public Affairs
2020 M.A., Public Administration and Policy

Campbell University, Norman Adrian Wiggins School of Law
2016 J.D.

Eckerd College
2013 B.A., Political Science and History





**<u>Sydney Michels</u>**
Associate

Sydney focuses her practice on complex antitrust litigation, class actions, and mass torts. Sydney joined Paul LLP in 2023 after beginning her practice as a staff attorney for Kansas Legal Services.

*Court Admissions*

Washington, 2021
Kansas, 2021

*Education*

Gonzaga University School of Law
2021 J.D.



**<u>Madison Harrell</u>**
Associate

Madison joined Paul LLP in 2023 after graduating *summa cum laude* from the University of Richmond School of Law in 2022 and clerking for the Hon. Mary B. Malveaux in Richmond, Virginia. She is now returning to the Midwest where her family is located and where she attended college at the University of Kansas. Her practice will be focused on complex antitrust litigation, class actions, and mass torts.

*Court Admissions*

Maryland, 2023

*Education*

University of Richmond School of Law
2022 J.D., *summa cum laude*

University of Kansas
B.A., Political Science, 2019

# EXHIBIT 4



**SAN FRANCISCO, CA**

**NEW YORK, NY**

2024

JOSEPH SAVERI
LAW FIRM

**FIRM HISTORY AND BACKGROUND**

The Joseph Saveri Law Firm, LLP is one of the country's most acclaimed and successful boutique firms. It achieves ground-breaking results for plaintiffs in antitrust law, class actions, complex business disputes, securities litigation, consumer protection, intellectual property, and *qui tam*/whistleblower cases, in federal and state courts throughout the United States and across the globe.

**FIRM HISTORY AND BACKGROUND**

JOSEPH SAVERI
L A W   F I R M

The Firm was founded in 2012 by Joseph Saveri. Since then, it has led several groundbreaking and precedent-setting cases. It has served as lead and co-counsel on diverse cases involving: challenges to price-fixing; monopolization; illegal reverse payments; pay-for-delay agreements involving the drugs Cipro, Lidoderm, Restasis, and others; and no-poach agreements restricting hiring and recruiting at major corporations. These cases cover a wide range of industries including pharmaceuticals, high-technology, electronics, banking and financial services, transportation, and sports.

The Firm is widely regarded as one of the nation's leading law firms. It has established a track record leading and prosecuting some of the most significant cases across the United Sates. Its attorneys have recovered over $4.7 billion in settlements and successful resolutions for their clients, and the Firm has received many honors, including:

 ★ **Firm Awards** ★





**AMERICAN ANTITRUST INSTITUTE**

In 2023, the Firm was an honoree for "Outstanding Antitrust Litigation Achievement in Private Law Practice" for its success in *In Re Capacitors Antitrust Litigation*. It was similarly an honoree in 2017 for *In re Cipro Cases I and II* and a finalist in 2015 for *In re High-Tech Employee Antitrust Litigation*. In 2022, partner Christopher Young was recognized for "Outstanding Antitrust Litigation Achievement by a Young Lawyer" for work performed on *In re Capacitors Antitrust Litigation*. The awards are part of the American Antitrust Institute's Antitrust Enforcement Awards, which recognize achievements in antitrust litigation by legal practitioners and economists.

**BENCHMARK LITIGATION**

The Firm has been recognized as one of the best in California in the "competition/antitrust" and "dispute resolution" practice areas. Partner Joseph Saveri has been honored in the same field as a "National Practice Area Star" and "Local Litigation Star."

Benchmark Litigation, based in the United Kingdom, New York City, and Hong Kong, researches and ranks law firms and lawyers based on transactional advice. Research is conducted through extensive interviews with litigators, dispute resolution specialists, and their clients to identify the leading litigators and firms. During these interviews, it examines recent casework handled by law firms and asks individual litigators to provide their professional opinions on peers and practitioners within their jurisdiction or practice area. Each annual research process culminates in the publication of law firm rankings, individual lawyer ratings, and firm editorial content.

**JOSEPH SAVERI**
L A W   F I R M



**Firm Awards** *Con't*





**Joseph Saveri Law Firm, LLP**





## BEST LAWYERS

Since 2013, the Firm has been annually selected for inclusion in *Best Law Firms*, an annual publication by *Best Lawyers*. It is ranked among the top firms in "Antitrust Law," "Litigation—Antitrust," and "Mass Tort Litigation/Class Actions" nationwide and in San Francisco. Firms included in the *Best Law Firms* list are recognized for professional excellence with persistently impressive ratings from clients and peers. Achieving a tiered ranking signals a unique combination of quality law practice and breadth of legal expertise. To be eligible for a ranking, a firm must have a lawyer selected by *Best Lawyers* to *The Best Lawyers in America*, a publication which recognizes the top five percent of practicing attorneys in the United States. Joseph Saveri and Cadio Zirpoli have been meritoriously selected. Christopher Young and David Seidel have been selected as "Ones to Watch."

## CHAMBERS AND PARTNERS

Chambers and Partners has ranked The Firm "Band 1" (highest ranking) in its "Antitrust: Mainly Plaintiff—California" category: currently one of only two firms in California to receive this honor. Chambers has also ranked the Firm as one of the top 16 U.S. firms in its "Antitrust: Mainly Plaintiff-Nationwide" category. In 2021, it shortlisted the Firm as an "Outstanding Firm for Pro Bono" for its Diversity & Inclusion Awards: North America 2021.

Firm partner Joseph Saveri is currently ranked "Band 1" attorneys by Chambers in its "Antitrust: Plaintiff—USA—Nationwide" and "Antitrust: Mainly Plaintiff—California" categories. He has been ranked a "Band 1" attorney in these categories since 2014. Chambers reports him as "smart, fair, and zealous in his advocacy," and as a "great lawyer" who is "hard-working and possesses excellent judgment about how to prosecute antitrust and consumer protection cases."

London-based Chambers ranks law firms and individual lawyers in bands from 1-6, with 1 being the best. The qualities on which rankings are assessed include technical legal ability, client service, commercial vision and business understanding, diligence, value for money (cost-effective staffing and organization), depth of team, professional conduct, and other factors important to clients.

## DAILY JOURNAL (CALIFORNIA)

The Firm has been recognized for its growth and leadership by being selected three times as one of the "Top Boutiques in California," a contest that honors the top 20 boutique law firms in California. In 2022, it also received the prestigious CLAY (California Lawyer Attorneys of the Year) award. Joseph Saveri has likewise received several *Daily Journal* "Top in California" individual awards in various categories. And, in 2023, partner Christopher Young was selected for inclusion in its "Top 40 Under 40 Lawyers" award.

The Daily Journal Corporation, a Los Angeles-based publishing and technology company, features interview-based profiles covering judicial philosophy, representative decisions, and recent cases.

JOSEPH SAVERI
L A W   F I R M

 **Firm Awards** *Con't*











### GLOBAL COMPETITION REVIEW
In 2022, the Firm was shortlisted for two awards by Global Competition Review: Joseph Saveri for "Lawyer of the Year" and *In re Capacitors Antitrust Litigation* for "Litigation of the Year." Also in 2024, in its "GCR 100" survey, GCR selected and featured the Firm as "highly recommended" for its competition practice. Over the past few years, it has praised Mr. Saveri, Ronnie S. Spiegel, and Cadio Zirpoli for taking the reins of a team that "stands out for its diversity." GCR is a leading global provider of competition law, regulation, and enforcement information, combining data, deep market insight, and a user-centric platform to provide their clients with powerful legal solutions. Its unique global coverage gives shape and form to current affairs, providing insight on the direction of trends in competition and how they affect the market.

### LAW360
In 2023, the Firm was selected as one of Law360's Practice Groups of the Year in the competition and class action categories. Joseph Saveri has been selected as a "Titan of the Plaintiffs Bar." Those selected for this award represent the finest work of holding corporations accountable and protecting consumers' rights. Winners are determined by a review and recognition of significant wins scored over the past year, as well as by the awardees' distinguishing qualities and influence in their practice areas. Law360 is a subscription-based daily current awareness tool for attorneys and business leaders at law firms, corporations, and government agencies. It publishes breaking news and analysis

### LAWDRAGON
Joseph Saveri, Ronnie S. Spiegel, Cadio Zirpoli, Christopher Young, and David Seidel have collectively received numerous awards from Lawdragon media company, including selections as "500 Leading Lawyers in America," "500 Leading Plaintiff Financial Lawyers in America," "500 Leading Litigators in America," "500 Leading Plaintiff Consumer Lawyers in America," and "500 X – The Next Generation." These guides, first published in 2007, present Lawdragon's recognition of the best of the U.S. bar. Lawdragon, based in New York City, provides free online news and editorial features—including its well-known guides to the nation's leading lawyers—as well as content, marketing, and branding services for lawyers and firms.

### THE LEGAL 500
From 2019-present, the Firm has been one of the select few nationwide recognized for excellence in the United Kingdom-based research and ranking service's "United States Antitrust Civil Litigation/Class Actions: Plaintiff" category. Its attorneys have also received distinguished commendation. The Legal 500 assesses the strengths of law firms in over 150 jurisdictions. Its rankings are based on feedback from 300,000 clients worldwide, detailed submissions from law firms, interviews with leading private practice lawyers, and a team of researchers with unrivaled experience in the legal market.

### MARTINDALE HUBBELL
Two Firm partners have achieved Martindale Hubbell's highest rating—"AV Preeminent." Joseph Saveri has achieved this ranking since 2008 and Cadio Zirpoli for over a decade. Martindale-Hubbell's Peer Review Ratings are an objective indicator of a lawyer's high ethical standards and professional ability. Attorneys receive Peer Review Ratings based on evaluations by other members of the bar and the judiciary in the United States and Canada.

**JOSEPH SAVERI**
LAW FIRM

 ★ **Firm Awards** *Con't*



**SUPER LAWYERS**

Several of the Firm's attorneys have been recognized by *Super Lawyers*, part of Thomson Reuters, which rates outstanding lawyers from more than 70 practice areas who have attained a high-degree of peer recognition, professional achievement, and excellence. The *Super Lawyers* list recognizes no more than five percent of attorneys in each state. Joseph Saveri is a "Super Lawyer" (2006-present) and among the "Top 100 Northern California Super Lawyers" (2015-2016, 2019-present). Cadio Zirpoli is a "Super Lawyer" (2010, 2014-present) and among the "Top 100 Northern California Super Lawyers" (2018-present). Ronnie S. Spiegel is also a "Super Lawyer" (2023-present). Christopher Young (2021-present) and David Seidel (2023) are "Rising Stars."



**WHO'S WHO LEGAL/GLOBAL COMPETITION REVIEW**

Firm partner Joseph Saveri has been consistently selected as one of the top plaintiff attorneys worldwide in *Who's Who Legal: Competition*, a publication of Who's Who Legal and Global Competition Review. He has been praised as an "extremely effective litigator" who "obtains excellent results in high-profile cases", and who also has the "ability to quickly master facts and counter arguments from opposing counsel and simultaneously adjust his arguments and neutralize their approach." Mr. Saveri has been selected for this honor since 2015. Since 2019, he has been profiled in *Thought Leaders: Competition*, a publication of Who's Who Legal.

Who's Who Legal, a prestigious United Kingdom-based legal ranking service, has identified the foremost legal practitioners and consulting experts in business law based upon comprehensive, independent research. It is dedicated to identifying the world's leading lawyers across multiple practice areas and publishes a series of guides throughout the year. Global Competition Review provides a subscription-based news and resource service (both online and print) and yearly hosts several live events.

JOSEPH SAVERI
LAW FIRM

## $4.7B+

In settlements and resolutions for our clients

## 100+

Combined Years of Civil Litigation Experience

## 23

Court-Appointed Leadership Positions in Cases Nationwide

With 30 years of civil litigation experience, Mr. Saveri has handled cases involving numerous industries, including: banking and financial services, insurance, energy, pharmaceuticals, agricultural products, computer hardware, computer software, manufacturing inputs, travel and transportation, paper products, cosmetics, and consumer electronics. He has established himself as one of the country's top litigators in the antitrust field.

Mr. Saveri has investigated, prosecuted, and successfully resolved numerous antitrust class actions and other complex cases. He has served both as a court-appointed leader of such efforts and as a valued member of the teams operating under the leadership of others. As lead or co-lead counsel in many of these cases, he has taken a personal leadership role in organizing litigation, setting strategy, establishing and directing teams of lawyers, and assigning specific tasks to teams of attorneys in a way that ensures the efficient use of resources and maximizes the talents of the litigation team. Throughout these cases, he has displayed the energy, vision, and commitment that leadership requires, combined with the ability to listen, share, and work cooperatively so that the litigation team operates equitably, efficiently, and without friction.

Mr. Saveri and the Firm serve or have served as lead counsel in many high-profile cases, including most recently *Capacitors, Titanium Dioxide, High-Tech Employees,* and California's *Cipro* litigation. Overall, the Firm's attorneys are accomplished and successful in all phases of litigation and have been awarded by the American Antitrust Institute, Chambers and Partners, Martindale Hubbell, The Legal 500, Benchmark Litigation, Who's Who Legal, *Super Lawyers*, and many other organizations for their distinguished leadership. They lecture and write on many topics, are actively involved in numerous legal organizations, and are multi-lingual and from diverse backgrounds.

The Firm has a strong commitment to pro bono representation. It frequently works with the Northern District of California's Federal Pro Bono Project, which operates in conjunction with the Bar Association of San Francisco's Justice and Diversity Center. The JDC provides pro bono services to underserved San Francisco residents and communities, and the organizations that serve them. Many Firm attorneys participate in this project and have received Court praise for their successful results achieved for their clients.

JOSEPH SAVERI
LAW FIRM

**CASE PROFILES**

The Firm has been a successful leader in cases covering antitrust, class actions, complex business disputes, generative artificial intelligence, consumer protection, and other practice areas, on behalf of national and international consumers, purchasers, employees, and creators across diverse industries.

CASE PROFILES

JOSEPH SAVERI
LAW FIRM

The Firm handles antitrust cases, class actions, and complex litigation in federal and state courts throughout the United States. Prominent past and current cases in which the Firm or Mr. Saveri serves or has served include:



### IN RE CAPACITORS ANTITRUST LITIGATION
**No. 3:14-cv-03264-JD, 3:17-md-02801-JD (N.D. Cal.)**

The Firm is **sole Lead Counsel** for a class of direct purchasers of capacitors used in electronic devices. Plaintiffs allege that defendants—over twenty corporations and corporate families—formed a cartel and conspired to fix, raise, and stabilize prices in the multi-billion-dollar market for aluminum, tantalum, and film capacitors. The Firm represents the class as plaintiffs in a civil class action. **Settlements totaling $604.55 million were reached over a five-year period**, $165 million of which occurred during a December 2021 trial against the case's remaining defendants and received final Court approval in 2023. **This settlement amount exceeded calculated single damages of $427 million: a competition law rarity.** In the criminal case, **eight capacitors manufacturers and two individual executives have pleaded guilty and been sentenced** for violating federal antitrust laws.



### IN RE CIPRO CASES I AND II
**J.C.C.P. Nos. 4154, 4220 (San Diego County Sup. Ct.)**

The Firm is **Co-Lead Counsel** for consumers who purchased Cipro, a blockbuster antibiotic drug. Plaintiffs alleged that Bayer Corporation, Barr Laboratories, two other generic drug companies, and other defendants entered into an unlawful agreement to keep a generic version of the drug off the market, which allowed Bayer to sell Cipro at inflated prices. In 2013, the California Superior Court for the County of San Diego approved a **$74 million class action settlement** between Bayer and the class. In 2015, the California Supreme Court reversed the judgment of the Court of Appeal and remanded the case for further proceedings. In that decision, the California Supreme Court ruled in plaintiffs' favor and adopted a "structured" rule of reason as the standard for adjudicating reverse payment antitrust cases. Following remand to the Superior Court, plaintiffs reached a **$100 million settlement** agreement with defendants Hoechst Marion Roussel, The Rugby Group, Inc., and Watson Pharmaceuticals, which the Court approved in 2016. In 2017, on the eve of trial, plaintiffs **settled with** Barr, the sole remaining defendant, **for $225 million**, bringing the **total class recovery to $399 million: a record for this type of case**.

