**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Jessica Robinson, et al., on behalf of herself and all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>Jackson Hewitt, Inc., et al.,<br><br>*Defendants*. | Civil Action No. 19-9066 (MEF)(JRA)<br><br>**OPINION** |

\* \* \*

For the purposes of this brief Opinion, the Court assumes full familiarity with the facts and procedural history of this case.

\* \* \*

The Plaintiffs moved for preliminary approval of a proposed settlement and preliminary certification of a settlement class. See Motion (April 5, 2024) ("Motion").

Soon after the motion was made, the Court posed certain questions, at a status conference. See Text Order (May 6, 2024) (setting conference).

Following the status conference, the Plaintiffs submitted revised materials. See Brief (May 29, 2024) ("Brief"). These address the Court's main questions in a satisfactory manner. The motion is therefore likely to be granted, pending the Plaintiffs addressing a loose end.

\* \* \*

The Court's <u>first</u> question related to the Plaintiffs' obligation to support the factual assertions they aim to rely on with appropriate evidentiary materials. <u>See</u> <u>generally</u> <u>Hacker</u> v. <u>Elec. Last Mile Sols. Inc.</u>, 2024 WL 1231257, at *4 (D.N.J. Mar. 21, 2024).

But that is no longer an issue. The Plaintiffs have now filed ample sworn materials. <u>See</u> <u>e.g.</u>, Joint Declaration of Richard M. Paul III, Jason Hartley, and Joseph Saveri in Support of Plaintiffs' Supplemental Memorandum in Support of Unopposed Motion for Preliminary Approval of Settlement and Certification of Settlement Class (May 29, 2024) ("Joint Declaration").

\* \* \*

The <u>second</u> set of questions related to the dollar value of the proposed settlement. What percentage of the Plaintiffs' total damages does the proposed settlement cover? Must the settlement account for the possibility of treble damages? And how does the proposed settlement compare to settlements in comparable class actions?

Each of these questions has been answered.

The settlement represents 54% of the total damages that are potentially in play here, at least as those total damages have been calculated by the Plaintiffs' expert. <u>See</u> <u>id</u>. at 22.

The settlement need not account for the possibility of treble damages. <u>See</u> Brief at 29 (citing <u>In re Am. Family Enters.</u>, 256 B.R. 377, 425 (D.N.J. 2000); <u>City of Detroit</u> v. <u>Grinnell Corp.</u>, 495 F.2d 448, 458-59 (2d Cir. 1974), <u>abrogated on other grounds by</u> <u>Goldberger</u> v. <u>Integrated Res.</u>, 209 F.3d 43 (2d Cir. 2000)).

And a 54% settlement compares favorably to settlements in comparable class actions. <u>See</u> Brief at 22 (referring to settlements of less than 5%, 25%, and 16.7%).

The Court has itself independently scrutinized these answers and concludes that they make sense.

\* \* \*

The Court's <u>third</u> question related to the various factors that must be assessed before a district court in the Third Circuit may finally approve a settlement, under <u>Girsh</u> v. <u>Jepson</u>, 521 F.2d 153, 157 (3d Cir. 1975), and its progeny.

The Plaintiffs' newly built-out analysis of these factors is persuasive. See Brief at 24-32. Among other things, the Plaintiffs' likelihood of success here is not 100%. Even putting wholly to one side the arguable novelty of some of the key legal theories, see id. at 26-27, there would be factual questions here that could break in any number of different ways.

As to liability, for example, a number of franchise owners have sworn that they were unaware of any "no-poach agreements" --- and would prove it, in part, by showing that they had in fact hired employees that would have been off-limits under such no-poach agreements. See Joint Declaration ¶ 47; Brief at 30-31 (citing Exhibit R (Declarations JH-095707; JH-095701; JH-095690; JH-05713; JH-095710); Defendant's Class Certification Opposition Exhibits 13-17).

As to damages, those are proposed to be calculated here based on battling experts. These experts offer complex (and competing) judgments as to how to estimate any declines in wages --- and it is not crystal clear which expert's views might prevail, and to what extent.

Especially in light of these risks, a settlement that amounts to 54% of the Plaintiffs' expert's total damage calculation is, in the Court's judgment, a sufficient one. And all the more so by comparison with the markedly lower settlements (5% to 25%) that have been obtained in reasonably comparable cases.

*   *   *

The Court's fourth question related to whether the Plaintiffs' lawyers were properly incentivized not only to negotiate a robust settlement --- but also to ensure that settlement money actually makes its way into the pockets of individual class members. See generally Hacker, 2024 WL 1231257 at *18-*20 (discussing this concern).

The Plaintiffs have adequately addressed this issue. They have explained that they "have sufficient information for each of the class members" for the claims administrator to make automatic payments to them. See Brief at 13. This information includes names, addresses, and email addresses, see Declaration of Carla Peak ¶ 10, and this should allow for class members to be readily located and promptly paid.

Moreover, the Plaintiffs' lawyers have proposed that the Court hold back 10% of their fee award until the process of distributing all settlement funds to the class members is

3

completed. See Brief at 13 n.4. This creates a useful incentive, that will help to encourage the Plaintiffs' lawyers to use their best efforts to make sure that class members actually receive the payments to which any final settlement would entitle them.

\* \* \*

Fifth and finally, the Court asked about whether objections to the proposed settlement might be made by email, as opposed to by traditional paper-and-stamp letters. This is, in part, to ensure that there are low barriers to entry for anyone who might wish to object to the proposed settlement. See Hacker 2024 WL 1231257 at \*17. The Plaintiffs' papers suggest that they will allow for email notice. See Joint Declaration ¶ 42. But the proposed notice materials they have submitted to the Court do not reference the possibility of email objections being made. See Motion Exhibit 6 at 2, 8.

\* \* \*

The motion at Docket Entry 309 is likely to be granted, upon submission of revised notice materials that address the referenced email issue.

DATE:   June 24, 2024                    _____
                                         Michael E. Farbiarz, U.S.D.J.

4