**LITE DEPALMA GREENBERG & AFANADOR, LLC**
Bruce D. Greenberg
570 Broad Street, Suite 1201
Newark, New Jersey 07102
Telephone: (973) 623-3000
bgreenberg@litedepalma.com

*Attorneys for Plaintiffs and the Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JESSICA ROBINSON, STACEY JENNINGS, and PRISCILLA MCGOWAN, individually and on behalf of others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>JACKSON HEWITT, INC. and TAX SERVICES OF AMERICA, INC.,<br><br>*Defendants.* | : Civil Action No.: 2:19-cv-9066 (MEF)(SDA)<br>:<br>:<br>:<br>:<br>:<br>: **FINDINGS OF FACT AND**<br>: **CONCLUSIONS OF LAW**<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

This matter has come before the Court by way of the Plaintiffs' Unopposed Motion for an Order Granting Final Approval of Class Action Settlement (ECF No. 331). The Plaintiffs, individually and on behalf of the putative Settlement Class (as defined below) and the Defendants Jackson Hewitt Inc. and Tax Services of America, Inc. ("Defendants") entered into a Settlement Agreement ("Settlement"), that, upon approval, will result in the settlement of all claims asserted against the Defendants in the above-captioned action ("Action").

In full and final settlement of the claims asserted against the Defendants, the Defendants have agreed to pay $10,800,000 into a common fund.

The Plaintiffs moved pursuant to Rule 23(e) of the Federal Rules of Civil Procedure for an order preliminarily approving the Settlement Agreement, which sets forth the terms and conditions of the Settlement with the Defendants.

And the Plaintiffs further moved for the Court's: (i) provisional certification of a Settlement Class, for purposes of effectuating the Settlement only; (ii) approval of the manner and form of notice of the Settlement to the Settlement Class; (iii) appointment of KCC (now known as Verita Global ("Verita")) as Settlement Administrator; (iv) approval of a proposed briefing schedule for final approval of the Settlement and Class Counsel's application for attorneys' fees, reimbursement of expenses and incentive awards to Class Plaintiffs; and (v) scheduling of a date and time for the Fairness Hearing.

The Plaintiffs filed a supplemental motion for preliminary approval of the Settlement with a supplemental declaration, and the Plaintiffs also subsequently submitted revised notice materials and redlined and clean versions of those notices.

The Plaintiffs and the Defendants moved for the order for preliminary approval, which motion the Court granted.  (ECF No. 327).

The Settlement Administrator appointed by the Court subsequently sent notice to the Settlement Class Members in accordance with the Court's various

orders. That notice provided details about the Settlement, including: (1) the nature of the action; (2) the definition of the Settlement Class to be certified; (3) the Settlement Class claims and issues; (4) that a Settlement Class Member may enter an appearance through counsel if desired; (5) that the Court will exclude from the Settlement Class any Settlement Class Member who requests exclusion (opts out); (6) the time and manner for requesting exclusion, including the option to seek exclusion and comment via email; (7) the binding effect of a class judgment on members under Rule 23(c)(3) of the Federal Rules of Civil Procedure; (8) a comprehensive summary of the terms of the Settlement; (9) Class Counsel's intent to request attorneys' fees, reimbursement of costs and expenses, and service awards for the Class Representatives; and (10) detailed information about the Released Claims.

The Plaintiffs have now filed an unopposed motion for final approval of the settlement. No objections have been received from Settlement Class Members.

All capitalized terms used in this Order shall have the same meanings as set forth in the Settlement Agreement, ECF 309, Exhibit 1, unless otherwise defined herein.