**CASE PROFILES**

JOSEPH SAVERI
LAW FIRM



### IN RE HIGH-TECH EMPLOYEES ANTITRUST LITIGATION
No. 5:11-cv-02509-LHK (N.D. Cal.)

The Firm served as **Co-Lead Class Counsel** for a certified class of over 64,000 employees of leading technology companies against their employers for their alleged agreements to restrict recruiting to suppress wages. In this highly publicized case, defendants Google Inc., Apple Inc., Adobe Systems Inc., and Intel Corporation agreed in 2015 to **$415 million in settlements**. Prior to that, Intuit Inc., Lucasfilm, Ltd., and Pixar agreed to **separate settlements totaling $20 million**. The suit, brought by former employees of the companies involved, exposed the practice by major tech industry players which allegedly collaborated to not poach each other's employees. The plaintiff employees argued that such no-poach agreements limited their ability to obtain career advancement and restricted their attempts to earn higher salaries. This ground-breaking, landmark case serves as the standard and reference point for virtually all other litigated no-poach cases.



### IN RE TITANIUM DIOXIDE ANTITRUST LITIGATION
No. 1:10-cv-00318-RDB (D. Md.)

The Firm served as **Co-Lead Counsel** to a class of direct purchasers of titanium dioxide who alleged that several primary suppliers engaged in an unlawful conspiracy to raise, maintain, or stabilize prices for titanium dioxide in the United States. The Court certified the class. Plaintiffs prepared for trial and achieved a settlement with the final defendant on the last business day before trial. In 2013, a **$163.5 million settlement** was finalized**.**



### IN RE RESTASIS (CYCLOSPORINE OPHTHALMIC EMULSION) ANTITRUST LITIGATION
No. 1:18-md-02819-NG-LB (E.D.N.Y.)

The Firm is **Co-Lead Counsel** for end-payor plaintiffs in an antitrust class action filed against Allergan, Inc. for an alleged scheme to delay generic competition to Allergan's blockbuster Restasis drug (used primarily for the treatment of chronic dry eyes). The Firm filed suit on behalf of its client and named class representative, the Self-Insured Schools of California, a Joint Powers Authority providing health benefits to over 300,000 public school district employees and their family members. Plaintiffs allege that Allergan unlawfully extended its monopoly in the market for Restasis through a series of fraudulent and anticompetitive acts. Class certification was been granted. In 2021, the parties reached an agreement on a **$30 million settlement, which received the Court's final approval in 2022**.

JOSEPH SAVERI
LAW FIRM



### IN RE LIDODERM ANTITRUST LITIGATION
#### No. 3:14-md-02521-WHO (N.D. Cal.)

The Firm served as end-payors' **Liaison Counsel** in a class action lawsuit brought by indirect purchasers of Lidoderm against Endo Pharmaceuticals, Teikoku, and Actavis Inc. Plaintiffs claimed that defendants entered into an illegal reverse payment agreement in which Endo provided nearly $100 million worth of branded Lidoderm and additional consideration to Actavis to keep generic lidocaine patches off the market. Plaintiffs alleged that the agreement delayed generic competition and caused plaintiffs to pay higher prices. In 2017, the Court granted plaintiffs' motion to certify a class of Lidoderm end-payors. The **case settled** in early 2018, shortly before trial**, for $105 million.**



### MEIJER V. ABBOTT LABORATORIES
#### Nos. 4:07-cv-5470, 4:07-cv-5702, 4:07-cv-5985 (N.D. Cal.)

Mr. Saveri served as **Liaison Counsel** on behalf of the class of direct purchaser plaintiffs in the Norvir Antitrust Litigation. The case involved claims under Section One and Section Two of the Sherman Act in connection with the sale, marketing, and pricing of the bundled drugs Norvir and Kaletra by Abbott Laboratories. Mr. Saveri participated in all phases of the litigation, including trial. Among other highlights, his work during jury selection of the case resulted in the landmark decision by the Ninth Circuit Court of Appeals in *SmithKline Beecham Corp. v. Abbott Laboratories*, 740 F.3d 471 (9th Cir. 2014), confirming that equal protection prohibits discrimination based on sexual orientation in jury selection and that the Supreme Court's decision in *Batson v. Kentucky*, 476 U.S. 79 (1986), applies in civil cases. Following jury selection, the direct purchasers **settled their claims in full for $52 million**.



### CUNG LE V. ZUFFA, LLC
#### No. 2:15-cv-01045-RFB-BNW (D. Nev.)

The Firm is **Co-Lead Counsel** for professional mixed martial arts (MMA) fighters in a class action against MMA promoter Ultimate Fighting Championship (UFC) and its parent company, Zuffa LLC, involving up to $5 billion in alleged damages. Plaintiffs allege that UFC illegally acquired and maintained monopoly power in the market for promoting Professional MMA Bouts and monopsony power in the market for Professional MMA Fighters' Services and used that monopoly and monopsony power to suppress compensation for MMA fighters who fought for the UFC. In 2023, the Court granted class certification. **In March 2024, a settlement was reached resolving all claims in exchange for payment of $335 million and certain changes in business practices in the future.**

**CASE PROFILES**                                    JOSEPH SAVERI
                                                     LAW FIRM



### IN RE EPIPEN MARKETING, SALES PRACTICES, AND ANTITRUST LITIGATION
**No. 17-md-02785-DDC-TJJ (D. Kan)**

The Firm is on the **Plaintiffs' Steering Committee** in this multidistrict litigation case alleging that Mylan, Pfizer, and their related companies engaged in federal and state antitrust violations, RICO violations, and violations of state consumer protection laws with regard to the EpiPen autoinjector drug device. Defendants raised their prices by hundreds of percent and forced consumers to buy two EpiPens at a time instead of one in order to maximize their profits. The Court has denied most claims of defendants' motions to dismiss. Class certification was granted in 2020. In 2021, the Court granted final approval of a **$345 million settlement** with Pfizer. In 2022, the Court granted final approval of a **$264 million settlement** with Mylan (now Viatris Inc.).



### HUNTER V. BOOZ ALLEN HAMILTON, INC.
**No. 2:19-cv-00411 (S.D. Ohio)**

The Firm serves in a class action alleging defendants Booz Allen Hamilton, Inc., Mission Essential Personnel, LLC, CACI International Inc., CACI Technologies LLC, and CACI Technologies Inc. agreed not to hire one another's skilled professionals working at the Joint Intelligence Operations Center Europe Analytic Center in Molesworth, England (JAC). The firm represents former Mission Essential employees who allege these illegal agreements violated U.S. antitrust law by suppressing compensation and imposing unlawful restrictions on employee mobility for skilled professionals working at JAC. After more than three years of intensive litigation, plaintiffs reached **settlement agreements in September 2021 and September 2022 with defendants worth up to $5.275 million**. In December 2022, the Court granted preliminary settlement approval and appointed the firm **Settlement Class Counsel. In May 2023, the Court granted final settlement approval.**



### IN RE: XYREM (SODIUM OXYBATE) ANTITRUST LITIGATION
**No. 5:20-MD-02966-LHK (N.D. Cal.)**

The Firm represents plaintiff, purchaser Self-Insured Schools of California, in a multi-district litigation antitrust suit in which it serves on the **Plaintiffs' Steering Committee**. Plaintiff and a potential class of other purchasers are insurers, health and welfare plans, and consumers seeking relief from indirectly paying for and/or providing reimbursement for purchases of Xyrem (an oral narcolepsy drug) at supra-competitive prices. Facing the impact of competitive market forces, defendant Jazz (Xyrem manufacturer) allegedly turned to an anticompetitive scheme to delay generic entry and maintain its monopoly. Plaintiffs seek class certification, damages, and other injunctive and equitable relief. In 2021, the Court largely refused Jazz's motion to dismiss.

JOSEPH SAVERI
LAW FIRM



### JONES V. VARSITY BRANDS
**No. 2:20-cv-02892 (W.D. Tenn.)**

The Firm represents a class of competitive cheer families against Varsity Brands, LLC; Varsity Spirit, LLC; Varsity Spirit Fashion & Supplies, LLC; U.S. All Star Federation, Inc.; and other co-conspirators. Plaintiffs allege defendants have abused Varsity's market power to raise, fix, and stabilize the prices charged and associated with competitive cheer. As a result, cheer athletes, together with their parents, friends, and families, have been overcharged by the defendants, who have obtained millions of dollars in supracompetitive illegal profits. In August 2022, the Court denied most of defendants' motions to dismiss.



### IN RE OPANA ER ANTITRUST LITIGATION
**No. 1:14-cv-10150 (N.D. Ill.)**

The Firm represents plaintiffs in a proposed class action brought by indirect purchasers against brand and generic manufacturers of Opana ER. Plaintiffs allege that defendants Endo Pharmaceuticals Inc. and Impax Laboratories entered an illegal pay-for-delay or reverse payment agreement whereby Endo provided Impax over $100 million in cash, as well as other valuable consideration, in exchange for Impax's promise to keep generic versions of Opana ER off the market. Plaintiffs allege that this prevented generic competition and resulted in higher prices. In 2021, the Court granted class certification to direct purchaser plaintiffs and end-payor plaintiffs.



### GIORDANO V. SAKS INCORPORATED
**No. 1:20-cv-00833-MKB-CLP (E.D.N.Y.)**

The Firm is **Interim Co-Lead Class Counsel** in a no-poach class action, alleging that defendants Saks Incorporated; Saks & Company LLC; Saks Fifth Avenue LLC; Louis Vuitton USA Inc.; Fendi North America, Inc.; Loro Piana & C. Inc.; Gucci America, Inc.; Prada USA Corp.; and Brunello Cucinelli, USA, Inc. agreed not to hire one another's luxury retail employees. Plaintiffs are former sales professionals who sought employment opportunities with other defendants. Plaintiffs allege the illegal agreements restrain competition for luxury retail employees working for defendants. Plaintiffs seek damages and injunctive relief.

**CASE PROFILES**

JOSEPH SAVERI
LAW FIRM



### JESSICA ROBINSON V. JACKSON HEWITT, INC. AND TAX SERVICES OF AMERICA, INC.
**No. 2:19-cv-9066 (D. N.J.)**

The Firm is **Interim Co-Lead Counsel** for plaintiffs in an antitrust class action against defendants Jackson Hewitt, Inc. and Tax Services of America, Inc. Plaintiffs are individuals who work or have worked for Jackson Hewitt, a tax preparation services provider and franchisor, and for franchise locations of Jackson Hewitt. From approximately January 2000 through December 2018, defendants and other co-conspirators agreed not to compete for employees and potential employees, including agreements not to solicit, recruit, or hire without prior approval each other's personnel. Plaintiffs seek injunctive relief and recovery of damages arising from defendants' violations of Section 1 of the Sherman Act.



### IN RE JANUARY 2021 SHORT SQUEEZE TRADING LITIGATION
**No. 3:21-cv-00781 (N.D. Cal.), No. 1:21-md—02989-ALTONAGA/Torres (S.D. Fla.)**

The Firm is **Plaintiffs' Co-Lead Counsel** in a suit on behalf of a proposed class of retail investors against Robinhood Markets, Inc. and various brokerages, investment funds, and other co-conspirators who allegedly entered into an illegal scheme designed to shield themselves from massive industry losses they had incurred due to their highly speculative short selling strategies. Plaintiffs allege that they and other retail investors continue to be injured due to a large, overarching conspiracy among defendants to stop them from buying stocks in open and fair public securities markets. Plaintiffs seek damages recovery and injunctive relief. The Firm is Co-Lead Counsel in the antitrust tranche (group) of claims.



### DEMARTINI V. MICROSOFT CORPORATION
**No. 3:22-cv-08991 (N.D. Cal.)**

In January 2022, Microsoft announced plans to acquire Activision Blizzard, Inc., their significant competitor in the video game development, publishing, and distribution markets. If allowed to proceed, this acquisition would stifle market competition, thereby reducing consumer choice, lowering quality and output, increasing prices, and preventing future competition within the video game industry. The Firm and co-counsel have filed suit on behalf of plaintiffs who would be adversely affected by reduced competition in the video game industry as a consequence of the merger. The lawsuit seeks injunctive relief to prohibit the acquisition as a violation of Section 7 of the Clayton Antitrust Act (15 U.S.C. § 18) and to protect consumers from unlawful concentration of power within the video game industry.

CASE PROFILES

JOSEPH SAVERI
L A W   F I R M



## ANDERSEN V. STABILITY AI LTD.
No. 3:23-cv-00201 (N.D. Cal.)

Defendants Stability AI Ltd.; Stability AI, Inc.; Midjourney, Inc.; and DeviantArt, Inc. have created Stable Diffusion and other products that infringe the rights of artists and other creative individuals under the guise of alleged "artificial intelligence." The Firm and co-counsel represent a class of plaintiffs seeking compensation for damages caused by defendants and an injunction to prevent future harm. The lawsuit alleges direct copyright infringement, vicarious copyright infringement related to forgeries, violations of the Digital Millennium Copyright Act, violation of class members' rights of publicity, breach of contract related to the DeviantArt Terms of Service, and various violations of California's unfair competition laws. If Stable Diffusion and similar products are allowed to continue to operate as they do now, the foreseeable result is they will replace the very artists whose stolen works power these AI products with whom they are competing. The suit seeks to ensure that these products follow the same rules as any other new technology that involves the use of massive amounts of intellectual property. The Firm has also filed similar suits against OpenAI, Inc. using copyrighted works to train ChatGPT and Meta Platforms, Inc. to train LLaMA.



## J. DOE 1 AND J. DOE 2 V. GITHUB, INC.
## J. DOE 3 AND J. DOE 4 V. GITHUB, INC.
Nos. 3:22-cv-06823, 3:22-cv-07074 (N.D. Cal.)

GitHub Copilot, an AI-based coding product made by GitHub in cooperation with OpenAI, appears to profit from the work of open-source programmers by violating the conditions of their open-source licenses. The Firm has filed a class-action lawsuit against GitHub Copilot, its parent, Microsoft, and its AI-technology partner, OpenAI, on behalf of open-source programmers for these potential violations of open-source licenses. This case represents the first major step in the battle against intellectual-property violations in the tech industry arising from artificial-intelligence systems. The suit seeks injunctive relief, statutory damages, and pre-judgment and post-judgment interest. In May 2023, the Court denied defendants' motion to dismiss as to plaintiffs' most important claims: the first time a federal district court analyzed and ruled on these subjects.

JOSEPH SAVERI
LAW FIRM



## IN RE DENTAL SUPPLIES ANTITRUST LITIGATION
### No. 1:16-cv-00696-BMC-GRB (E.D.N.Y.)

The Firm served as a **member of the Plaintiffs' Executive Committee** in a class action of direct purchasers against the primary dental product distributors in the United States. Plaintiffs allege that Patterson Companies, Inc., Henry Schein, Inc., and Benco Dental Supply Company illegally boycotted competitor dental product distributors to maintain and extend their dominant position in the market for dental supplies and equipment. As a result, plaintiffs (and similarly situated dental practices) paid inflated prices for important dental products, including imaging devices, dental chairs, high-tech equipment, sterilization products, and other related materials. **Final judgment and a Court order granting an $80 million settlement** were reached in 2019.



## IN RE GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION
### No. 2:16-md-02724-CMR (E.D. Pa.)

The Firm is on the **Plaintiffs' Steering Committee** for end-payor plaintiffs and its client, the Self-Insured Schools of California, and similarly situated U.S. consumers and insurers, against dozens of generic drug manufacturers in this broad multidistrict litigation. The antitrust suit charges the defendants with conspiring to fix and raise prices for over 30 different generic pharmaceutical drugs, forcing consumers to pay inflated prices for medication to treat a wide variety of illnesses and diseases. In 2019, the Court denied defendants' joint motion to dismiss plaintiffs' overarching conspiracy claims. In 2020, the Court selected two bellwether cases for the private plaintiffs, including the Firm's end-payor plaintiff clients, concerning the drugs Clobetasol and Clomipramine. In 2022, the Court denied most of defendants' efforts to dismiss claims.

**JOSEPH SAVERI**
LAW FIRM



### IN RE OUTPATIENT MEDICAL CENTER EMPLOYEE ANTITRUST LITIGATION
**No. 21-cv-00305 (N.D. Ill.)**

As **Interim Co-Lead Counsel**, the Firm represents a potential class of senior-level employees in an antitrust suit filed against defendants Surgical Care Affiliates, LLC; United Health Group; United Surgical Partners Holding Company, Inc.; Tenet Healthcare Corporation; DaVita, Inc.; and other co-conspirators. Plaintiffs allege defendants entered into no-poach agreements not to compete for employees in the United States. These agreements allegedly accomplished their purpose by reducing competition for defendants' employees and suppressing defendants' employees' compensation below competitive levels. They also denied their employees' access to job opportunities, restricted their mobility, and deprived them of significant information that they could have used to negotiate for better compensation and employment terms. Plaintiffs seek damages recovery and injunctive relief to prevent defendants from retaining the benefits of their alleged antitrust violations. On September 26, 2022, the Court rejected a joint motion to dismiss filed by defendants DaVita Inc., Surgical Care Affiliates LLC, and Tenet Healthcare Corp. and its subsidiaries, and dismissed UnitedHealth Group from the litigation.