Against this backdrop, the Court has considered the Settlement Agreement and the other documents submitted by the Parties in connection with the Plaintiffs' Motion for Final Approval, and makes the following findings of fact and

conclusions of law:

1.    The Court has reviewed and considered the entire record.

2.    The Court concludes that the proposed Settlement Agreement should be approved.

## I.    Relevant Factual and Procedural Background

3.    The Plaintiffs filed their Amended Consolidated Class Action Complaint by 2019. (ECF No. 37). The operative Complaint alleges that the No-Poach benefitted Jackson Hewitt and its franchisees by limiting mobility and suppressing the compensation of Jackson Hewitt employees. (ECF No. 161 at ¶6). The Plaintiffs further allege that by acting in concert during the Class Period, company owned locations were able to eliminate competition for tax preparers and due to the lack of competition, were able to suppress wages. *Id.* ¶13. Thus, the Plaintiffs allege that the No-Poach Provision had an anticompetitive effect and violated Section 1 of the Sherman Act, 15 U.S.C. § 1. *Id.* ¶119.

4.    Jackson Hewitt's Motion to Dismiss was in large part denied in October 2019. (ECF No. 74). The Parties engaged in discovery and briefed numerous legal issues that informed the Settlement.

5.    Prior to the initial discovery cut-off date of April 30, 2021, the Parties agreed to mediation to attempt to resolve the case. (ECF No. 139). The Parties

ultimately mediated with Robert A. Meyer of JAMS on June 2, 2021 but were not able to reach a resolution. (ECF No. 144).

6.     The Parties completed fact discovery on January 17, 2022, and expert discovery by July 8, 2022.

7.     The Parties then briefed the Plaintiffs' Motion for Class Certification and cross-*Daubert* motions to exclude experts.

8.     The Court held oral argument and invited supplemental briefing that was completed in December 2023.

9.     The Parties have advised the Court that, in approximately December 2023, they reengaged with Robert A. Meyer of JAMS before ultimately reaching the Settlement of which they are now seeking final approval. The Court has no reason to doubt this representation, and credits it.

10.     The Court preliminarily approved the settlement on July 3, 2024 and ordered the Plaintiffs to submit a revised Notice with deadlines and specific contact information for approval by July 8, 2024. (ECF No. 327). The Plaintiffs submitted that amended Notice on July 8, 2024 (ECF No. 329).

11.     Consistent with the Court's Preliminary Approval Order, notice was sent to Settlement Class Members by August 15, 2024, and informed Settlement Class Members of their rights, including to object or opt-out of the Settlement by electronic mail. (ECF No. 331-3 and ECF No. 339-1). The deadline for Settlement

Class Members who were sent notice on August 15, 2024 to opt out or object was September 30, 2024.

12.     On September 16, 2024, the Court approved a revised form of notice ("supplemental notice") and directed the Claims Administrator to send this supplemental notice to 406 additional Settlement Class Members who had not received the original notice. Pursuant to this Order, supplemental notice was sent to the additional Settlement Class Members on September 17, 2024. This supplemental notice informed the additional Settlement Class Members of their rights to object to or to opt out of the settlement. (ECF No. 339-1, ¶18 & Ex. F). The deadline for the additional Settlement Class Members to object or to opt out was November 1, 2024.

13.     On November 15, 2024, the Plaintiffs submitted a supplemental memorandum detailing compliance with the Court's Order directing supplemental notice. This memorandum also addressed all Settlement Class Members' reactions to the Settlement prior to the Fairness Hearing. (ECF No. 339). Twenty-six class members have requested exclusion from the settlement including two requests which were received after the deadline but which were accepted at the direction of Class Counsel (0.08% of the settlement class); no objections have been received, timely or otherwise.

14.     The proposed Settlement establishes a $10,800,000 Settlement Fund,

which will exclusively be used to pay the costs of notice and settlement administration, attorneys' fees and costs, any incentive awards, and Settlement Class Members' pro-rata share of the remainder based on the total, regular earnings for hours worked at Jackson Hewitt during the Class Period. No Settlement funds will be subject to reversion to the Defendants. Payments will be made to Settlement Class Members with no claims process needed.

## II.    Notice to Class Members Was Adequate and Complied with Rule 23 and Due Process

15.    The Court previously approved the appointment of Verita Global (formerly known as KCC) as Settlement Administrator for the Settlement.