### IN RE JUUL LABS, INC. ANTITRUST LITIGATION
**3:20-cv-02345-WHO (N.D. Cal.)**

The Firm is **Interim Lead Counsel** for direct purchaser plaintiffs in e-cigarette antitrust lawsuits against Altria Group, Inc. (Altria) and Juul Labs, Inc. (JLI) on behalf of individuals and businesses who purchased JUUL e-cigarette devices directly from JLI. Plaintiffs and the class seek damages recovery for violations of the Sherman and Clayton Acts. The e-cigarette antitrust claims stem from an allegedly anticompetitive agreement between Altria and JLI, whereby Altria agreed to acquire an ownership interest in JLI in exchange for over $12 billion. Altria also allegedly agreed not to compete with JLI and to provide JLI valuable retail shelf space in the e-cigarette market. Through this agreement, JLI was able to maintain its dominance in the e-cigarette market and earn monopoly profits. Altria then shared these profits through its ownership stake in JLI.



### FOND DU LAC BUMPER EXCHANGE INC. V. JUI LI ENTERPRISE COMPANY LTD.
**No. 2:09-cv-00852-LA (E.D. Wisc.)**

The Firm represents a class of auto parts distributors who allege that Taiwanese manufacturers of aftermarket sheet metal auto parts colluded to artificially raise prices and eliminate competition. The Court granted final approval to **settlements by two defendants totaling $25 million** and granted plaintiffs' motion for class certification.

**CASE PROFILES**

JOSEPH SAVERI
L A W   F I R M



### MICROSOFT PRIVATE ANTITRUST LITIGATION

Representing businesses and consumers, Mr. Saveri prosecuted multiple private antitrust cases against Microsoft Corporation in state courts across the country, including Florida, New York, North Carolina, and Tennessee. Plaintiffs alleged that Microsoft engaged in anticompetitive conduct and/or violated state deceptive and unfair business practices statutes to harm competition and monopolize the markets for Intel-compatible, personal computer operating system software, as well as word processing and spreadsheet software. In 2006, the New York Supreme Court granted final approval to a **settlement that made available up to $350 million in benefits** for New York businesses and consumers. In 2004, the Court in the North Carolina action granted final approval to a **settlement valued at over $89 million**, and the Court in the Tennessee action granted final approval to a **$64 million settlement**. In 2003, in the Florida Microsoft litigation, the Court granted final approval to a **$202 million settlement**, one of the largest antitrust settlements in Florida history. Mr. Saveri served as **Co-Lead Counsel** in the New York, North Carolina, and Tennessee cases, and held leadership roles in the Florida case.



### IN RE LUPRON MARKETING AND SALES PRACTICES LITIGATION
**MDL No. 1430 (D. Mass.)**

In 2005, the Court approved a **settlement** of a class action brought by patients, insurance companies, and health and welfare benefit plans that paid for Lupron, a prescription drug used to treat prostate cancer, endometriosis, and precocious puberty. The **settlement requires the defendants** Abbott Laboratories, Takeda Pharmaceutical Company Limited, and TAP Pharmaceuticals **to pay $150 million** to persons or entities that paid for Lupron from January 1, 1985, through March 31, 2005. Plaintiffs charged that the defendants conspired to overstate the drug's average wholesale price, which resulted in plaintiffs paying more for Lupron than they should have paid. Mr. Saveri served as **Co-Lead Plaintiffs' Counsel**.



### IN RE BUSPIRONE ANTITRUST LITIGATION
**MDL No. 1413 (S.D.N.Y.)**

In 2003, Mr. Saveri obtained a **$90 million cash settlement** for individual consumers, consumer organizations, and third-party payors that purchased BuSpar, a drug prescribed to alleviate symptoms of anxiety. Plaintiffs alleged that Bristol-Myers Squibb Co. (BMS), Danbury Pharmacal, Inc., Watson Pharmaceuticals, Inc., and Watson Pharma, Inc. entered into an unlawful agreement in restraint of trade under which BMS paid a potential generic manufacturer of BuSpar to drop its challenge to BMS's patent and refrain from entering the market.

JOSEPH SAVERI
LAW FIRM



## CALIFORNIA VITAMIN CASES
### J.C.C.P. No. 4076 (San Francisco County Sup. Ct.)

Mr. Saveri served as **Co-Liaison Counsel and Co-Chairman of the Plaintiffs' Executive Committee** on behalf of a class of California indirect vitamin purchasers (in every level of the chain of distribution) against vitamin manufacturers alleged to have engaged in price fixing of particular vitamins. In 2002, the Court granted final approval of a **$96 million settlement** with certain vitamin manufacturers. In 2006, the Court granted final approval to over **$8.8 million in additional settlements**.



## PHARMACEUTICAL CASES I, II, AND III
### J.C.C.P. Nos. 2969, 2971, and 2972 (San Francisco County Sup. Ct.)

Mr. Saveri served as **Co-Lead and Co-Liaison Counsel** representing a certified class of indirect purchasers (consumers) on claims against the major pharmaceutical manufacturers for violations of the Cartwright Act and the Unfair Competition Act. The class alleged that defendants unlawfully fixed discriminatory prices on prescription drugs to retail pharmacists in comparison with the prices charged to certain favored purchasers, including HMOs and mail order houses. In 1999, the Court approved a **settlement providing $148 million in free, brand-name prescription drugs** to health agencies that serve California's poor and uninsured. In 2001, the Court approved a **settlement** with the remaining defendants in the case, which provided **an additional $23 million in free, brand-name prescription drugs** to these agencies.



## IN RE BRAND NAME PRESCRIPTION DRUGS
### MDL No. 997 (N.D. Ill.)

Mr. Saveri served as **Class Counsel** for a class of tens of thousands of retail pharmacies against the leading pharmaceutical manufacturers and wholesalers of brand name prescription drugs for alleged price-fixing from 1989 to 1995 in violation of the federal antitrust laws. Class plaintiffs charged that defendants engaged in price discrimination against retail pharmacies by denying those discounts provided to hospitals, health maintenance organizations, and nursing homes. In 1996 and 1998, the Court approved **settlements** with certain manufacturers **totaling $723 million**.



## IN RE TRAVEL AGENCY COMMISSION ANTITRUST LITIGATION
### MDL No. 1058 (D. Minn.)

Mr. Saveri served as **Co-Lead Counsel** for a certified class of U.S. travel agents on claims against the major U.S. air carriers, who allegedly violated the federal antitrust laws by fixing the commissions paid to travel agents. In 1997, the Court approved an **$82 million settlement.**



## Judicial Praise for the
## Joseph Saveri Law Firm, LLP

JOSEPH SAVERI
LAW FIRM



"Through my extensive observations of counsel, I am assured that they are well qualified to litigate this class action…. I have no hesitation that these lawyers will 'fairly and adequately represent the interests of the class.'"

**JUDGE NINA GERSHON,**
*In Re Restasis (Cyclosporine Opthalmic Emulsion) Antitrust Litigation,*
**Master File No. 1:17-cv-06684-NG-LB (E.D.N.Y.)**



"The MDL litigation has been hard-fought by both sides, and required an enormous amount of work to collect evidence in the United States and several overseas countries, bring and defend complex motions, and prepare a sprawling case for a jury trial. Class Counsel prosecuted the case with skill and vigor, and achieved strongly positive results. The Court also appreciated the professionalism and spirit of cooperation that Class Counsel brought to the proceedings."

**JUDGE JAMES DONATO,**
*In re Capacitors Antitrust Litigation*, **Master File No. 3:14-cv-03264-JD (N.D. Cal.)**



"Direct Purchaser Plaintiffs' Counsel vigorously and effectively pursued the Direct Purchasers' claims. These efforts included factual investigation, drafting complaints, briefing and arguing motions to dismiss and for summary judgment, reviewing and analyzing documents, interviewing witnesses and taking dozens of depositions in the United States and abroad, negotiating the terms of the settlements, and preparing the settlement documents."

**JUDGE MARIANNE O. BATTANI,**
*In re Automotive Parts Antitrust Litigation/In re Wire Harness Cases,* **Master File No. 12-md-02311 (E.D. Mich.)**



**JUDICIAL PRAISE**



The Joseph Saveri Law Firm invested a great deal of time and effort to investigate and develop the potential claims in this action, and it filed the first complaint in this case as a result. . . . The Joseph Saveri Law Firm also has the support of many of the plaintiffs' counsel, which the Court does find to be a significant factor in the Saveri Firm's favor [for appointment to Interim Lead Class Counsel]."

**JUDGE JAMES DONATO,**
*In re Capacitors Antitrust Litigation,* **Master File No. 3:14-cv-03264-JD (N.D. Cal.)**



As noted by the plaintiffs: 'Since their initial appointment, [the Joseph Saveri Law Firm and other interim co-lead and liaison counsel, and the Plaintiffs' Executive Committee] . . . have devoted substantial time and resources in this case, including complex legal matters on a variety of motions, case management, discovery planning, and extensive meetings and conferrals with defendants regarding ongoing discovery. Moreover, proposed Class Counsel have demonstrated their extensive experience and expertise prosecuting antitrust, class action, and complex civil litigation cases and have successfully litigated antitrust class actions and other similar cases in courts throughout the United States.' Defendants do not object or disagree with the plaintiffs' characterization of their representation. This Court has reviewed the [Federal Rules of Civil Procedure] Rule 23(g)(1) requirements, and concludes that plaintiffs' proposed co-lead counsel are well qualified to represent the class in this case."

**JUDGE RICHARD D. BENNETT,**
*In re Titanium Dioxide Antitrust Litigation,* **Civil Action No. RDB –10–0318, 284 F.R.D. 328 (D. Md. 2012), amended, 962 F. Supp. 2d 840 (D. Md.)**

JOSEPH SAVERI
L A W   F I R M

**OUR TEAM**

The Firm's attorneys are well-regarded for their integrity, experience, and success in all phases of litigation. They have received multiple awards from the American Antitrust Institute, Chambers and Partners, Martindale Hubbell, The Legal 500, Who's Who Legal, Lawdragon, and *Super Lawyers*. Partners Joseph Saveri, Ronnie S. Spiegel, and Cadio Zirpoli are recognized as three of the country's top lawyers and leaders in federal antitrust and class action litigation.

**JOSEPH SAVERI**
LAW FIRM

# Joseph R. Saveri



**PRACTICE AREAS**
Antitrust
Class Action
Complex Business Disputes
Commercial Litigation
Intellectual Property
*Qui Tam* and Whistleblower

**ADMISSIONS**
State of California
US Supreme Court
US Court of Appeals – Federal Circuit
US Court of Appeals – First Circuit
US Court of Appeals – Second Circuit
US Court of Appeals – Fourth Circuit
US Court of Appeals – Fifth Circuit
US Court of Appeals – Seventh Circuit
US Court of Appeals – Eighth Circuit
US Court of Appeals – Ninth Circuit
US Court of Appeals – Eleventh Circuit
US District Court – Central District of California
US District Court – Eastern District of California
US District Court – Northern District of California
US District Court – Southern District of California
US District Court – Northern District of Illinois
US District Court – Eastern District of Michigan
US District Court – Eastern District of Wisconsin

**EDUCATION**
University of Virginia Law School, J.D.
University of California, Berkeley, B.A. History
and Economics (double major), with Honors



Joseph R Saveri



Mr. Saveri began his career performing general litigation work at the San Francisco law firm of McCutchen, Doyle, Brown & Enersen. In 1992, he joined the plaintiffs' firm Lieff Cabraser Heimann & Bernstein (LCHB), where he was the firm's Managing Partner and established its antitrust and intellectual property practice, which was recognized in 2012 as one of the top five practice groups in California. He left LCHB in May 2012 to start his own firm.

Mr. Saveri has performed virtually every aspect of complex and class action litigation, including factual and economic analysis of market conditions and pricing practices, drafting of pleadings, law and motion matters, organizing e-discovery, creating a discovery plan, administering and directing on-line review of documents requiring coordination of dozens of lawyers fluent in English and foreign languages, propounding written discovery, taking and defending percipient and expert witness depositions, organizing the factual record, briefing and arguing summary judgment, and leading trial and appellate work.

From 2010 through 2013, Mr. Saveri served as a Lawyer Representative for the United States District Court for the Northern District of California and the Ninth Circuit Court of Appeals. He has served and serves on several court committees charged with developing rules and programs regarding complex litigation, e-discovery, and a variety of other matters. He was chosen to serve as a member of the Northern District's Civil Rules Advisory Committee from 2009-2012, the committee to establish rules and procedures for expedited trials (which the Court adopted as General Order No. 64, "Expedited Trial Procedures"), and the committee which crafted new e-discovery rules and procedures later adopted by the Court. He is a member of the American Bar Association and the Bar Association of San Francisco.

Mr. Saveri is also a frequent author of articles on antitrust and complex litigation issues, and a lecturer on a variety of matters, including antitrust, complex litigation, class action practice, and discovery. He serves as an author of *California Antitrust and Unfair Competition Law*, the legal treatise published by the State Bar of California's Antitrust and Unfair Competition Section. He is also a member of the Advisory Board of the American Antitrust Institute. In 2019, he was a speaker at the U.S. Department of Justice Antitrust Division's public roundtable to discuss the Antitrust Criminal Penalty Enhancement & Reform Act. Recently, he has spoken before several organizations about the risks of generative artificial intelligence.

Mr. Saveri has received numerous **ACCOLADES** from an array of legal entities, including:

**Benchmark Litigation:** Honored as "National Practice Area Star" and "Local Litigation Star" in competition/antitrust and dispute resolution (2020-present)

**Best Lawyers:** *Best Lawyers in America* (2012-present)

**Chambers and Partners:** Band 1 (top-ranked) attorney for "Antitrust: Plaintiff—USA—Nationwide" and "Antitrust: Mainly Plaintiff—California" (2014-present)

**OUR TEAM - ATTORNEYS**

**JOSEPH SAVERI**
**L A W   F I R M**

*con't* Joseph R. Saveri
















**Daily Journal (California):** CLAY Award—California Lawyer Attorneys of the Year (2016, 2022); Top Plaintiff Lawyers in California (2018-present); Top 100 Lawyers in California (2016, 2018-2019, 2021-present); Top Antitrust Lawyers in California (2020, 2022-present); Leading Commercial Litigators in California (2023-present); Leading Labor & Employment Lawyers in California (2014)

**Global Competition Review:** Shortlisted for "Lawyer of the Year" (2022)

**Law 360:** Titan of the Plaintiffs Bar (2014)

**Lawdragon:** 500 Leading Lawyers in America (2022-present); 500 Leading Plaintiff Financial Lawyers (2019-present); 500 Leading Litigators in America (2023); 500 Leading Plaintiff Consumer Lawyers (2024)

**Legal 500:** Leading Lawyer - "United States Antitrust Civil Litigation/Class Actions: Plaintiff" category (2021-present)

**Martindale-Hubbell:** AV Preeminent rating—Top Rated Lawyers (2008-present)

**National Law Journal:** Trailblazers—Mergers & Acquisitions and Antitrust (2015)

**Super Lawyers:** *Super Lawyers Northern California*—Antitrust Litigation (2006-present); *Super Lawyers* Top 100 Northern California (2015-2016, 2019-present)

**Who's Who Legal:** One of the top plaintiffs' attorneys worldwide via *Who's Who Legal: Competition* (publication of Who's Who Legal and Global Competition Review (2015-present)); profiled in *Thought Leaders: Competition*, a publication of Who's Who Legal (2019-present)

**OUR TEAM - ATTORNEYS**

JOSEPH SAVERI
L A W   F I R M

# Ronnie S. Spiegel



**PRACTICE AREAS**
Antitrust
Class Action
Consumer Protection
Securities Litigation and Shareholder Disputes

**ADMISSIONS**
State of Pennsylvania
State of Washington
Washington Supreme Court
US District Court – Eastern District of Michigan
US District Court – Eastern District of Pennsylvania
US District Court – Western District of Washington

**EDUCATION**
Temple University Beasley School of Law, J.D. (*Temple Law Review* – Editorial Board)

Boston University, B.A., International Relations








Ms. Spiegel has over two decades of experience litigating and managing all phases of complex antitrust litigation from filing through trial, with a special focus on e-discovery negotiation and case management. She is also a go-to person in the industry regarding translation issues and the use of foreign-language evidence. Her approach to complex case litigation is both substantive and pragmatic. She has a deep understanding of the legal issues and facts involved in her cases, but also strives to set up an efficient framework at the outset of each case so that the case can run smoothly and the best possible result for clients and plaintiff-classes can be achieved.