16.    In the Preliminary Approval Order, the Court found that the proposed form of notice to Settlement Class Members and proposed methods of dissemination, as well as the procedures for objection and exclusion by Settlement Class Members set forth in Appendix A of the notice, satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure and the Due Process Clause of the United States Constitution. The Court also found, in its September 16, 2024 Order directing supplemental notice to additional Settlement Class Members, that the proposed revised form of supplemental notice also satisfied Rule 23 and the Due Process Clause.

17.    The procedures and deadlines for filing requests for exclusion and objections were listed on the Notice, as well as the supplemental notice, and

informed Settlement Class Members that they would be bound by the release contained in the Settlement unless they timely exercise their opt-out right. These procedures include allowing for objections and opt outs to be received via email.

18.    The Plaintiffs have indicated that the Settlement Administrator has followed those procedures and mailed the notice and supplemental notice to the Settlement Class in accordance with the Court's previous Orders, which stated that the notice and the supplemental notice complied with Federal Rule of Civil Procedure 23 and the Due Process Clause. (ECF No. 331-3 and 339-1). The findings contained in this paragraph through paragraph 24 are based in part on representations from the Plaintiffs' counsel, which the Court credits.

19.    On August 16, 2024, pursuant to the proposed notice plan that was approved by the Court, the Settlement Administrator sent notice to each Settlement Class Member via U.S. Mail, and on September 17, 2024, again with Court approval, mailed supplemental notice to additional Settlement Class Members. (ECF No. 339-1, ¶18). Consistent with the Court's Preliminary Approval Order (ECF No. 327), individual notice was sent by mail to each Settlement Class Member to their last known address, all of whom were identified from Jackson Hewitt's internal documentation. (ECF No. 331-3, ¶11).

20.    The Settlement Administrator took steps to make sure Settlement Class Members were properly contacted, including performing national change of

address searches and advanced address updating using a variety of tools. For example, the Settlement Administrator caused email notice to be mailed to the 3,642 Class Members with valid email addresses. (ECF No. 331-3, ¶9). The Administrator also caused supplemental email notices to be mailed to additional Settlement Class Members for whom it had valid email addresses. (ECF No. 339-1 at ¶18).

21.    For Settlement Class Members whose notices were returned undeliverable, the Settlement Administrator updated addresses where possible and promptly resent notices. For class members who did not have updated address information, including from the Defendants' records, the Settlement Administrator performed skip-tracing by querying the Postal Service's NCOA service. (ECF No. 339-1 at ¶22). In total, 33,156 notices were sent to the Class.

22.    There is one Class Member for whom the Defendants' records lacked updated address information, and updated contact information for that Class Member was not available from the Post Office's NCOA service. Thus, that Class Member was not sent notice. Due to administrative error, 25 Class Members (approximately 0.07% of the Class) were not sent notice. ECF No. 339-1 at ¶19). 11 of those 25 had earnings and would be eligible for a settlement payment. *Id.*, ¶20. For those individuals, Verita now has address information for these Class Members and can issue checks to these Class Members if the settlement is finally

approved so that these Class Members may take their full share in the benefits of the settlement.

23.     The Settlement Administrator also created a settlement website with relevant court documents (www.jacksonhewittemployeesettlement.com), including the Class Notice in English and Spanish, and contact information and also operated a toll-free phone number which is accessible 24 hours a day, 7 days a week to provide more information to Settlement Class Members. (ECF No. 331-3, ¶16).

24.     The Settlement Administrator also established a shared email box (Admin@JacksonHewittEmployeeSettlement.com) for Settlement Class Member inquiries regarding the Settlement. (ECF No. 331-3, ¶17).