Ms. Spiegel joined the Firm in 2021 after 16 years of practice at Hagens Berman Sobol Shapiro LLP, where she was a partner since 2013. While there, she focused on representing direct purchasers and end-consumers, and played key roles in some of the largest price-fixing, monopolization, and complex litigation cases in the country. Some of her most notable cases included leadership and management of: *In re DRAM Antitrust Litigation*, *In re SRAM Antitrust Litigation*, *In re Cathode Ray Tube Antitrust Litigation*, *In re TFT-LCD (Flat Panel) Antitrust Litigation*, *In re Automotive Parts Antitrust Litigation*, *In re Containerboard Antitrust Litigation*, *In re McKesson Corp. Shareholder Derivative Litigation*, *In re Apple iPhone Litigation*, and *In re Google Android Litigation*.

Ms. Spiegel also previously worked as an associate at Spector, Roseman & Kodroff, where she helped develop the firm's antitrust practice and managed its North Carolina office. While there, she played a significant role in several landmark cases, including: *In re Brand Name Prescription Drugs Antitrust Litigation*, *In re Vitamins Antitrust Litigation*, *In re NASDAQ Market-Makers Antitrust Litigation*, *In re High Fructose Corn Syrup Antitrust Litigation*, *In re Commercial Tissue Paper Antitrust Litigation*, and *In re Flat Glass Antitrust Litigation*.

Ms. Spiegel has received many accolades during her legal career, including being selected as a Super Lawyer, among The National Trial Lawyers Top 100, and by Lawdragon as one of its 500 Leading Plaintiff Financial Lawyers (2019-present), 500 Leading Litigators (2023), and 500 Leading Plaintiff Consumer Lawyers (2024). In 2023, she received *Corporate Counsel's* Women, Influence & Power in Law Award for Collaborative Leadership.

Ms. Spiegel is a member of the American Bar Association's Antitrust Section, was a member of the Sedona Conference, Working Group 1, and was a member of the drafting team for the Sedona Conference's revised Rule 45 Commentary (published October 2020). She has completed Ladder Down, a networking, mentoring, and executive training program for women leaders in the Seattle legal community. She is also a former Board Member of the MAMAS organization, a resource and networking organization in Seattle for those trying to balance motherhood and a legal career.

Ms. Spiegel has also been a participant in the Antitrust Litigation Forum, where an invitation-only group of 50 the nation's leading plaintiff and defense antitrust litigators gather to speak candidly about current developments in the law, such as the impact of the big tech trials and cases on antitrust practice. She has consistently attended the Forum in recent years and plans to do so in the future.

# Cadio Zirpoli



**PRACTICE AREAS**

Antitrust
Class Action
Commercial Litigation
Complex Business Disputes
Criminal Defense
Generative AI

**ADMISSIONS**

State of California
US Court of Appeals – Ninth Circuit
US District Court – Central District of California
US District Court – Eastern District of California
US District Court – Northern District of California
US District Court – Southern District of California

**EDUCATION**

University of San Francisco School of Law, J.D.,
*cum laude*

University of California, Berkeley, B.A.









Mr. Zirpoli is a distinguished member of the San Francisco legal community, with roots tracing back generations. He has built his career on tenacity and the ability to bring numerous high-profile cases to positive results for his clients.

Mr. Zirpoli's relationships with firm founder Joseph Saveri and partner Ronnie S. Spiegel stem from when all were at separate firms and worked on many cases together, sometimes as co-counsel, others in tandem but representing separate classes or clients. In recent years, they converged on the landmark *Capacitors* case. As a result of these successful collaborations, in 2022, Mr. Zirpoli left his former firm, Saveri & Saveri, Inc., to join the Firm.

Throughout his legal career, Mr. Zirpoli has specialized in complex civil and class action litigation in both federal and state courts, focusing primarily on antitrust suits. His work covers various industries, including electronics, pharmaceuticals, banking, financial institutions, paper products, agriculture, travel, transportation, insurance, and the protein market. He has played a significant role in resolving some of the largest electronics antitrust cases on record, including *In re DRAM Antitrust Litigation*, *In re Cathode Ray Tube (CRT) Antitrust Litigation*, *In re Optical Disk Drive Products Antitrust Litigation*, and *In re Lithium Ion Batteries Antitrust Litigation*.

At the Firm, Mr. Zirpoli plays a key role in developing and coordinating its timely generative generative AI litigation. These novel, cutting-edge cases are on behalf of classes of artists, coders, and authors who allege their creative work is being illegally appropriated by defendants' artificial intelligence and machine learning technology without consent, credit, compensation, or transparency. These cases have drawn considerable legal and international press attention and have been the subject of a July 2023 Senate Judiciary Committee subcommittee hearing, at which Mr. Zirpoli attended and advised his testifying client.

Prior to and while at the firm, Mr. Zirpoli has been actively involved in prosecuting the "protein" cases: a series of price-fixing investigations, and collusion in the meat industry, such as broiler chickens and pork. He argued and won an appeal before the Ninth Circuit Court of Appeals in *Bozzio v. EMI Grp. Ltd.*, 811 F.3d 1144 (9th Cir. 2016), a breach of contract case raising issues of first impression in the Ninth Circuit.

After law school, Mr. Zirpoli joined the San Francisco District Attorney's Office, distinguishing himself by working under a federal grant to prosecute repeat offenders of domestic violence, elder abuse, and child abuse.

Mr. Zirpoli is an AV Preeminent-rated lawyer on Martindale-Hubbell. In 2022, he was honored by the American Antitrust Institute for "Outstanding Antitrust Litigation Achievement in Private Law Practice." for his role in *Cameron v. Apple Inc.*, No. 4;19-cv-03074 (N.D. Cal.), and in 2023 for his role in *In Re Capacitors Antitrust Litigation*. He has been repeatedly, positively rated by *Super Lawyers*, selected as one of Lawdragon's 500 Leading Plaintiff Financial Lawyers (2023), Leading Litigators (2023), and Leading Plaintiff Consumer Lawyers (2024), and honored by Best Lawyers.

Mr. Zirpoli serves as a volunteer judge with the YMCA Marin County Youth Court, an alternative to the traditional juvenile justice system.

OUR TEAM - ATTORNEYS

JOSEPH SAVERI
L A W   F I R M

# David Seidel



**PRACTICE AREAS**
Antitrust
Class Action
Consumer Protection

**ADMISSIONS**
State of California
US District Court – Eastern District of California
US District Court – Northern District of California

**EDUCATION**
George Washington University Law School, J.D., Highest Honors

Sonoma State University, B.A., Political Science, Philosophy Minor







Mr. Seidel joined the Firm in 2022, where he focuses on antitrust and consumer protection class actions. He is a litigator at heart with an unwavering commitment to achieving justice for his clients. He has been a key player in discovery and developing strategy and briefing in the Firm's Varsity All Star and Scholastic Cheer Market Price-Fixing Litigation, Medical Center Employee No-Poach Litigation, and Microsoft Acquisition of Activision Litigation

Mr. Seidel was previously an associate at a large corporate law firm where he received significant litigation experience and invaluable mentorship in a broad-based practice. He successfully assisted in litigating a wide range of complex disputes in state and federal courts and in arbitration. His diversified workload highlights included:

- defending against class-action claims alleging personal and environmental injuries arising from a natural gas blowout
- litigating related jury and bench copyright trials arising from a competitor's improper claimed fair use of the plaintiff's developed scripts and commands from its software
- defending against an FTC antitrust merger-investigation under the Hart-Scott-Rodino Act

Prior to that, Mr. Seidel clerked for the Honorable Judge Jill A. Otake of the United States District Court for the District of Hawaii. While there, he attended and assisted with trial and oral arguments, conducted legal research, and assisted in drafting judicial opinions on motions for summary judgment, motions to dismiss, and various other pre-trial motions.

As a law student at the George Washington University Law School, Mr. Seidel graduated with highest honors and was an executive editor of *The George Washington Law Review*. He participated in mock trial competitions, winning the school's top "Estrella" Mock Trial Competition, along with a classmate, and earning the Best Advocate award. He was also the president of the school's American Constitution Society student chapter and was recognized as an ACS Next Generation Leader. He participated in his school's student government and received the Pro Bono Service Recognition Award for devoting a substantial number of hours to pro bono legal work with several different organizations.

Mr. Seidel remains deeply committed to providing pro bono legal representation on compelling cases to those who cannot afford it. He has represented Guatemalan refugees fleeing violence and persecution in their claims for asylum, successfully petitioned the government for clemency on behalf of a veteran suffering from PTSD due to a service-related incident, and litigated constitutional excessive force claims against four police officers who had wrongfully allowed a police dog to attack a handcuffed criminal suspect.

Mr. Seidel has been selected by *Best Lawyers* as "One to Watch" for 2023-present and named among Lawdragon's "500 X – The Next Generation." In October 2022, he and Joseph Saveri co-authored "Touhy Exposed," published in the California *Daily Journal*. He is a founding member and president of the American Constitution Society, At-Large Lawyer Chapter. He has volunteered for the Association of Business Trial Lawyers, serving on its leadership development committee. He served as a Young Lawyer Representative of the Competition Torts Committee of the American Bar Association Antitrust Law Section during the 2022-2023 ABA year. He is a member of the American Bar Association and the Bar Association of San Francisco.

**OUR TEAM - ATTORNEYS**

JOSEPH SAVERI
L A W   F I R M

# Christopher Young



**PRACTICE AREAS**
Antitrust
Class Action

**ADMISSIONS**
State of California
US Court of Appeals – Eleventh Circuit
US District Court – Central District of California
US District Court – Eastern District of California
US District Court – Northern District of California
US District Court – Southern District of California
US District Court – Northern District of Illinois

**EDUCATION**
UCLA School of Law, J.D. (specialization in
International and Comparative Law)

University of Minnesota Law School (first-year
coursework), Dean's List, Dean Distinguished
Scholarship, Richardson Scholarship

UCLA, B.A., Economics and Sociology

**LANGUAGES**
Cantonese (conversational)
French (basic)
German (basic)









Mr. Young specializes in antitrust and class action litigation. He approaches his practice with a diligent and creative attitude while providing clients with high-quality legal representation.

Mr. Young's professional qualifications are exemplified by his invaluable work on the *Capacitors* trial. As a leading associate (the Firm is sole Lead Counsel), he played a vital role in coordinating this massive price-fixing litigation as the Firm litigated summary judgment, tried the case in 2020 for two weeks (before the pandemic caused a mistrial), and then commenced a November-December 2021 retrial. Mr. Young had primary responsibilities for drafting and negotiating pretrial filings such as jury instructions and motions *in limine*, presenting evidence to the jury, and playing critical roles in nearly all other aspects of both trials. He has also been a leader in achieving final approval of settlements taking place from 2020 to date
.
In addition to his duties for the Firm, Mr. Young volunteers for the Federal Pro Bono Project of the Bar Association of San Francisco. In a recent pro bono civil rights matter, he briefed and argued motions for summary judgment which led to a settlement that included significant monetary consideration and nonmonetary consideration that would have been unavailable as relief if the Firm had prevailed at trial. In 2021, he was one of the speakers at a webinar co-sponsored by the Bar Association of San Francisco's Justice and Diversity Center, the Asian Law Alliance, and the U.S. District Court for the Northern District of California: "What Can I Do as a Pro Bono Attorney in the Northern District?"

Before joining the Firm, Mr. Young was a law clerk for Associate Justice Lamar W. Baker of the California Second District Court of Appeal, Division Five. Prior to this, he was a post-bar fellow at the Los Angeles County Public Defender's Office. While attending law school at UCLA, Mr. Young was an Associate Editor of the *UCLA Law Review*.

Mr. Young is a member of the American Bar Association, the Bar Association of San Francisco, the Los Angeles County Bar Association, and the Asian American Bar Association. He is currently Vice Chair for the American Bar Association Antitrust Section's Trial Practice Division and, also for the ABA, has been a Young Lawyer Representative for the Competition Torts Committee (2021-2022) and Young Lawyer Representative for the Leadership and Diversity Special Operations Team (2020-2021). He chaired a "How I Learned to Love Pretrial Filings" panel discussion at the American Bar Association's 2023 Antitrust Spring Meeting and Young Lawyer Representative, in 2022 he was a panelist in the "Career Conversations & Diversity Dialogues" program at the ABA Antitrust Section Spring Meeting aimed towards giving lawyers perspectives in possible career paths.

From 2021-present, Mr. Young has been selected by *Super Lawyers* as a Northern California "Rising Star." In 2022, he was honored as one of the "Rising Stars of the Plaintiffs Bar" in *the National Law Journal's* Elite Trial Lawyer Awards, as one of the "Lawyers on the Fast Track (Under 40)" in the *Recorder's* California Legal Awards, and for an "Outstanding Antitrust Litigation Achievement by a Young Lawyer" by the American Antitrust Institute. In 2023, he was chosen for the California *Daily Journal's* "40 Under 40" list, by Best Lawyers as "One to Watch," and included in Lawdragon's "500 X – The Next Generation" guide.

# Holden Benon



**PRACTICE AREAS**
Class Action
Intellectual Property
Generative AI

**ADMISSIONS**
State of California
US District Court – Central District of California
US District Court – Northern District of California
US District Court – Southern District of California

**EDUCATION**
UC Law School, J.D.

Arizona State University, B.A., Business
Communications (Dean's List)

Mr. Benon joined the firm in 2023. He takes a resolute approach to his practice and is proud to represent authors and other creators in enforcing their rights.

Mr. Benon focuses on litigating class action lawsuits the firm has brought against Meta Platforms, Inc., OpenAI, Inc., and others based on their infringement of authors' copyrights when they allegedly made unauthorized copies of those authors' copyrighted works to train artificial-intelligence products.

Prior to joining the firm, Mr. Benon was an associate at an AmLaw100 law firm in San Francisco where he obtained significant experience representing plaintiffs and defendants in federal district court, state and federal appellate courts, and private arbitration. Over the past five years, his practice has focused on intellectual property enforcement and insurance coverage litigation, typically dealing with complex or cutting-edge issues including cyber/technology/media insurance, professional liability, and pandemic-related business interruption.

Among his various accomplishments, Mr. Benon successfully litigated a plaintiff-side copyright infringement matter he brought to his firm as a second-year associate. He is the author of several published articles covering the intersection between technology and insurance.

Mr. Benon has been a panel attorney for the Federal Pro Bono Project in the Northern District of California. He has successfully litigated various pro bono matters, including:

- *Gardner v. Reille*, 2023 WL 3471454 (N.D. Cal. May 12, 2023): obtained a successful settlement for an incarcerated individual in a prison excessive force case after the court granted a motion to compel production of prison officers' personnel files
- *Rhone v. Housing Authority of City of Oakland* (N.D. Cal.): represented a recipient of Section 8 housing benefits to secure a favorable resolution at a settlement conference followed by a favorable outcome on a motion to enforce settlement after the Housing Authority delayed payment

During law school, Mr. Benon was an intern for the Electronic Frontier Foundation, where he focused on copyright and privacy issues. In addition, Mr. Benon's student journal note on aspects of the Digital Millenium Copyright Act was selected for publication in his law school's business journal: "A Peek Under the Hood: Why Lawmakers Should Strengthen the Current DMCA Exemption for Security and Safety Research into Car Software," 15 *Hastings Bus. L.J.* 155 (2019). He was a National Best Brief Winner & Quarterfinalist for the Cultural Heritage Moot Court Competition at DePaul Law School in Chicago. His team's winning brief was published in DePaul Law School's *Journal of Art, Technology & Intellectual Property Law*.

Mr. Benon has spoken at several insurance trade association events regarding insurance and artificial intelligence. He regularly holds seminars for students at the Academy of Art University in San Francisco about how they can protect their intellectual property rights. He is a member of the American Bar Association and the Bar Association of San Francisco, and also a member of The Guardsmen, a charitable organization benefiting Northern California at-risk youth.