25.     No objections have been received as to the form of the notice disseminated. With respect to the 25 Class Members who did not receive notice due to administrative error, given that no objection has been received from the over 33,000 Class Members who received notice, the chance that one of them would object if they did receive notice would be very low. Indeed, even if all 25 of those Class Members were to object, the Settlement would still have the approval of over 99% of the Class—well within the range of approval. *See Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 803 (3d Cir. 1974) (holding settlement may still be approved even when over 20% of a class objects to a proposed settlement); *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, No. MDL 969, 1994 WL

702638, at *4 (E.D. Pa. Nov. 3, 1994) (finding 99% approval rate of settlement "significant"). Further, "[p]osed against the chimerical prospect of objections is the tangible disservice to thousands of class members of further delay in receiving benefits due under the proposed settlement." *Trist v. First Fed. Sav. & Loan Ass'n of Chester*, 89 F.R.D. 1, 3 (E.D. Pa. 1980).

26.    Individual notice successfully reached over 97.6% of Class Members. This figure well exceeds relevant benchmarks. *See* Federal Judicial Center, *Judges Class Action Notice and Claims Process Checklist & Plain Language Guide* 3 (2010); *Perks v. Activehours, Inc.*, No. 5:19-cv-05543-BLF, 2021 WL 1146038, at *2 (N.D. Cal. Mar. 25, 2021) (finding that 95% notice rate was "highly effective and adequate").

27.    Because Rule 23 only requires the "best notice practicable under the circumstances" and perfect notice is not required, the notice plan is adequate. *Varacallo*, 226 F.R.D. at 227; *see also Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. …. [I]f with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are

satisfied.").

### III.    The Settlement Class Is Certified Under Rule 23

28.    "Class actions created for the purpose of settlement are well recognized under Rule 23 of the Federal Rules of Civil Procedure." *In re Lucent Techs., Inc. Sec. Litig.*, 307 F. Supp. 2d 633, 639-40 (D.N.J. 2004).

29.    As explained more fully below, the Court concludes that the class certification under Rule 23 of the Federal Rules of Civil Procedure remains appropriate as: (a) the members of the Settlement Class are so numerous that joinder of all Settlement Class Members in the action is impracticable; (b) there are questions of law and fact common to the Settlement Class; (c) the claims of Class Representatives are typical of the claims of the Settlement Class; (d) the interests of all Settlement Class Members are adequately represented by the Plaintiffs and Class Counsel; (e) the issues common to Settlement Class Members predominate over any individualized issues; and (f) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

#### A. Numerosity

30.    The proposed settlement class encompasses more than 30,000 individuals and so the proposed class is so numerous that joinder of all members is "impracticable." *See* Fed. R. Civ. P. 23(a)(1); *Vista Healthplan, Inc. v. Cephalon, Inc.*, No. 2:06-cv-1833, 2015 WL 3623005, at *3 (E.D. Pa. June 10, 2015).

## B. Commonality

31.     Rule 23(a)(2) requires a showing of the existence of "questions of law or fact common to the class." *In re Nat'l Football League Players Concussion Inj. Litig.*, 301 F.R.D. 191, 200 (E.D. Pa. 2014), *appeal dismissed*, 775 F.3d 570 (3d Cir. 2014). The commonality requirement requires that plaintiffs "share at least one question of fact or law with the grievances of the prospective class." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 527-28 (3d Cir. 2004).

32.     To satisfy Rule 23's commonality requirement, class claims must "depend upon a common contention ... of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc., v. Dukes*, 564 U.S. 338, 350 (2011). The Third Circuit has stated that "[t]he bar is not high; we have acknowledged commonality to be present even when not all members of the plaintiff class suffered an actual injury, when class members did not have identical claims, and, most dramatically, when some members' claims were arguably not even viable." *In re Cmty. Bank of N. Va. Mortg. Lending Pracs. Litig.*, 795 F.3d 380, 397 (3d Cir. 2015).

33.     Here, there are common questions that can be resolved using common proof and uniform legal analysis. They include: (1) whether Jackson Hewitt engaged in unlawful contracts and/or conspiracies in restraint of trade and

commerce and in violation of the Sherman Antitrust Act, 15 U.S.C. § 1, et seq.; (2) whether such alleged agreements caused an antitrust injury; (3) whether the Plaintiffs and Settlement Class Members are entitled to damages; and (4) the amount of such damages. These common questions will yield common answers and readily satisfy the commonality requirement.