OUR TEAM - ATTORNEYS

JOSEPH SAVERI
LAW FIRM

# William Castillo Guardado



**PRACTICE AREAS**
Antitrust & Global Competition
Class Action
Consumer Protection
Generative AI
No-Poach Agreement and Anticompetitive Behavior

**ADMISSIONS**
State of California
State of New York
US Court of Appeals – Second Circuit
US District Court – Eastern District of California
US District Court – Northern District of California

**EDUCATION**
University of San Francisco School of Law, J.D., *cum laude*

University of the Pacific, B.A., *magna cum laude*, International Relations and Japanese, Anthropology (minor)

Mr. Castillo Guardado joined the firm in 2023. He brings an analytical and thoughtful approach to litigation honed through years of experience in employment, business, and human rights matters. His practice currently focuses on antitrust and consumer protection class actions.

Previously, Mr. Castillo Guardado was an attorney at a general civil litigation firm in the Bay Area, overseeing all aspects of cases from intake to trial. His practice areas included employment discrimination, wage and hour, business tort, and real estate litigation disputes in California federal and state courts.

Mr. Castillo Guardado was also an attorney at Catholic Charities Community Services in New York City, where he argued cases before the Second Circuit Court of Appeals, Board of Immigration Appeals, and immigration court. An advocate for pro bono services, he provided more than one hundred free legal consultations to members of the immigrant community in New York City and the Lower Hudson Valley.

In 2014, Mr. Castillo Guardado was based in Tajikistan in Central Asia as an attorney with the Danish Refugee Council and the Center for Gender & Refugee Studies. He represented refugees from Afghanistan in proceedings before the UN High Commissioner for Refugees, delivered humanitarian aid, and led field research on legal protections for women and children in Central Asia. Mr. Castillo Guardado also traveled to Afghanistan for one week to deliver a training to lawyers and law students on representing survivors of gender violence.

During law school, Mr. Castillo Guardado was a senior articles editor for the *Hastings Race & Poverty Law Journal*, president of the Government Law Organization, and political chair of the La Raza Law Students Association.

Mr. Castillo Guardado is a member of the American Bar Association, the Bar Association of San Francisco, and the Association of Latino Marin Attorneys.

**JOSEPH SAVERI**
LAW FIRM

# Aaron J. Cera



**PRACTICE AREAS**
Antitrust
Class Action

**ADMISSIONS**
State of California

**EDUCATION**
University of San Francisco School of Law, J.D., *cum laude*

University of San Francisco, B.A., Politics,  Legal Studies, *summa cum laude*

Mr. Cera was sworn in as an attorney and became a member of the California Bar in November 2023. He is a tenacious advocate dedicated to championing the rights of plaintiffs and safeguarding consumers, especially those victimized by violations of antitrust, intellectual property, and securities laws.

Mr. Cera worked as a legal intern with the San Francisco Public Defenders Office during his first-year summer. He then joined the firm as a summer associate and stayed on as a third-year law clerk. His responsibilities spanned the spectrum of litigation, from drafting motions and discovery to preparing clients for depositions, conducting legal research, and drafting legal journal articles.

In law school, Mr. Cera shared his knowledge and expertise as a teaching assistant for advanced torts. Additionally, his role as a notetaker for the Disability Resource Program, involvement with the Hastings Prisoner Outreach Program through letter writing, and membership in the Hastings Plaintiffs Law Association underscored his commitment to positively impact victims of unlawful conduct.

Mr. Cera also served as a student attorney with the Individual Representation Clinic at UC Law - San Francisco, where he represented low-income workers embroiled in a wage and hour dispute before the San Francisco Labor Commission. Through hands-on advocacy, Aaron not only demonstrated his legal acumen but also showcased a commitment to ensuring justice for those often marginalized in the workforce.

Prior to law school, Mr. Cera cut his teeth as a junior paralegal and legal assistant at two San Francisco law firms. His experience organizing and managing case files, researching rules of court and statutes, and collaborating with legal professionals advanced his understanding of the practice of law.

JOSEPH SAVERI
LAW FIRM

# Christopher J. Hydal



**PRACTICE AREAS**
Antitrust
Class Action
Consumer Protection

**ADMISSIONS**
State of New York
US Court of Appeals – Second District
US District Court – Eastern District of California
US District Court – Southern District of California
England and Wales – Higher Rights of Audience (Civil)

**EDUCATION**
BPP University, London, Legal Practice Course, Distinction

The City Law School, London, Bar Professional Training Course, Very Competent

Kingston University, London, Postgraduate Diploma in Law, Commendation

Boston College, B.A., Classics

Christopher J. Hydal specializes in antitrust and consumer protection class actions. He is committed to the firm's mission of achieving socially minded, justice-driven outcomes on behalf of individuals and businesses.

Mr. Hydal has over a decade of law firm experience and is admitted to practice as an attorney in New York and as a solicitor in England and Wales. Since joining the firm, he has played an important role in drafting pleadings, various motions, and written discovery filings in Varsity All Star and Scholastic Cheer Market Price-Fixing Litigation and Nestlé Bottled Water Litigation. He also represents plaintiffs in University of Pittsburgh Medical Center Anticompetitive Employment Litigation, a class action concerning a private hospital chain's exclusionary scheme to limit its workers' mobility and suppress their wages.

Prior to joining the firm, Mr. Hydal worked in New York as an immigration associate, representing respondents in removal proceedings and litigating federal claims with respect to denied or delayed immigrant visa petitions. Previously, he studied law in London, where he qualified as both a solicitor and barrister. As an associate at a London-based litigation boutique, Mr. Hydal acted on behalf of claimants in Employment Tribunal claims for workplace discrimination and harassment, and adult survivors of historical child sex abuse in High Court compensation claims against institutional defendants.

Mr. Hydal is a member of the American Bar Association, New York State Bar Association, New York City Bar Association, and the Inner Temple.

JOSEPH SAVERI
LAW FIRM

# David Lerch



**PRACTICE AREAS**
Antitrust
Class Action
No-Poach Agreements and Anticompetitive
Behavior
Consumer Protection
Generative AI
Pro Bono

**ADMISSIONS**
State of California
US District Court – Northern District of California

**EDUCATION**
Stanford Law School, J.D., with distinction

Harvard University, AB, Environmental Science
and Public Policy, *summa cum laude*

Mr. Lerch joined the firm in 2023. He is a litigator who approaches cases with a comprehensive view of the legal, regulatory, and commercial landscape to obtain just results for his clients.

Over his legal career, Mr. Lerch has successfully handled complex federal and state court litigation, including antitrust matters involving patent pools and standard essential patents, no-poach agreements, monopolization, and buy-outs. He has experience litigating complex matters outside the antitrust context, including a case involving parallel administrative, civil, criminal, and Congressional investigations. He has also litigated Freedom of Information Act, Privacy Act, and Federal Tort Claims Act matters.

Mr. Lerch has public sector experience with the Social Security Administration Office of General Counsel, including rulemaking regarding attorney misconduct issues, interagency coordination on Social Security fraud issues, and briefing senior agency officials on issues involving sub-regulatory policy, litigation risk, and impact on stakeholders outside the agency.

At the firm, Mr. Lerch's practice covers a range of antitrust cases, including a class action involving a no-poach agreement by a nationwide tax preparation firm, a buy-out by a large tobacco company, and a class-action involving a health care company which has expanded through a series of anticompetitive mergers. He also plays a key role in consumer protection cases, including a case against a company that manufactures a carcinogenic pesticide, a class action against the institutional investors that backed a cryptocurrency trading company, and class actions against AI platforms asserting copyright infringement on behalf of novelists and other creative professionals.

Prior to joining the firm, Mr. Lerch was with a San Francisco firm where he represented a wide range of professionals and corporate clients in litigation involving issues including professional liability. He argued in district court, state superior court, and the California Court of Appeal, represented clients in mediation, and handled novel issues, such as tribal sovereign immunity in professional liability litigation.

Mr. Lerch has also managed a wide range of federal litigation and was the Deputy Regional Chief Counsel for the Region IX office at the Social Security Administration Office of General Counsel. In addition, he worked with the Ninth Circuit Court of Appeal as a staff attorney on immigration and criminal appeals. At WilmerHale, he covered antitrust matters, including federal litigation regarding standard essential patents in the DVD patent pool, advice and guidance regarding licensing matters for a technology company, and merger clearance.

While in law school, Mr. Lerch was a senior submissions editor for the *Stanford Journal of International Law*. Upon graduation he clerked for Judge Christina Snyder in the United States District Court for the Central District of California.

Mr. Lerch is a member of the American Bar Association Antitrust Law Section and the Bar Association of San Francisco. He also provides pro bono representation with the Lawyers Committee for Civil Rights in San Francisco.

# Kathleen J. McMahon



**PRACTICE AREAS**
Antitrust
Class Action

**ADMISSIONS**
State of California
US Court of Appeals – Ninth District
US District Court – Northern District of California

**EDUCATION**
University of San Francisco School of Law, J.D.

University of Nevada, Reno, B.A., Criminal Justice

Ms. McMahon specializes in antitrust and class action litigation. She approaches her practice with a passionate attitude while providing her clients with high-quality legal representation.

Ms. McMahon has extensive success in antitrust class actions and other areas of law, including tax law with an emphasis in state and local tax compliance, property law, corporate law, personal injury, and criminal defense. She has substantially contributed in all case stages, including case development; factual investigation and drafting of pleadings; discovery; taking and defending depositions; researching, drafting, and orally arguing motions in federal and state court; and arbitration and trial preparation.

At the firm, Ms. McMahon plays a key role in its timely Generative AI Litigation. These novel, cutting-edge cases are on behalf of classes of artists, coders, and authors who allege their creative work is being illegally appropriated by defendants' artificial intelligence and machine learning technology without consent, credit, compensation, or transparency. In particular, her focus has been on Meta's LLaMA large language model product.

Ms. McMahon has played and continues to play a key role in the Firm's Microsoft acquisition of Activision Litigation by assisting in the drafting of pleadings, motions, discovery, and orally arguing motions in court. She also represents consumers in Nestlé Bottled Water Litigation, *Patane v. Nestlé Waters North America, Inc.*, No. 3:17-cv-01381 (JAM) (D. Conn.).

Previously, Ms. McMahon was an associate at Berding Weil, LLP where she represented Homeowners Associations and individuals in construction defect lawsuits. She also worked with partners in advising clients in a general counsel capacity. Before that, she was as an associate at Andersen Tax, LLC in the State and Local Tax (SALT) group, where she worked on projects related to changing high net worth clients' residences, performed nexus studies, and represented clients with "controversy" matters before the Franchise Tax Board, Office of Tax Appeals, and Internal Revenue Service.

While in law school, Ms. McMahon clerked at a plaintiffs-side class action law firm and interned at a criminal defense law firm. She was also an intern for Andersen Tax, LLC in the Private Client Services line, prior to accepting a post-bar associate position in the SALT group. In law school, she was part of the Women's Law Association and Pilipino American Law Society. She works on various civil rights cases.

JOSEPH SAVERI
LAW FIRM

# Itak Moradi



**PRACTICE AREAS**
Antitrust
Class Action

**ADMISSIONS**
State of California
US Court of Appeals – Ninth District
US District Court – Central District of California
US District Court – Eastern District of California
US District Court – Northern District of California

**EDUCATION**
Université Panthéon Assas (Paris II), L.L.M. in European Union Law

University of San Francisco School of Law, J.D.

UCLA, B.A., Gender Studies, English Literature


RATED BY
Super Lawyers

Ms. Moradi joined the firm in 2023. During her legal career, her practice has focused on litigating high-stakes fraud and deceitful business practices. She brings a passion for public advocacy to her work and is a precise and creative litigator.

Ms. Moradi is a former senior associate at Knox Ricksen LLP (Knox) in Walnut Creek. While there for six years, she handled complex, multi-party *qui tams* involving multi-million-dollar fraud and conspiracy actions against health care professionals, attorneys, and other corporate actors. Her responsibilities as senior associate covered the full spectrum of case development and litigation, including presenting trials.

Prior to Knox, Ms. Moradi worked at three Bay Area firms on personal injury, fraud, and class action litigations. While in law school, she was on the board of the Public Interest Law Foundation, and co-authored proposed legislation for the City of San Francisco and a policy report for the California Senate Office of Research.

From 2020-present, Ms. Moradi has been selected by Super Lawyers as a Northern California Super Lawyer "Rising Star." She is a member of the San Francisco Trial Lawyers Association, Iranian American Bar Association, and Anti-Fraud Alliance, and is a fellow of the Litigation Counsel of America.

Ms. Moradi volunteers as a board member and attorney for the Coalition of Concerned Legal Professionals (CCLP), San Francisco Chapter, and provides free legal services on housing and wage issues for San Francisco and Oakland residents. In 2018, she and CCLP successfully initiated a HUD investigation into 300+ unlawful eviction notices that were ultimately withdrawn.

**OUR TEAM - ATTORNEYS**

JOSEPH SAVERI
LAW FIRM

# Kevin Rayhill



**PRACTICE AREAS**
Antitrust
Class Action

**ADMISSIONS**
State of California
US Court of Appeals – Ninth District
US District Court – Central District of California
US District Court – Eastern District of California
US District Court – Northern District of California

**EDUCATION**
University of California Hastings College of the Law, J.D.

Oberlin College, B.A., Religion

Berklee College of Music, Professional Diploma

Mr. Rayhill specializes in antitrust class actions and other complex litigation. He advocates for the rights of workers, taking on some of the biggest employers in professional sports, social media, defense contracting, and luxury retail to fight for competitive wages and safe working conditions. He also fights on behalf of consumers, bringing antitrust claims against manufacturers of pharmaceuticals, laptop computers, car parts, and titanium dioxide, among others. To date, these cases have resulted in settlements exceeding $300 million.

Prior to joining the Firm, Mr. Rayhill worked as a Legal Research Attorney at the Superior Court of San Francisco (Criminal Division). While in law school, he held internships at the California Attorney General's Office (Environment, Land Use, and Natural Resources Division) and the San Francisco City Attorney's Office (Energy and Telecommunications Team), and an externship with Justice Stuart R. Pollak of the California Court of Appeal (First District).

Mr. Rayhill  is a member of the American Bar Association and the Bar Association of San Francisco. His legal writing has been published in the California *Daily Journal*.

JOSEPH SAVERI
LAW FIRM

# Elissa A. Buchanan



**PRACTICE AREAS**
Antitrust
Intellectual Property

**ADMISSIONS**
State of California
US District Court – Northern District of California

**EDUCATION**
University of San Francisco School of Law, J.D.

Mills College, B.A., French Studies

**LANGUAGES**
French (conversational reading and speaking)

Ms. Buchanan's legal expertise focuses on antitrust, class actions, intellectual property, and corporate securities and shareholder litigation. She has success in case development, drafting pleadings and motions, managing discovery, conducting legal research, and preparing for depositions and trial. She manages a team of document reviewers tasked with analyzing and organizing extensive e-discovery. Always focused on providing positive outcomes for her clients, she takes pride in conducting litigation efforts that reliably achieve that goal in a timely, cost-effective manner.

Ms. Buchanan works primarily on antitrust drug cases involving pay-for-delay, PBM (pharmacy benefit management or manager) kickbacks, and generic drug company collusion. Also, she has presided in intense discovery efforts in *Jones v. Varsity Brands*, No. 2:20-cv-02892 (W.D. Tenn.), both in helping bring the case to the Firm and coordinating the completion of over 75 depositions in a six-month span.

Ms. Buchanan has taken the lead role in forming the Firm's "Green Team," a group of employees who have organized personnel and implemented policy changes to ensure that the Firm is environmentally responsible. They have successfully achieved the Firm's designation as a Certified Green Business by the San Francisco Green Business Program.

Prior to joining the Firm, Ms. Buchanan worked as an attorney on construction defect litigation and antitrust and personal injury class actions. During law school, she interned at California Lawyers for the Arts, where she worked with clients to find solutions to copyright and trademark issues. She also was a technical editor for the *Journal of Law and Social Justice* and volunteered for Law in Motion, a program that provides opportunities for the law school community to reflect on issues of social justice and access to equal justice through various activities and events.

Ms. Buchanan is a member of the American Bar Association.