### C. Typicality

34.    Rule 23(a)(3) requires that the Class Representatives' claims be "typical of the claims ... of the class." "The typicality inquiry is intended to assess ... whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." *Baby Neal v. Casey*, 43 F.3d 48, 57-58 (3d Cir. 1994).

35.    Here, the Plaintiffs' and all Settlement Class Members' legal claims arise out of the same alleged conduct, namely, that the Plaintiffs and Settlement Class Members all worked at a Jackson Hewitt corporate office during the time the No-Poach Provision and/or the corporate no-poach environment, as described in the Parties' legal briefs and their attachments, was allegedly in effect.

36.    In short, the Plaintiffs' and Settlement Class Members' claims arise out of the same alleged course of conduct, involve the same alleged injury, and seek the same relief.  Typicality is satisfied.

### D. Adequacy of Representation

37.     Under Rule 23(a)(4), a class representative must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To meet this requirement, the Court must find that "(1) plaintiff's interests do not conflict with those of the class; and (2) the proposed class counsel are capable of representing the class." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154 (3d Cir. 2001) (internal quotations omitted).

38.     Both of these requirements are met here.

39.     The Plaintiff's counsel has represented, and the Court credits, that the proposed Class Representatives have diligently represented the Settlement Class. They have actively participated in discovery, including sitting for full-day depositions, and worked with Class Counsel to attempt to locate relevant documents and produce them. Throughout the more than five years this case has been litigated, they have stayed in contact with Class Counsel. There is no indication of any conflict between the interests of the Class Representatives and that of the Settlement Class Members. (ECF No. 333-4, ¶25).

40.     Second, the Plaintiffs' counsel are experienced lawyers whose experience in class action antitrust cases, and current diligence in this litigation, helped to achieve this Settlement and will adequately protect the interests of the Settlement Class through settlement administration.

### E. Predominance

41.     As the Supreme Court has held, while Rule 23(b)(3) requires a showing that questions common to the class predominate, it does not require proof that those questions will be answered, on the merits, in favor of the class. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013). Courts are "more inclined to find the predominance test met in the settlement context." *Sullivan v. DB Inv., Inc.*, 667 F.3d 273, 304 n.29 (3d Cir. 2011).

42.     The Plaintiffs' claims of Jackson Hewitt's violation of the Sherman Act rely on a common legal theory related to a relatively coherent body of alleged facts—that Jackson Hewitt utilized the No-Poach Restriction and no-poach culture to artificially and anticompetitively eliminate employee mobility and suppress wages. A common course of alleged conduct is said to have affected each Plaintiff and Class Member in essentially the same way. *See Amchem*, 521 U.S. at 625 (noting that "predominance is a test readily met in certain cases alleging consumer fraud or violations of antitrust laws"). Further, as discussed above in connection with the commonality requirement under Rule 23(a)(2), the Plaintiffs have identified numerous common issues here.  Those issues predominate over any potential individual issues.

### F. Superiority

43.     Similarly, a class action is the superior method of resolving this case.

In *Whiteley v. Zynerba Pharms., Inc.*, No. 19-4959, 2021 WL 4206696, at *9 (E.D. Pa. Sept. 16, 2021), the court found superiority where "[a]ll of the Settlement Class Members' claims are based upon the same basic operative facts and legal standards," and held that "[i]t would be a far better use of judicial resources to adjudicate all these identical issues once, on a common basis." This reasoning largely holds true here.

44.     A single litigation is superior to a series of multiple litigations or to individuals potentially foregoing their claims. Rule 23(b)(3) is satisfied.

### IV.    The Settlement Passes Muster

45.     Rule 23(e) requires court approval of any class action settlement. Fed. R. Civ. P. 23(e). "The standard for approval is whether the settlement is 'fair reasonable and adequate.'" *Varacallo*, 225 F.R.D. at 235 (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995)).