**OUR TEAM – STAFF ATTORNEYS**

JOSEPH SAVERI
LAW FIRM

# Julie Han



**PRACTICE AREAS**
Antitrust
Class Action

**ADMISSIONS**
State of California

**EDUCATION**
University of the Pacific, McGeorge School of
Law, J.D.

San Francisco State University, B.S., Business
Administration (concentration in International
Business)

Chung-Ang University (Seoul), B.A., Architectural
Engineering

**LANGUAGES**
Japanese (professional level)
Korean (native level)

Ms. Han focuses on antitrust and consumer class actions, while representing plaintiffs through each phase of antitrust litigation from pre-trial investigation, discovery, dispositive motions, witness selection and interviews, to trial preparation. She understands the goals that need to be reached beyond the complex disputes over antitrust matters. Focused on serving her clients in the best way possible, she aggressively approaches every issue developed during litigation and effectively tackles it to grant her clients a successful resolution.

Prior to joining the Firm, Ms. Han was a project managing attorney for a major international law firm in the San Francisco Bay Area, where she supervised discovery review teams and assisted the firm's intellectual property litigation.

During law school, as a legal intern at the Office of Legislation and Policy of the California Department of Corporations, Ms. Han reviewed legislation proposals on California finance and mortgage lending law and drafted analysis of the state lending issues.

Ms. Han is a member of the American Bar Association and the Bar Association of San Francisco.

OUR TEAM – STAFF ATTORNEYS

JOSEPH SAVERI
LAW FIRM

# Jacquelyn (Jackie) Lindsey



**PRACTICE AREAS**
Antitrust
Class Action

**ADMISSIONS**
State of California
US District Court – Northern District of California

**EDUCATION**
University of San Francisco School of Law, J.D.

University of California, Berkeley, American Studies and African American Studies, B.A. (with honors)

Ms. Lindsey joined the Firm in 2022. She is passionate about protecting consumer rights in antitrust and securities litigation and brings a fresh perspective to teamwork and professional collaborations. She does not shy away from difficult or seemingly insurmountable facts and challenges, as she believes there is always a path through to favorable outcomes for her cases.

Ms. Lindsey specializes in managing complex e-discovery and deposition scheduling and contributes innovative approaches to trial preparation to ensure that plaintiffs are confident in her legal counsel. She has served as project manager of the e-discovery team on the fast-moving Varsity All-Star and Scholastic Cheer Market Price-Fixing Litigation. Among her multifaceted responsibilities, she reviewed discovery-related documents to determine the best strategy and use of files for depositions. With an eye for efficiency, she organized the Firm's document review team, ensuring that the review was completed correctly and ahead of schedule. This role also relied on her expertise in organizing the plaintiffs' document productions, with the responsibility of applying confidential designations and redactions as needed.

Prior to joining the Firm, Ms. Lindsey ran her own law office for over a decade, where she successfully negotiated settlements for a range of clients. She conducted equal employment law investigations, drafted final agency decisions for various federal government entities, and defended clients at hearings. She has also enjoyed success at a prominent plaintiff's side civil rights firm, where she collaborated with their trial team, representing clients in various high-profile cases. The distinct zeal she brings to the profession has resulted in several multi-million-dollar settlements in the private and public sectors.

Ms. Lindsey has a keen interest in the academics of law and the mechanics in which our judicial system operates. She was an adjunct professor at John F. Kennedy University, teaching legal research, writing, and employment law. She has also served as an adjudicator for the United States Department of Agriculture, where she reviewed pertinent evidence for Title VI and Title VII claims prior to drafting final agency decisions.

Ms. Lindsey continues to nurture her professional development and has earned a certificate in Public Interest Law. She is a member of the Federal EEO and Civil Rights Practitioners and a Dorraine Zief Law Library Scholar. She is a member of the American Bar Association and California Women Lawyers. During law school, she externed for Judges Joyce M. Cram, Joni T. Hiramoto, and John H. Sugiyama of the Contra Costa County Superior Court. She served as an editor for the University of San Francisco School of Law's *Journal of Law and Social Challenges*. In addition, she also externed for the U.S. Attorney's Office's White Collar Crime Unit in Northern California.

Ms. Lindsey is dedicated to addressing injustices both in the business and social sector. She has demonstrated this commitment through mentorship to young minority lawyers through the Charles Houston Bar Association. She is particularly proud to have served as a clerk for The Forgotten International. This non-profit raises funds to provide shelter and education for young women in parts of India and Northern Africa.

JOSEPH SAVERI
LAW FIRM

# Sean Bockover



**PRACTICE AREAS**
Antitrust
Class Action
Intellectual Property

**ADMISSIONS**
State of California

**EDUCATION**
Indiana University Maurer School of Law, J.D., *cum laude*

Cornell-Heidelberg Exchange, Universität Heidelberg, Germany

Cornell University, B.A., Biology and German Literature, Dean's List

**LANGUAGES**
German (fluent)
Japanese (basic)

Mr. Bockover specializes in antitrust, class action, and intellectual property. He uses his excellent English and German communication abilities and attention to detail to efficiently process evidence in complex litigation. Then, using analytical skill earned in the sciences, plus tenacity and a thirst for justice honed in public defender work, he turns those insights into action.

For his junior year of college, Mr. Bockover studied at the University of Constance in southwestern Germany, where he became fluent in German. After receiving a B.A. from Cornell University, he returned to Germany for a non-degree year at the University of Heidelberg. After attending the Indiana University Mauerer School of Law (where he was active in the *Indiana Law Journal*) he spent two years as an associate at a boutique Indiana-based firm, practicing mostly criminal law in indigent defense cases. Mr. Bockover then left Indiana for a career in e-discovery (in English and German) in the Bay Area. For more than a dozen years, he has been reviewing documents for top-tier firms, preparing depositions, reviewing contracts, and performing other tasks in German for intellectual property and commercial law cases and investigations covering pharmaceuticals, semiconductor, co-location, software, and automotive disputes.

Mr. Bockover is a member of the American Bar Association.

# Heather Du



**PRACTICE AREAS**
Antitrust
Class Action

**ADMISSIONS**
State of California
US District Court – Northern District of California

**EDUCATION**
University of San Francisco School of Law, J.D.

University of San Francisco, B.A., Politics, *cum laude*

**LANGUAGES**
Vietnamese (reading and writing)
Cantonese (basic)

Ms. Du specializes in antitrust and class action litigation. She has more than 10 years of e-discovery experience that focuses on complex discovery and document review projects using a variety of e-discovery technologies. She also assists in other aspects litigation, including legal research, interview/deposition preparation, and other analytical assignments to support the Firm in providing the best representation to its clients.

Before joining the Firm, Ms. Du was a contract attorney/document reviewer at several San Francisco top tier law firms, where she reviewed documents in securities, patent litigation, class action, civil investigation, and other related practice areas.

Previously, Ms. Du served as a volunteer attorney for the Volunteer Homeless Advocacy Project (HAP), where she provided limited scope representation at court-mandated settlement conferences and assisted with trial preparation. She assisted individuals and families at the Volunteer Legal Service Program of the Bar Association of San Francisco. She was a law clerk for the Asian Pacific Islander Legal Outreach and performed a clinical internship for the San Francisco-based Eviction Defense Collaborative. She also interned at the San Francisco based Court House Project and HAP.

Ms. Du is a member of the American Bar Association and the Bar Association of San Francisco.

JOSEPH SAVERI
LAW FIRM

# Nanci Murdock



**PRACTICE AREAS**
Antitrust
Class Action
Complex Business Disputes

**ADMISSIONS**
State of California
State of New York
State of Massachusetts
US Supreme Court
US Court of Appeals – Ninth Circuit
US District Court – Central District of California

**EDUCATION**
Loyola University Law School, J.D., Dean's List

University of Southern California, B.A., English/Humanities

Ms. Murdock specializes in class action, antitrust, and business litigation. She brings her extensive litigation experience to her current position with the Firm where she performs an integral role in analyzing probative documents of clients and participants to identify merits of claims, potential witnesses, and key evidence in complex class actions.

Prior to joining the Firm, Ms. Murdock was a litigator at two major law firms and of counsel at a Los Angeles boutique litigation firm. She has a successful appellate and business litigation background and has crafted winning motions and appeals throughout her career. Her respondents' brief for United States Supreme Court case *Musick, Peeler & Garrett v. Employers Insurance of Wausau*, 508 U.S. 286 (1993), was affirmed in favor of her clients. Another appeal was also affirmed with the California Court of Appeal, which adopted, in entirety, the arguments proffered in her respondent's brief. She won an appeal in a case that had been ongoing for nine years and had been before the California Supreme Court three times. And she had a new trial motion and a judgment notwithstanding the verdict motion granted, overturning a $3.7 million verdict in a case of first impression interpreting a California statute.

Ms. Murdock also has a substantial intellectual property background. As an IP associate, she worked on various copyright matters and won a partial summary judgment in the Ninth Circuit in a "work for hire" case involving a major rock star. She had a temporary restraining order granted in a trademark dispute involving a well-known leisure-wear manufacturer, and successfully opposed a preliminary injunction in a trade secrets/submission of ideas case before the Second Circuit.

While attending law school, Ms. Murdock was named to the Moot Court Team and won both the Moot Court Best Brief Award and the West Publishing Company Award for Outstanding Brief Writing. She thereafter honed her writing skills clerking for Presiding Justice Joan Dempsey Klein of the California Court of Appeal. Although she originally had a one-year clerkship, after seven months she was asked to stay on as senior attorney and became one of the most junior attorneys ever selected for that position.

Prior to attending law school, Ms. Murdock worked in the Mayor's Office of Los Angeles and the City Community Development Department. In those positions she researched and analyzed city ordinances and federal HUD proposals; authored reports for proposed city legislation; and made legislation recommendations to the city council.

Ms. Murdock is a member of the American Bar Association.

JOSEPH SAVERI
LAW FIRM

# Regan Yamasaki



**PRACTICE AREAS**
Antitrust
Class Action
Complex Business Disputes

**ADMISSIONS**
State of California

**EDUCATION**
Santa Clara University School of Law, J.D.

Claremont McKenna College, B.S., Economics-Accounting

Mr. Yamasaki specializes in antitrust, class action, and complex business disputes. His ongoing pursuit of learning, self-improvement, and solving perplexing challenges led him to the practice of law and guides him to this day.

In his current role with the Firm, Mr. Yamasaki has identified critically important evidence by leveraging metadata to pinpoint pivotal documents otherwise buried in voluminous document productions. This includes key support for class certification and communications between alleged co-conspirators in complex class action cases against major chemical manufacturers accused of price collusion and anti-competitive practices.

Mr. Yamasaki's review experience encompasses a broad spectrum, including patent and securities litigation, antitrust and government investigations, corporate accounting and financial disclosures, product defect litigation, and assorted intellectual property matters.

Before joining the Firm, Mr. Yamasaki was corporate counsel for the Napa, California-based JY Law Firm PC, where he managed work product and law enforcement compliance matters for a well-known international advertising company. He also trained the firm's corporate finance team regarding intellectual property, privacy, and compliance matters.

Prior to his corporate counsel position, Mr. Yamasaki was a successful contract attorney for several prestigious law firms, including Cooley LLP and Morrison & Foerster LLP. Highlights included:

- Co-coordinated review workflow and logistics for a team of over 20 review attorneys
- Employed forensic data analysis tools—including author domain reports, document metadata filters, and concept clusters—to isolate and review substantial volumes of responsive data in an efficient and cost-effective manner
- Supported litigation partners and associates for various needs, including rolling document productions, privilege and redaction logging, deposition preparation, expert discovery, and trial exhibit selection and compilation

Mr. Yamasaki has participated in the Bar Association of San Francisco's Volunteer Legal Services Program.

**OUR TEAM – OF COUNSEL**

JOSEPH SAVERI
LAW FIRM

# Louis A. Kessler



**PRACTICE AREAS**
Antitrust
Class Action

**ADMISSIONS**
State of California
State of Illinois
Court of Appeals – Ninth Circuit
US District Court – Central District of California
US District Court – Northern District of California
US District Court – Southern District of California
US District Court – Eastern District of Illinois
US District Court – Northern District of Illinois
US District Court – Southern District of Illinois

**EDUCATION**
University of Chicago Law School, J.D..

Amherst College, B.A., Physics-Philosophy

Louis A. Kessler joined the firm in 2023 as of counsel. He specializes in complex antitrust and securities fraud class action litigation. His career exemplifies his passion for advocating for consumers, investors, employees and small businesses that have been subject to harmful and illegal business practices.

Mr. Kessler joined the firm from Cera LLP, a San Francisco class action litigation boutique where for over eight years his practice focused on complex securities fraud and antitrust litigation. His responsibilities covered fact research, pleadings, motion practice, complex e-discovery, depositions, expert reports, mediations, settlements, and the evaluation of potential securities fraud cases.

For eight years prior to that position, Mr. Kessler was an associate at top-tier firms in San Francisco and Chicago, where his practice covered complex civil litigation, particularly antitrust, securities fraud, and consumer fraud class actions. During his time at these firms and Cera, he litigated high-profile antitrust cases such as:

- *In re Air Cargo Shipping Services Antitrust Litigation*
- *In re Aluminum Warehousing Antitrust Litigation*
- *In re AOL Time Warner Inc. Securities Litigation*
- *In re DRAM Antitrust Litigation*
- *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litigation*
- *In re Merrill Lynch Research Reports Securities Litigation*
- *In re RC2 Corp. Toy Lead Paint Products Liability Litigation*
- *In re Rubber Chemicals Antitrust Litigation*
- *In re Salomon Analyst AT&T Litigation*
- *In re Sara Lee Corporation Securities Litigation*
- *In re TFT-LCD (Flat Panel) Antitrust Litigation*
- *In re Tronox, Inc. Securities Litigation*
- *Jon D. Gruber v. Ryan R. Gilbertson, et al. (Dakota Plains Securities Litig.)*
- *Sender v. Franklin Resources Inc.*

Mr. Kessler is a member of the American Bar Association.

# Latoya R. Liburd



**PRACTICE AREAS**
Antitrust
Consumer Protection

**ADMISSIONS**
Pending

**EDUCATION**
New York Law School, J.D. Honors: Helen and Andrew Dokas Memorial Award for Excellent Achievement, Advocacy Certificate

The George Washington University, Master of Professional Studies, Paralegal Studies, *summa cum laude*

Berkeley College, B.S., Justice Studies, *magna cum laude*. Honors: Jane Secola Memorial Scholarship, Presidential List, Dean's List

Ms. Liburd joined the Firm in 2021 as a post bar law clerk. She was the first employee to work out of the Firm's New York office. She has contributed her knowledge and skills to numerous antitrust and consumer protection cases, and she works diligently to ensure she reaches her most important goal: favorable outcomes for the Firm's clients.

Ms. Liburd has been and continues to be intimately involved on several Firm cases. She assists partners and senior associates with deposition preparation against senior executives and corporate officers from major U.S. corporations. Likewise, she performs legal research related to U.S. antitrust law and consumer protection violations, motions to compel, and other topics. Most extensively, she has conducted document review in the Varsity All-Star and Scholastic Cheer Market Price-Fixing Litigation and Generic Drug Price-Fixing Antitrust Litigation, in which she has identified key deponents and highly relevant documents for depositions, and drafted deposition and exhibit summaries detailing noteworthy testimony gleaned from various deponents.

Previously, Ms. Liburd was a legal extern for Legal Services NYC's education unit, where she drafted due process complaints and multiple appeals concerning violations of EDU Law 3214 (regarding situations under which a student may be suspended), appeared in suspension and special education hearings, and conducted client interviews. Before that, she was a senior litigation paralegal for 10 years at Cotchett, Pitre & McCarthy (New York office), where she conducted research on case law related to antitrust, consumer fraud, securities litigation, and product liability matters. While there, she also performed extensive document review, assisted with deposition preparation, and filed public and sealed pleadings.

While in law school, Ms. Liburd was involved with the New York Law School (NYLS) Intensive Trial Advocacy Program. She was a panelist in the NYLS Student Anticorruption Law and Oversight Symposium and developed oral argument strategy for the NYLS Black Law Students Association's 2018 Frederick Douglass Moot Court Competition.

Ms. Liburd volunteers with Legal Services NYC's education unit to promote education equity for New York City public school students and to ensure that children with special needs receive adequate accommodations through the Department of Education. She has also worked for many years with Law Help New York, a pro bono legal resources and legal referrals organization for low-income New Yorkers who are dealing with housing, family law, and public benefits issues.