46.     A presumption of fairness applies when "(1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Warfarin*, 391 F.3d at 535 (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 232 n.18 (3d Cir. 2001)).

47.     As discussed below, each factor under Rule 23(e)(2) and *Girsh v.*

*Jepson*, 521 F.2d 153, 156 (3d Cir. 1975) and its progeny weigh in favor of final approval of the Settlement.

### A. The Relevant Rule 23(e)(2) Factors are Met

#### 1.    The Settlement was Negotiated at Arm's Length

48.    First, the Settlement was reached after arm's-length negotiations by experienced counsel. *See In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 WL 6248154, at *8 (E.D. Pa. May 11, 2004) (granting final approval of class action settlement and finding resolution negotiated at arm's-length "entitled to great weight"); *see also* Fed. R. Civ. P. 23(e)(2)(B); *Hall v. AT&T Mobility LLC*, Civil No. 07-5325 (JLL), 2010 WL 4053547, at * 7 (D.N.J. Oct. 13, 2010) ("The participation of an independent mediator in settlement negotiations virtually insures [*sic*] that the negotiations were conducted at arm's length and without collusion between the parties."). Further, the settlement was reached after meaningful discovery. *In re Elec. Carbon Prods. Antitrust Litig.*, 447 F. Supp 389, 400 (D.N.J. 2006) ("Where this negotiation process follows meaningful discovery, the maturity and correctness of the settlement become all the more apparent.").

#### 2.    The Settlement Provides Important Relief to Class Members

49.    The parties have explained that the actual settlement class action damages here are approximately $20,000,000.  The Court has analyzed the underlying materials and concludes this is reasonably likely to be a correct

assessment of total damages that are at least potentially in play. Against this backdrop, the proposed settlement of $10,800,000, 54% of actual Settlement Class damages, is a good result.

50.    The percentage recovered here exceeds the percentage recovered in many other class action settlements. *See, e.g., In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 WL 1068807, at *2 (E.D. Pa. May 11, 2004) (collecting cases approving class action antitrust settlements of under 5% class sales); *Carlin v. DairyAmerica, Inc.,* 380 F. Supp. 3d 998, 1011 (E.D. Cal. 2019) ("Courts regularly approve class settlements where class members recover less than one quarter of the maximum potential recovery amount."); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (finding settlement that provided plaintiffs one-sixth of their potential recovery to be fair and adequate).

51.    Based on the Settlement Class data produced by Jackson Hewitt, the Settlement Class size is approximately 33,000 persons.

52.    The Settlement amount is also a strong net positive in light of the costs and risks of continuing litigation. As the Court previously noted, "the Plaintiffs' likelihood of success here is not 100%." (ECF No. 321, at 3). If litigation were to continue, the Plaintiffs would potentially face a renewed motion for class certification, a renewed motion to strike the class, summary judgment motions, trial preparation, and eventually a trial. Continued litigation would result

in increased expenses.

### 3. The Settlement Treats Class Members Equitably

53.    The Settlement treats Settlement Class Members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(D). Settlement funds were awarded to Settlement Class Members on a pro rata basis based on their total earnings for hours worked as a tax preparer during the Class Period with no claims process necessary. Settlement Class Members with claims for wages after the date of the Settlement Agreement will have those claims valued at 10% of the claims for wages paid before the Settlement Agreement. This valuation takes into account any possible lingering effects of the No-Poach Agreement on the relevant market. Accordingly, the Parties have designed a simple process to maximize the number of Settlement Class Members who receive and accept compensation for their claims, and to treat them equitably. This is well done, and supports Settlement approval.

### 4. Class Representatives and Counsel are Adequate

54.    As discussed above, both the named Class Representatives and Class Counsel are adequate and there are no conflicts between them and the interests of the class.

### B. The Settlement Satisfies the *Girsh* Factors

55.    The Third Circuit requires courts to consider the "*Girsh* factors" in

20

deciding whether to preliminarily approve a class action settlement, which include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of the discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh,* 521 F.2d at 156.