# EXHIBIT 5

**Current and former tax preparer employees of Jackson Hewitt Inc. and Tax Services of America, Inc.:
The settlement may affect your rights. Please read carefully.**

*What is this lawsuit about?* Defendants Jackson Hewitt Inc. ("Jackson Hewitt") and Tax Services of America, Inc. (together "Defendants") have reached an agreement (the "Settlement Agreement") with the Settlement Class to settle the claims brought in the class action lawsuit entitled *Robinson et al. v. Jackson Hewitt et al*., Case No. 2:19-cv-9066 (MEF) (JRA) (DNJ) (the "Lawsuit"), alleging that Defendants entered into and engaged in "no-poach agreements" and enforced those unlawful agreements in restraint of trade and commerce, in violation of Sections 1 and 3 of the Sherman Act, 15 U.S.C. §§ 1, 3. The Defendants deny they did anything wrong. The Court did not decide in favor of Plaintiffs, the Class, or Defendants. Instead, the parties settled the case to avoid the costs and risks of continuing the Lawsuit.

*Who is included in the settlement class?* You are included in the settlement as a "Settlement Class Member" if you fit the following definition:

> A person who worked in a tax preparer position at any company-owned Jackson Hewitt location in the United States at any time between December 20, 2014 and the **[Date of Prelim Approval Order].**

Excluded from the Settlement Class are: Defendants and their affiliates, the Judge, including the Judge's staff and immediate family members, senior executives, personnel in Jackson Hewitt's executive, HR and recruiting departments, persons outside of the United States, franchisee owners, and managers.

*What does the settlement provide?* The settlement provides that Defendants are required to contribute to a settlement fund totaling $10,800,000 to be distributed to the Class in accordance with the terms of the Settlement Agreement. As a Settlement Class Member, you will give up, or "release," claims against the Defendants. This release includes any claims made or that could have been made arising from the facts alleged in this class action lawsuit, including claims that the Defendants' actions unlawfully reduced your wages and prevented other employers from hiring you.

*How much money will I get?* All Settlement Class Members will receive payment from the Settlement Fund Amount and shall only be excluded from receiving payment if they timely and validly opt out in accordance with the procedures set forth in the notice(s) served on the Class, subject to approval by the Court. The Allocation of the Settlement Fund Amount among the Settlement Class shall be subject to a Plan of Allocation approved by the Court. The parties shall endeavor to calculate each class member's pro rata share of the settlement and send distributions to them directly without the need for individual claim forms.

*What are my rights?* If you do nothing and the settlement is approved and becomes final, you will receive a payment from the Settlement Fund, and you will give up your right to sue the Defendants defined above for any claim made in this Lawsuit or released by the Settlement Agreement. If you do not want to be bound by this settlement or give up your right to sue the Defendants for any claim resolved by this settlement, you must exclude yourself ("opt out") in writing by [**45 days from the date this notice was sent**]. If you do not opt out, you may object to the settlement by [**45 days from the date this notice was sent**]. You may also hire and pay your own attorney to represent you. Details about your options and how to act on them are available at www.JacksonHewittEmployeeSettlement.com.

*What happens next?* The U.S. District Court for the District of New Jersey will hold a Fairness Hearing at the Frank Lautenberg U.S. Courthouse, Court Room 3, 2 Federal Square, Newark, NJ 07102 [**INSERT DATE**]. Please check the Court's Public Access to Court Electronic Records site at https://ecf.njd.uscourts.gov to confirm that the date has not changed. The hearing may be moved to a different date or time without additional notice, so it is a good idea to check the website for information.

Want more information? Visit www.JacksonHewittEmployeeSettlement.com to read a more detailed notice or to view the Settlement Agreement and related litigation documents. You may also call 1-888-298-5176 or email Admin@JacksonHewittEmployeeSettlement.com for additional information.

# EXHIBIT 6

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

## NOTICE OF SETTLEMENT WITH
## JACKSON HEWITT INC. AND TAX SERVICES OF AMERICA, INC.

**If you worked as a tax preparer at a Jackson Hewitt company owned location during the time period below, you could be affected by a class action settlement.**

**Please read this notice carefully. This concerns your rights.**

*A federal court authorized this notice. This is not junk mail, an advertisement, or a solicitation from a lawyer.*

- Defendants Jackson Hewitt Inc. ("Jackson Hewitt") and Tax Services of America, Inc. (together "Defendants") have reached an agreement (the "Settlement Agreement") with the Settlement Class to settle the claims brought in the class action lawsuit entitled *Robinson et al. v. Jackson Hewitt et al.*, Case No. 2:19-cv-9066 (MEF) (JRA) (DNJ) (the "Lawsuit"), alleging that Defendants entered into and engaged in "no-poach agreements" and enforced those unlawful agreements in restraint of trade and commerce, in violation of Sections 1 and 3 of the Sherman Act, 15 U.S.C. §§ 1, 3. Plaintiffs allege that these agreements had the purpose and effect of: (1) fixing, reducing, and stabilizing the wages, benefits and other aspects of compensation of the Class at artificially low levels; and (2) eliminating, to a substantial degree, competition among Defendants and their coconspirators for labor. Plaintiffs allege that, as a result, members of the Class have suffered injury, including: (1) lower compensation from Defendants than they otherwise would have received in the absence of the no-poach agreements and (2) reduced competition among Defendants and their franchisees for labor. Defendants deny they did anything wrong. The Court did not decide in favor of Plaintiffs, the Class, or Defendants. Instead, the parties settled the case to avoid the costs and risks of continuing the Lawsuit.

- Specifically, Defendants agreed to pay $10,800,000 total to resolve the claims against them (the "Settlement Fund Amount").

- You are a settlement class member ("Settlement Class Member") if you are a person who worked in a tax preparer position at any company-owned Jackson Hewitt location in the United States at any time between December 20, 2014 and **[Date of Prelim Approval Order].** Excluded from the Settlement Class are: Defendants and their affiliates, the Judge, including the Judge's staff and immediate family members, senior executives, personnel in Jackson Hewitt's executive, HR and recruiting departments, persons outside of the United States, franchisee owners, and managers.

- You received this notice because Defendants' records show that you worked in a tax preparer position at a company-owned Jackson Hewitt location in the United States between December 20, 2014 and **[Date of Prelim Approval Order]** and, therefore, are a Settlement Class Member. If you do not want to be bound by this settlement, you must act by **[45 days from the date this notice was sent]**, if you wish to exclude yourself and preserve your right to file your own lawsuit or to object to the settlement.

- Court-appointed lawyers for the Plaintiffs will ask the Court to award them up to 33% of the Settlement Fund Amount in payment of reasonable attorneys' fees and reimbursement of costs.

- Your legal rights are affected whether you act or don't act. **Please read this notice carefully.** You have choices to make now.

- If you are a Settlement Class Member, you are included in the above-described settlement with Defendants.

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS | |
|---|---|
| **DO NOTHING AT THIS TIME** | **Remain in the Settlement Class and receive a payment from the settlement. You do not need to file a claim to remain in the Settlement Class.** By doing nothing you will remain in the Settlement Class and release your antitrust claims against Defendants. If the settlement receives final approval, you will be sent a payment from the Settlement Fund Amount. |
| **EXCLUDE YOURSELF ("OPT OUT") FROM THE SETTLEMENT** | Get no payment, exclude yourself from the Settlement Class, and preserve your ability to file suit over the antitrust claims at issue in this action against the Defendants at your own expense. Opting out of the Settlement Class with respect to the Defendants is the only way that you can file or continue your own lawsuit concerning the legal claims in this case against the Defendants.<br><br>The deadline to exclude yourself from the settlement is **[45 days from the date this notice was sent].** |
| **OBJECT TO OR COMMENT ON THE SETTLEMENT** | You may also ask to speak to the Court about your written comments or objections about the fairness of the settlement and the request for attorneys' fees and costs at the "Fairness Hearing" on **[INSERT DATE]** in Courtroom 3, of the Frank Lautenberg Courthouse  United States Courthouse at 2 Federal Square, Newark, NJ 07102, though you do not have to do so. To comment on or object to the settlement and the request for attorneys' fees and costs, and request to speak at the Fairness Hearing, you must act before **[45 days from the date this notice was sent]**. You have a right to stay in the Settlement Class and argue to the Court that the settlement should not be approved. |
| **GO TO THE COURT'S FAIRNESS HEARING ABOUT THE SETTLEMENT** | If you would like, you may ask to speak in Court about the fairness of the settlement if you follow the instructions in Question 20 of this Notice.<br><br>You do not need to speak to the Court to receive benefits under the settlement. If you would like to attend the Fairness Hearing at your own expense, it will be held on **[INSERT DATE],** in Courtroom 3, of the Frank Lautenberg United States Courthouse at 2 Federal Square, Newark, NJ 07102. |

- **This Notice explains your legal rights and options—and the deadlines to exercise them.**
- **The Court in charge of this case still has to decide whether to approve the settlement with Defendants.**
- **This is not a lawsuit against you.**
- **This notice summarizes the proposed settlement with the Defendants. For the precise terms and conditions of the settlement, please see the Settlement Agreement available at www.JacksonHewittEmployeeSettlement.com, by accessing the Court docket in this case through the Court's Public Access to Court Electronic Records ("PACER") system at https://ecf.njd.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court of New Jersey at 50 Walnut Street, Newark, New Jersey between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.**

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS.**

| WHAT THIS NOTICE CONTAINS |
|---|

**BASIC INFORMATION** ................................................................................................ **PAGE 4**

    1.  Why did I get this Notice?

    2.  What is this Lawsuit about?

    3.  Why is this a class action, and who is involved?

    4.  Why is there a settlement?

    5.  Why is the Lawsuit continuing if there is a settlement?

**WHO IS IN THE SETTLEMENT AND THE CLASS ACTION LAWSUIT?** ................................ **PAGE 5**

    6.  Am I a Settlement Class Member who is part of the settlement?

    7.  I'm still not sure if I am included.

    8.  What are my rights as a Settlement Class Member?

**THE SETTLEMENT'S BENEFITS** ................................................................................... **PAGE 5**

    9.  What does the settlement provide?

    10.  How much money can I get from the settlement?

**HOW ARE CLASS MEMBERS AFFECTED** ...................................................................... **PAGE 6**

    11.  When will any payment be made?

    12.  What am I giving up as part of the settlement?

**THE LAWYERS REPRESENTING YOU** ........................................................................... **PAGE 7**

    13.  Who represents me in this case?

    14.  Should I get my own lawyer?

    15.  How will the lawyers be paid?

**EXCLUDING YOURSELF FROM THE SETTLEMENT AND/OR THE ONGOING LAWSUIT** ..................................... **PAGE 8**

    16.  How do I exclude myself from the Settlement Class and the settlement?

    17.  If I don't exclude myself, can I sue the Defendants for the same thing later?

    18.  If I exclude myself, can I get money from this settlement?

**COMMENTING ON OR OBJECTING TO THE SETTLEMENT** ................................................ **PAGE 9**

    19.  How do I tell the Court that I like or don't like the proposed settlement, and may I speak at the hearing?

**THE COURT'S FAIRNESS HEARING** ............................................................................ **PAGE 9**

    20.  When and where will the Court decide whether to approve the settlement?

    21.  Do I have to come to the Fairness Hearing?

**GETTING MORE INFORMATION** ................................................................................. **PAGE 10**

    22.  Are more details about the settlement and the Lawsuit available?

    23.  How do I get more information?

BASIC INFORMATION

## 1. Why did I get this Notice?

You have received this Notice because Defendants' records show you worked in a tax preparer position at a company-owned Jackson Hewitt location in the United States at any time between December 20, 2014 and **[Date of Prelim Approval Order].** Therefore, you are a member of the Settlement Class.

**You have a right to know about proposed settlements in a class action lawsuit, and about all of your options, before the Court decides whether to approve the settlements. If the Court approves the settlement and any appeals are resolved, an administrator appointed by the Court will make the payments that the settlement provides. You will be informed of the progress of the settlement.**

This notice explains the Lawsuit, the settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court has preliminarily approved the settlement. If you are a Settlement Class Member, you have legal rights and options that you may exercise before the Court considers whether it will grant final approval to the proposed settlement at the Fairness Hearing. The Court will hold the Fairness Hearing on **[INSERT DATE]**, in Courtroom 3 of the Frank Lautenberg United States Courthouse located at 2 Federal Square, Newark, NJ 07102 to decide whether the proposed settlement with the Defendants is fair, reasonable, and provides adequate compensation and benefits to the members of the Settlement Class. The Court will also consider Class Counsel's request for payment of reasonable attorneys' fees, incentive awards, and reimbursement of litigation expenses.

If you wish to comment on (including object to) or exclude yourself from the settlement, you must do so following the procedures described below. If you do nothing, you will receive money from the settlement, and you will be bound by any final judgment concerning the Defendants.

## 2. What is this Lawsuit about?

The lawsuit claims that no later than December 20, 2014, and continuing to the **[Date of Prelim Approval Order],** Defendants entered into and engaged in "no-poach agreements" and enforced those unlawful agreements in restraint of trade and commerce, in violation of Sections 1 and 3 of the Sherman Act, 15 U.S.C. §§ 1, 3. Plaintiffs allege that these agreements had the purpose and effect of: (1) fixing, reducing, and stabilizing the wages, benefits and other aspects of compensation of Plaintiffs and the Class at artificially low levels; and (2) eliminating, to a substantial degree, competition among Defendants and their coconspirators for labor. Plaintiffs allege that, as a result, members of the Class have suffered injury, including: (1) lower compensation from Defendants than they otherwise would have received in the absence of the no-poach agreements and (2) reduced competition among Defendants and their franchisees for labor. To obtain more information about the claims in this lawsuit, you can view the complaint and other court documents in this case at www.JacksonHewittEmployeeSettlement.com.

## 3. Why is this a class action, and who is involved?

In a class action lawsuit, one or more people called "Named Plaintiffs" or "Class Representatives" (in this case Jessica Robinson, Stacey Jennings, and Priscilla McGowan), sue on behalf of other people who are alleged to have similar claims. The people with the allegedly similar claims together are a "Settlement Class" and are called "Settlement Class Members." In a class action, the court resolves the issues for all Settlement Class Members, except for those who exclude themselves from the Settlement Class.

## 4. Why is there a settlement?

The Court has not found in favor of Plaintiffs or Defendants, and Defendants deny that they did anything wrong. While the Lawsuit is still pending before the United States District Court, Plaintiffs and the Settling Defendants have agreed to a settlement that, if approved, will bring the claims against the Settling Defendants to an end. That way, Plaintiffs and Defendants avoid the uncertainty of continuing the case between them and avoid the cost of further litigation, and Settlement Class Members will get the benefits of the settlement.

**5.   Why is the Lawsuit continuing if there is a settlement?**

The Defendants have agreed to settle this case. As of the time this notice is being sent, all Defendants have reached a settlement with Plaintiffs, but that agreement has not yet received final approval from the Court. Once the settlement has received final approval from the Court and the Court issues its final judgment, the case will be closed.

## WHO IS IN THE SETTLEMENT AND THE CLASS ACTION LAWSUIT?

**6.   Am I a Settlement Class Member who is part of the settlement?**

In general, you are a settlement class member, i.e. a person that is eligible for a payment from the proposed settlement when the funds are distributed ("Settlement Class Member") if you meet the following definition:

> A person who worked in a tax preparer position at any company-owned Jackson Hewitt location in the United States at any time between December 20, 2014 and the **[Date of Prelim Approval Order].**

Excluded from the Settlement Class are: Defendants and their affiliates, the Judge, including the Judge's staff and immediate family members, senior executives, personnel in Jackson Hewitt's executive, HR and recruiting departments, persons outside of the United States, franchisee owners, and managers.

**7.   I'm still not sure if I am included.**

If you received this Notice, it is because you were listed in Defendants' records as being employed by Defendants during the Class Period and, therefore, you are a Settlement Class Member. If you are still not sure whether you are included, you can ask for free help. You can call 1-888-298-5716 or visit www.JacksonHewittEmployeeSettlement.com for more information.

**8.   What are my rights as a Settlement Class Member?**

You may do nothing and remain in the Settlement Class. Or you may exclude yourself from the settlement (*see* Question 17). You may also comment on or object to the proposed settlement and the request for attorneys' fees and costs (*see* Question 20) or attend the Court's Fairness Hearing to speak in support of or against the Court's final approval of the proposed settlement and the request for attorneys' fees and costs.