### 1. The Complexity, Expense and Likely Duration of the Litigation

56.    The first *Girsh* factor helps to capture the likely costs of continued litigation. *In re Gen. Motors Corp.*, 55 F.3d at 812.

57.    This action is a complex and expensive antitrust case and, absent settlement, would be likely to continue for a significant period of time. This case was filed more than five years ago and while pleading, motions and fact discovery have been completed, absent settlement, the Parties would continue to engage in significant and expensive litigation of class certification, summary judgment, trial, and potential appeals for more months or even years.

58.    Thus, this factor weighs in favor of approval.

### 2. The Reaction of the Class to the Settlement

59.    The named Class Representatives appear to support the Settlement and appear to believe it is in the best interest of the Settlement Class.

21

60.    Notice has been disseminated, and that has provided an opportunity to be heard.

61.    No objections to the Settlement or to Class Counsel's request for payment of attorneys' fees, reimbursement of expenses and incentive awards were received. (ECF No. 339-1, ¶29). Out of the tens of thousands of Settlement Class Members notified, only twenty-six (26) requests for exclusion (opt-outs) were received, including two (2) that were received past the deadline but were accepted by the Administrator. (ECF No. 339-1, ¶29). This is, on balance, a small number.

3.    The Stage of the Proceedings and the Amount of Discovery Completed

62.    This factor "captures the degree of case development that class counsel have accomplished prior to settlement," and allows the court to "determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Gen. Motors Corp.,* 55 F.3d at 813.

63.    As previously mentioned, the Parties have engaged in substantial discovery, including formal and informal exchange of documents, third-party subpoenas and depositions. Expert discovery has been completed, including the depositions of the Parties' experts. The parties have completed briefing on motions for class certification and summary judgment. After oral argument on class certification, the Court invited supplemental briefing on the applicable legal standard. The parties exchanged supplemental briefs, and the Court also received

briefs from amici curiae, including the United States of America and the Attorneys General of various states, including New Jersey. ECF No. 282 (Brief for the United States of America as Amicus Curiae); ECF No. 293 (Brief for State of New Jersey et al. as Amici Curiae).

64.    Thus, Class Counsel had more than adequate appreciation for the strengths and weaknesses of their case. Therefore, this factor weighs strongly in favor of approval of the Settlement.

### 4. The Risks of Establishing Liability and Damages

65.    The fourth and fifth *Girsh* factors – the risks of establishing liability and the risks of establishing damages – require a court to "balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d at 439.

66.    Here, these factors weigh in favor of final approval.

67.    Among other things, the Third Circuit has not yet decided the proper antitrust standard for cases of this kind. Thus, there is at least some legal uncertainty regarding liability in this action because the question of whether per se or quick look analysis, or the rule of reason (which would be less favorable to the Plaintiffs) were to apply in cases like this is arguably unsettled.

68.    Further, proving damages at trial is unpredictable because "damages

would likely be established at trial through a 'battle of experts' with each side presenting its figures to the jury and with no guarantee whom the jury would believe." *In re Warfarin Sodium Antitrust Litig.,* 212 F.R.D. 231, 256 (D. Del. 2002), *aff'd*, 391 F.3d 516, 537 (3d Cir. 2004). In short, this factor weighs in favor of approval of the Settlement.

     5.     The Risks of Maintaining the Class Action through Trial

    69.    The sixth *Girsh* factor, the risk of maintaining a class action through trial, favors settlement. "Under Federal Rule of Civil Procedure 23(a), a district court may decertify or modify a class at any time during the litigation if it proves to be unmanageable." *In re Cendant Corp. Sec. Litig.,* 109 F. Supp. 2d 235, 262 (D.N.J. 2000). Without a settlement, Jackson Hewitt would presumably oppose certifying even the narrower class presented here. And, even if the Court were to certify the Class defined in the Settlement Agreement, proceeding to trial would inevitably carry the risk of later decertification. This factor favors approval, though not strongly.