## THE SETTLEMENT'S BENEFITS

**9.   What does the settlement provide?**

The settlement provides that the Defendants are required to contribute to a settlement fund totaling $10,800,000 to be distributed to the Class in accordance with the terms of the Settlement Agreement. As a Settlement Class Member, you will give up, or "release," claims against the Defendants. This release includes any claims made or that could have been made arising from the facts alleged in this class action lawsuit, including claims that the Defendants' actions unlawfully reduced your wages and prevented other employers from hiring you (see Question 12).

The releases are described in more detail in the Settlement Agreement and in Question 12 below. You can view or download copies of the Settlement Agreement at the website www.JacksonHewittEmployeeSettlement.com.

**10.  How much money can I get from the settlement?**

All Settlement Class Members will receive payment from the Settlement Fund Amount and shall only be excluded from receiving payment if they timely and validly opt out in accordance with the procedures set forth in the notice(s) served on the Class, subject to approval by the Court. The Allocation of the Settlement Fund Amount among the Settlement Class shall be subject to a Plan of Allocation approved by the Court. The parties shall endeavor to calculate each class member's pro rata share of the settlement and send distributions to them directly without the need for individual claim forms.

The proposed Plan of Allocation is available for review at www.JacksonHewittEmployeeSettlement.com and will be presented for approval by the Court at the Fairness Hearing (see Question 21).

## HOW CLASS MEMBERS ARE AFFECTED

---

**11.   When will any payment be made?**

As noted above, the Court is scheduled to hold a final Fairness Hearing on **[DATE],** at **[TIME]**, in Courtroom 3, of the Frank Lautenberg United States Courthouse at 2 Federal Square, Newark, NJ 07102, to decide whether to approve the proposed settlement and the request for the payment of reasonable attorneys' fees, incentive awards for the Class Representatives, and reimbursement of reasonable litigation expenses. The Court may reschedule the Fairness Hearing or change any of the deadlines described in this Notice. Please check the Court's PACER site at https://ecf.njd.uscourts.gov to confirm that the date has not changed, or for news of any such changes.

Settlement payments to Settlement Class Members will be distributed after the settlement is approved, and after appeals, if any, are resolved in the Settlement Class's favor. Class Counsel will remit the funds through the Settlement Administrator.

Updates regarding the settlements and any payments which may be made in the future will be posted on the settlement website, www.JacksonHewittEmployeeSettlement.com.

---

**12.   What am I giving up as part of the settlement?**

If you are a Settlement Class Member, unless you exclude yourself from the settlement with the Defendants, you will remain in the Settlement Class, and that means that you can't sue, continue to sue, or be part of any other lawsuit against the Settling Defendants about the legal claims in this case. It also means that all of the Court's orders will apply to you and legally bind you, and that you agree to the following Releases, which describe exactly the legal claims that you give up if you get settlement benefits:

In general (and subject to the precise terms as set forth in the Settlement Agreement), upon the Settlement Agreement becoming effective, the Named Plaintiffs and Settlement Class Members who did not otherwise properly and timely exclude themselves agree that the Defendants shall be completely released from any and all claims asserted or which could have been asserted in this litigation including claims for violations of Sections 1 and 3 of the Sherman Act, 15 U.S.C. §§ 1, 3 for entering into "no-poach agreements" and enforcing those allegedly unlawful agreements which allegedly had the purpose and effect of: (1) fixing, reducing, and stabilizing the wages, benefits and other aspects of compensation of the Class at artificially low levels; and (2) eliminating, to a substantial degree, competition among Defendants and their coconspirators for labor. To view the legally binding terms about the scope of the Released Claims, please refer to the proposed Settlement Agreement, which is available at www.JacksonHewittEmployeeSettlement.com.

Upon the Settlement Agreement becoming effective (as defined in the proposed Settlement Agreement), in addition to the effect of the Final Judgment entered in accordance with the Settlement Agreement, upon the occurrence of the Effective Date and in consideration of payment of the Settlement Fund Amount described in Paragraph 17 of the Settlement Agreement, the Releasees shall be fully, finally, and forever released, acquitted, and discharged from any and all manner of claims, demands, rights, actions, suits, and causes of action, whether class, individual, or otherwise in nature, damages whenever incurred, liabilities of any nature whatsoever, including costs, expenses, penalties, injuries, attorneys' fees, judgments, liens, losses, debts, obligations, guarantees, indemnities, and obligations of every kind and nature in law, equity, or otherwise that Releasors, or any one of them, whether directly, representatively, derivatively, or in any other capacity, ever had, now have, or hereafter can, shall, or may have against the Releasees, jointly or severally, whether known or unknown, relating all allegations, claims, demands, or causes of action of every sort whatsoever arising out of or relating in any way to the antitrust claims asserted in the Action by the Settlement Class. The parties intend that this release extinguish all claims that have been or could have been brought by the settlement class members based on the antitrust matters set forth or otherwise alleged or referred to in the Fourth Amended Complaint filed in the Action. For the sake of clarity, the Settling Parties recognize and agree that (1) Released Claims shall include antitrust claims that are known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, disclosed or undisclosed, contingent or accrued, regardless of the type or amount of relief or damages claimed; and (2) Released Claims shall include any unknown antitrust claims regardless of whether, if known by Settlement Class Members, such claims might have affected this Settlement Agreement with Defendants and the release of the Releasees.

## THE LAWYERS REPRESENTING THE CLASS

### 13.  Who represents me in this case?

The Court appointed the following law firms as Class Counsel (also referred to as "Plaintiffs' Counsel") to represent the Class:

**Hartley LLP**
Jason Hartley
101 West Broadway, Suite 820
San Diego, California 92101
(619) 400-5822
hartley@HartleyLLP.com

Richard M. Paul III
Laura C. Fellows
**PAUL LLP**
601 Walnut Street, Suite 300
Kansas City, Missouri 64106
(816) 984-8100
Rick@PaulLLP.com
Laura@PaulLLP.com

Joseph R. Saveri
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, California 94108
(415) 500-6800
jsaveri@SaveriLawFirm.com

### 14.  Should I get my own lawyer?

You do not need to hire your own lawyer because Plaintiffs' Counsel are working on your behalf. If you want your own lawyer, you may hire one, but you will be responsible for any payment for that lawyer's services. For example, you can ask your lawyer to appear in Court for you if you want someone other than Plaintiffs' Counsel to speak for you. You may also appear for yourself without a lawyer.

### 15.  How will the lawyers be paid?

Class Counsel will ask the Court to approve payment of up to 33% of the Settlement Fund Amount in payment of reasonable attorneys' fees and reimbursement of costs. Class Counsel may use the payment for their fees and costs to reimburse costs, fees, and expenses related to the administration of the settlement, including provision of notice to the Settlement Class. Specifically, Class Counsel will ask the Court to approve a payment of up to $1,712,737.01 USD to reimburse Class Counsel for costs incurred to date in bringing this action, primarily attributable to expert witness expenses; $10,000 for proposed incentive awards to each of the Class Representatives; and attorneys' fees up to
$3,564,000. The funds remaining after payment of the costs of notice and settlement administration shall be held in escrow pending future order of the Court. You do not have to pay any of Class Counsel's fees, costs, or expenses.


## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you want to keep the right to sue Defendants on your own and at your own expense about the antitrust issues in this case (as further described in response to Question 12 above), then you must take the steps below to exclude

### 16.   How do I exclude myself from the Settlement Class and the Settlement?

**Excluding yourself from the settlement:** If you fall within the Settlement Class definition but want to keep the right to sue or continue to sue Defendants about the legal issues in this case, then you must take steps to get out of the Settlement Class. This is called excluding yourself from, or opting out of, a proposed settlement class.

To exclude yourself from (opt out of) the settlement with Defendants, you must send an opt-out request letter by **[45 days from the date this notice was sent]** to the Settlement Administrator at the address below, stating your full legal name and address, that you want to be excluded from the Settlement Class in *Robinson et al. v. Jackson Hewitt et al* and that you were an employee who worked in a tax preparer position at any company-owned Jackson Hewitt location in the United States at any time between December 20, 2014 and **[Date of Prelim Approval Order]** ("Opt-Out Request Letter"). You must include the following statement with your Opt-Out Request Letter: "I want to be excluded from the *Robinson et al. v. Jackson Hewitt et al.* class action settlement with Defendants. I understand that by so doing, I will not be able to get any money or benefits from the settlement with the Settling Defendants in this case." This Opt-Out Request Letter must be signed and dated and include your telephone number.

If you request to be excluded from the settlement with Defendants, you will not be legally bound by the settlement with the Defendants. You will be able to sue (or continue to sue) the Defendants in the future about the legal claims in this case.

If you ask to be excluded from the settlement with Defendants, you cannot object to the settlement.

**Exclusion/Opt-Out Request Mailing Information:** To exclude yourself from the settlement with Defendants, you must submit your Opt-Out Request Letter postmarked no later than **[45 days from the date this notice was sent]** (or received by the Settlement Administrator by that date if sent by fax or e-mail) at the following address:

Robinson v. Jackson Hewitt Administrator

PO Box 301130

Los Angeles, CA 90030-1130

Email: Admin@JacksonHewittEmployeeSettlement.com

You cannot exclude yourself (opt out) by telephone.

| **17.  If I don't exclude myself, can I sue the Settling Defendants for the same thing later?** |
| --- |

No. If you are a Settlement Class Member, unless you exclude yourself from (opt out of) the settlement with Defendants, you give up the right to sue the Defendants for the claims that the settlement resolves (as more fully described in Question 12 above) unless you exclude yourself from (opt out of) the settlement.

If you have a pending lawsuit against any of the Defendants, speak to your lawyer in that lawsuit immediately, because you may need to exclude yourself from (opt out of) the Settlement Class to continue your own lawsuit. The process for excluding yourself from (opting out of) the settlement is described in the preceding section.

| **18.  If I exclude myself, can I get money from this settlement?** |
| --- |

No. If you exclude yourself from (opt out of) the settlement with Defendants, you will not receive money under the settlement.

## COMMENTING ON OR OBJECTING TO THE SETTLEMENT

| **19.  How do I tell the Court that I like or don't like the proposed settlement, and may I speak at the hearing?** |
| --- |

If you're a Settlement Class Member, you can comment on or object to the proposed settlement if you like or don't like any part of it, including the requests for attorneys' fees and costs. You can give reasons why you think the Court should or should not approve it. The Court will consider your views.

To comment or to object, you must send a letter to the Settlement Administrator with your comment(s) or objection(s) to the proposed settlement in *Robinson et al. v. Jackson Hewitt et al.* Be sure to include:

- Your name, address, telephone number, email address and signature; and
- A detailed statement of your comment(s) or objection(s), including the grounds for your objection(s), if any, together with any documents you think support it.
- You do not need to attend or speak at the Fairness Hearing (described in Question 20 below) in order for your comments or objections to be considered. If you would like to speak at the Fairness Hearing about your comments or objections to the settlement, you must add to your letter a statement that you intend to appear and speak at the hearing, for example, by stating "This is my Notice of Intention to Appear in *Robinson et al. v. Jackson Hewitt et al.*"

If you wish for the Court to consider your comment(s) or objection(s), you must mail the comment(s) or objection(s), along with a request to speak at the Fairness Hearing (if any), by First Class U.S. Mail, postmarked no later than **[45 days from the date this notice was sent]**, to:

Robinson v. Jackson Hewitt Administrator

PO Box 301130

Los Angeles, CA 90030-1130

You will have no right to speak at the Fairness Hearing about this settlement if you choose to exclude yourself from (opt out of) the settlement, because a settlement no longer affects you if you opt out of it.

## THE COURT'S FAIRNESS HEARING

**20.  When and where will the Court decide whether to approve the settlement?**

The Court will hold a Fairness Hearing on **[DATE], [TIME]**, in Courtroom 3 of the Frank Lautenberg United States Courthouse at 2 Federal Square, Newark, NJ 07102.

At the Fairness Hearing, the Court will consider the terms of the proposed settlement with Defendants and determine whether they are fair, reasonable, and adequate, and will consider the request for attorneys' fees and costs. If there are written comments or objections, the Court will consider them. The Court will decide whether to allow people who have raised objections or comments to speak at the hearing. After the Fairness Hearing, the Court will separately decide whether to approve the settlement. We do not know how long this decision will take.

The Court may reschedule the Fairness Hearing or change any of the deadlines described in this Notice. Be sure to check the website, www.JacksonHewittEmployeeSettlement.com, for news of any such changes.

**21.  Do I have to come to the Fairness Hearing?**

No. Class Counsel will be present at the Fairness Hearing to answer any questions the Court may have. You are welcome to come at your own expense. If you send comments or objections to the settlement, you don't have to come to Court to talk about it. As long as you mailed your written comments or objections on time (that is, by **[45 days from the date this notice was sent]),** the Court will consider them. You may also pay your own lawyer to attend, but it is not necessary.

## GETTING MORE INFORMATION

**22.  Are more details about the settlement and the Lawsuit available?**

Yes. This Notice summarizes the proposed settlement. More details about the settlement are in the proposed Settlement Agreement itself. You can see or print copies of the Settlement Agreement at www.JacksonHewittEmployeeSettlement.com. More information about the ongoing class action Lawsuit, including the Plaintiffs' class action complaint, the Defendants' answers to the complaint, and other case documents, can also be viewed or printed at www.JacksonHewittEmployeeSettlement.com

**23.  How do I get more information?**

The website www.JacksonHewittEmployeeSettlement.com provides answers to common questions about the Lawsuit, the settlements, and other information to help you determine whether you are a Class Member. You may also call or write to the Settlement Administrator with your questions at:

Robinson v. Jackson Hewitt Administrator
PO Box 301130
Los Angeles, CA 90030-1130
1-888-298-5176
Admin@JacksonHewittEmployeeSettlement.com

**PLEASE DO NOT CONTACT THE COURT. YOU SHOULD DIRECT ANY QUESTIONS YOU MAY HAVE ABOUT THIS NOTICE OR THE SETTLEMENT TO THE SETTLEMENT ADMINISTRATOR AND/OR TO CLASS COUNSEL.**

You may also seek the advice and counsel of your own attorney at your own expense if you desire.

# EXHIBIT 7

*Robinson, et al. v. Jackson Hewitt, Inc., et al.*, Civil Action No.:2:19-cv-9066(MEF)(JRA)

## ALLOCATION PLAN FOR JACKSON HEWITT SETTLEMENT

The amount of the Settlement Fund to be distributed to Settlement Class Members who do not opt out of the settlement is equal to the total $10,800,000 settlement minus attorneys' fees and costs awarded, settlement administration costs, and incentive awards. This amount is called the Net Settlement Fund and will be allocated to Settlement Class Members pro rata based on regular earnings for hours worked as a tax preparer during the Settlement Class Period. This amount will be calculated from data provided by Jackson Hewitt. The Class Notice will inform Settlement Class Members of the estimated pro rata payment. Settlement Class Members will have **45** days after Notice is sent to opt out or object to the Settlement. After the opt out period has ended, the Settlement Administrator will calculate each Settlement Class Member's final, pro rata share of the Net Settlement Fund by dividing each Settlement Class Member's regular earnings for hours worked as a tax preparer during the Class Period by the total earnings for hours worked as a tax preparer by all Settlement Class Members during the Class Period. Each Settlement Class Member's Settlement amount will be calculated by multiplying his or her pro rata share by the amount of the Net Settlement Fund. Settlement Class Members will then automatically receive their allocated payment from the Net Settlement Fund *without* having to submit a claim form. Settlement checks will be mailed to Settlement Class Members whose Notices were not returned as undeliverable (and for whom no other address was subsequently found). Settlement Class Members will have **120** days to cash or deposit their settlement checks.

## TAX WITHHOLDING

The Settlement states that taxes shall be paid from the Settlement Fund. Half of the Settlement amount shall be considered wages and the Settlement Administrator will ensure the appropriate tax withholding for this portion of Class Members' Settlement payments. The Settlement Administrator will send the necessary tax forms to Settlement Class Members.

## REMAINING FUNDS

For Settlement Class Members who could not be located (after continuing diligent efforts by the Settlement Administrator) or who do not cash their checks by the stale date, the parties will petition the Court for an order to dispose of the remaining funds. At this time, the parties anticipate the remaining Settlement amounts will be distributed pro rata to Settlement Class Members who deposited their settlement checks if it is economically feasible to do so. If it is not economically feasible to redistribute payments, the remainder will be distributed to a *cy pres* recipient to approved by the Court. In no event shall any of the remaining funds be returned to Defendants.