     6.     The Ability of the Defendants to Withstand a Greater Judgment

    70.    The seventh *Girsh* factor, whether a defendant is able to withstand a greater judgment, does not weigh for or against approval. This is because there is no evidence in the record as to whether Jackson Hewitt could withstand a larger judgment, on its own or in reliance on insurance funds.

7. The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and the Attendant Risks of Litigation

71. The eighth and ninth *Girsh* factors require a court to consider whether the settlement is reasonable in light of the best possible recovery and the risks the Parties would face if the case went to trial. *See In re Linerboard Antitrust Litig.,* 292 F. Supp. 2d at 642–43. This assessment should consider "the present value of damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, compared with the amount of the proposed settlement." *Id.* at 581 (quoting *In re Prudential*, 148 F.3d at 322). As the Court previously determined, "[t]he settlement need not account for the possibility of treble damages." (ECF No. 321) (citing *In re Am. Family Enters.,* 256 B.R. 377, 425 (D.N.J. 2000); *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 458-59 (2d Cir. 1974), abrogated on other grounds by *Goldberger v. Integrated Res.,* 209 F.3d 43 (2d Cir. 2000)).

72. As mentioned above, the total Settlement is 54% of the estimated Settlement Class damages, comparing favorably to recovery percentages found reasonable by courts in other cases. Moreover, there is always the attendant risk that a jury could render a defense verdict, resulting in no recovery, or award an amount less than full damages even if liability is determined. For example, the parties have vigorously contested the applicable legal standard; whether the No-

Poach Provisions were enforced; the relevant market; and whether the No-Poach Provisions were procompetitive or anticompetitive. Some of these issues were contested through competing expert opinions and, in a battle of the experts, there is uncertainty as to which a jury may credit more.

73.    There are also any number of factual complexities specifically relevant to establishing questions of enforcement of a contractual provision in a decentralized national context, and also in terms of the establishment of a corporate culture --- and all of that is relevant here.

74.    In short, this factor weighs in favor of certification, as do all of the additional factors that the Court must consider.  See In re Prudential Co. Am. Sales Prac. Litig. Agent Actions, 148 F.3d 283, 323 (3d Cir. 1998); In re Baby Prods. Antitrust Litig., 708 F.3d 163, 174 (3d Cir. 2013).

## V.    CONCLUSION

75.    For the reasons set forth above, the Court finds that the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Class, and its terms satisfy the requirements of Federal Rules of Civil Procedure 23(c)(2) and 23(e) and the Due Process Clause, and the Court approves the Settlement.

76.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, and solely for the purpose of effectuating the Settlement, the Court certifies a Settlement Class defined as "All persons who worked in a tax preparer position at

any company owned Jackson Hewitt location in the United States at any time during the Class Period."

77.    The following entities or individuals are excluded from the Settlement Class: the Defendants and their affiliates; the undersigned, including the undersigned's staff and immediate family members; senior executives; personnel in Jackson Hewitt's executive, HR and recruiting departments; persons outside of the United States; and franchisee owners and managers.

78.    The proposed Settlement Agreement is approved in relation to the Plaintiffs' class action claims.

79.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Plaintiffs Jessica Robinson, Stacey Jennings, and Priscilla McGowan are appointed as class representatives for the Settlement Class.

80.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, attorneys Joseph Saveri with Joseph Saveri Law Firm, LLP, Jason Hartley with Hartley LLP, and Rick Paul with Paul LLP are appointed as Settlement Class Counsel, and Bruce Greenberg with Lite DePalma Greenberg & Afanador, LLC is appointed as the Plaintiffs' Liaison Counsel.

81.    The Court has also considered opt-outs filed by the Class members after receiving the notices. No objections have been received.

82.    Final approval of the Settlement is GRANTED.

**IT IS SO ORDERED.**

_____
Michael E. Farbiarz, U.S.D.J.

Date: November 25, 2024